| | |
|---|---|
| 1 | **KOBRE & KIM LLP** |
| | Jonathan D. Cogan (admitted *pro hac vice*) |
| 2 | Steven W. Perlstein (admitted *pro hac vice*) |
| | Igor Margulyan (admitted *pro hac vice*) |
| 3 | Mathew T. Elder (admitted *pro hac vice*) |
| 4 | Daisy Joo (admitted *pro hac vice*) |
| | 800 Third Avenue |
| 5 | New York, NY 10022 |
| | Tel.: +1 212 488 1200 |
| 6 | jonathan.cogan@kobrekim.com |
| 7 | steven.perlstein@kobrekim.com |
| | igor.margulyan@kobrekim.com |
| 8 | mathew.elder@kobrekim.com |
| | daisy.joo@kobrekim.com |
| 9 | |
| 10 | Daniel A. Zaheer (Bar ID 237118) |
| | 150 California Street, 19th Floor |
| 11 | San Francisco, CA 94111 |
| | Tel.: (415) 582-4800 |
| 12 | daniel.zaheer@kobrekim.com |
| 13 | *Attorneys for Defendants* |
| | *Jump Trading, LLC and* |
| 14 | *Jump Crypto Holdings LLC* |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN WARD, DAVID KREVAT, and NABIL MOHAMAD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JUMP TRADING, LLC; JUMP CRYPTO HOLDINGS LLC; AND DOES 1-10<br><br>Defendants. | CASE NO. 3:25-CV-03989-PHK<br><br>**DEFENDANTS JUMP TRADING, LLC AND JUMP CRYPTO HOLDINGS LLC'S REPLY TO OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY**<br><br>Hearing Date: October 9, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom F, 15th Floor<br><br>Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. Defendants' Motion To Stay Does Not Violate The Court's Standing Order. .......2

    B. The Court Should Stay Discovery Pending Decision On The Motions.................4

        1. A Stay Is Warranted Pending Decision On The Motion To Dismiss. .......4

        2. The Motion To Compel Arbitration Is Also Potentially Dispositive And May Be Resolved Without Discovery. .....................................................10

    C. Plaintiffs' Expansive Discovery Requests Are Burdensome. ...............................13

    D. Plaintiffs Will Not Be Prejudiced By The Limited Stay of Discovery................15

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n*,
  No. 21-CV-01817-WJM-NYW, 2022 WL 1239250 (D. Colo. Apr. 27, 2022) ................... 2, 3

*Behring Reg'l Ctr. LLC v. Wolf*,
  No. 20-cv-09263-JSC, 2021 WL 1164839 (N.D. Cal. Mar. 26, 2021) ................................... 8

*Bodenburg v. Apple Inc.*,
  No. 3:23-cv-04409, 2024 WL 6084050 ................................................................................ 3

*Cellwitch, Inc. v. Tile, Inc.*,
  No. 4:19-cv-01315, 2019 WL 5394848 (N.D. Cal., Oct. 22, 2019) ....................................... 5

*Clark v. Time Warner Cable*,
  No. CV 07 1797 VBF(RCX), 2007 WL 1334965, n.1 (C.D. Cal. May 3, 2007) ................... 3

*Coinbase v. Bielski*,
  599 U.S. 736 (2023) .............................................................................................. 2, 11, 12, 15

*Ferrell v. AppFolio, Inc.*,
  No. SA CV 23-01353-JWH (DFMx), 2024 WL 132223 (C.D. Cal. Jan. 8, 2024) ............... 10

*GeoSolutions B.V. v. Sina.com Online*,
  No. 5:21-CV-08019-EJD, 2023 WL 2562392, n.8 (N.D. Cal. Mar. 16, 2023) ....................... 3

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 (N.D. Cal. 1990) .......................................................................................... 15

*Hall v. Tilton*,
  No. C07-3233RMW, 2010 WL 539679 (N.D. Cal. Feb. 9, 2010) ......................................... 4

*Hill v. Asset Acceptance,* No. 13CV1718–BEN (BLM)., *LLC*,
  2014 WL 1289578 (S.D. Cal. Mar. 27, 2014) ..................................................................... 15

*HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*,
  Docket No. 22-cv-04109-TSH, 2023 WL 3259471 ............................................................... 3

*In re Google Advertising Antitrust Litig.*,
  No. 20-cv-03556-BLF, 2020 WL 7227159 (N.D. Cal. Dec. 8, 2020) ................................. 15

*In re Graphics Processing Units Antitrust Litig.*,
  No. C 06-07417 WHA., 2007 WL 2127577 (N.D. Cal. July 24, 2007) ............................... 15

*In re Nexus 6P Prods. Liab. Litig.*,
  No. 17-cv-02185-BLF, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017) ................................. 5

*Jiangmen Kinwai Furniture Decoration Co. v. Int'l Mkt. Ctrs., Inc.*,
   719 Fed. App'x 556 (9th Cir. 2017)......................................................................................... 7

*Kaplan v. California Pub. Emps.' Ret. Sys.*,
   No. C 98-1246 CRB., 1998 WL 575095 (N.D. Cal. Sept. 3, 1998) ...................................... 10

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015)............................................................................................. 7, 8

*Langell v. Ideal Homes LLC*,
   No. 16-CV-00821-HRL, 2016 WL 8711704 (N.D. Cal. Nov. 18, 2016) .............................. 10

*Leonard v. CVS Pharmacy, Inc.*,
   No. 5:24-CV-06280-EJD, 2025 WL 1266929 (N.D. Cal. May 1, 2025)................................. 6

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
   No. 5:16-cv-02805-EJD, 2017 WL 2727874 (N.D. Cal. Feb. 14, 2017).............................. 13

*Micron Tech., Inc. v. United Microelectronics Corp.*,
   No. 17-cv-06932-JSW, 2018 WL 7288018 (N.D. Cal. Mar. 16, 2018).................................. 6

*Muhmoud v. City of San Jose*,
   No. 5:20-cv-08808-EJD, 2022 WL 16855573 (N.D. Cal. Nov. 10, 2022) ........................... 13

*Nelson v. F. Hoffmann-La Roche, Inc.*,
   No. 21-cv-10074-TLT, 2022 WL 19765995 (N.D. Cal. Nov. 2, 2022)................................... 5

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
   No. 5:16-cv-06370-EJD, 2018 WL 1569811 (N.D. Cal. Feb. 16, 2018).............................. 13

*Pearl et al. v. Coinbase Global, Inc. et al.*,
   No. 22-cv-03561-MMC, 2024 WL 3048490 ......................................................................... 3

*Rubke v. ServiceNow, Inc.*,
   No. 24-cv-01050-TLT (PHK), 2024 WL 4540756 (N.D. Cal. Oct. 21, 2024) ....................... 3

*Smith v. Levine Leichtman Cap. Partners, Inc.*,
   No. C 10-00010 JSW, 2011 WL 13153189 (N.D. Cal. Feb. 11, 2011) ................................ 13

*Steiner v. Apple Comput., Inc.*,
   No. C 07-4486 SBA, 2007 WL 4219388 (N.D. Cal. Nov. 29, 2007) ................................... 13

*Williams v. Experian Info. Sols. Inc.*,
   No. CV-23-01076-PHX-DWL, 2024 WL 739676 (D. Ariz. Feb. 23, 2024) ........................ 12

*Winters v. Loan Depot LLC*,
   No. CV-20-01290-PHX-SPL, 2021 WL 2581332 (D. Ariz. June 23, 2021)...................... 2, 3

*Zeiger v. Hotel California by the Sea LLC*,
   No. C21-1702-TL-SKV, 2022 WL 1499670 (W.D. Wash. May 12, 2022) .......................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' Complaint is predicated entirely on fabricated allegations that some unspecified contract (or contracts) between Jump entities and Prime Trust, LLC ("Prime Trust"), a bank and trust company, and/or Terraform Labs PTE Ltd. ("TFL"), the developer and issuer of the crypto asset "UST," contractually obligated Defendants to always ensure investors in UST could sell their holdings, even during a market collapse. Dkt. 1 ("Compl.") ¶¶ 47, 53–54. It is hopelessly defective on the merits but also suffers from threshold jurisdictional and venue defects and, in any event, must be arbitrated. In short, Plaintiffs are not entitled to relief at all, but this Court is not the proper forum for that issue to be decided. Accordingly, Defendants moved to dismiss or, in the alternative, to compel arbitration. Dkt. 32 (the "Motions").[1] Defendants also moved for a stay pending resolution of their Motions (the "Motion to Stay") because those Motions are potentially dispositive, they need no discovery to be adjudicated, and a stay will not prejudice Plaintiffs. Dkt. 32 at 52-55. Plaintiffs—apparently hoping to engage in a fishing expedition to try to turn up something to support their outlandish theory—opposed the Motion to Stay ("Opposition"). Dkt. 36 ("Opp."). But the Opposition's arguments are all without merit and should be rejected.

Plaintiffs' lead argument—that the Motion to Stay should be rejected out of hand because it failed to comply with this Court's Standing Order for Discovery in Civil Cases—is wrong. As other courts have explained, a motion to stay is not a discovery dispute. Plaintiffs cite no case law providing otherwise, and certainly no case law that would support the drastic remedy that Plaintiffs seek—an outright denial of the Motion to Stay.

Plaintiffs' other arguments fare no better. Even though courts take a "preliminary peek" at the merits of a pending motion to dismiss when assessing whether to grant a stay, Plaintiffs fail to refute Defendants' arguments that their Motions are potentially dispositive and, indeed, ignore

---

[1] Defendants' Motions are separately referred to herein as the "Motion to Dismiss," which seeks dismissal of the Complaint for lack of personal jurisdiction, for improper venue or based on the first-to-file rule, and for failure to state a claim, and the "Motion to Compel Arbitration."

altogether many of the grounds for dismissal that Defendants advanced. Defendants have asserted that this is not the forum in which this dispute should be litigated. Thus, moving forward with discovery would deny the protections Defendants should be afforded. Many of the benefits of arbitration, for example, would be irretrievably lost if, while the Motion to Compel Arbitration is pending, the case is actively being litigated. *Coinbase v. Bielski*, 599 U.S. 736, 743 (2023).

Moreover, contrary to Plaintiffs' assertions, no discovery is needed to decide the legal challenges set forth in Defendants' Motions. Plaintiffs' recently-served discovery requests demonstrate that they seek broad discovery, not necessary for adjudication of the Motions, but rather to fish for some support for their frivolous allegations. A stay is especially warranted here to avoid burdening the Court when a dispositive motion requiring no discovery is pending and to avoid unnecessary expense, and because Plaintiffs will not be prejudiced by a short stay of discovery while the Motions are pending.

Accordingly, the Court should stay discovery pending resolution of the Motions.

## II.   ARGUMENT

### A.   Defendants' Motion To Stay Does Not Violate The Court's Standing Order.

Plaintiffs' lead argument—that the Motion to Stay should be denied because Defendants violated this Court's Standing Order for Discovery by failing sufficiently to meet and confer and to submit this dispute in the form of a joint letter—should be rejected for at least two reasons.

*First*, while this Court's Standing Order sets forth procedures that parties must follow to raise "discovery disputes," those procedures do not apply here because a motion to stay is not a discovery dispute. Defendants are aware of only one case in this Circuit in which a party attempted to make the argument raised by Plaintiffs here, and it was squarely rejected. *See Winters v. Loan Depot LLC*, No. CV-20-01290-PHX-SPL, 2021 WL 2581332, at *1–2 (D. Ariz. June 23, 2021). In *Winters*, the plaintiff opposed a motion to stay discovery on the basis that it was prohibited by the court's standing order directing parties not to file "motions pertaining to discovery disputes without leave of court." *Id.* at *2. The court rejected the plaintiff's argument, explaining that "a motion to stay" is not "a discovery dispute motion" but rather one that "happens to *affect* discovery." *Id*; *see also Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n*, No. 21-

2

cv-01817-WJM-NYW, 2022 WL 1239250, at *2 (D. Colo. Apr. 27, 2022) (rejecting argument that motion to stay violated court's procedures on discovery motions because it does not concern the "substance of discovery," unlike a "motion to compel or a motion for sanctions").

The reasoning in *Winters* is consistent with the decisions of other courts in this Circuit, which have found that motions to stay discovery concern matters of "case management" as opposed to discovery matters and, therefore, are reserved for the district court judge to decide rather than the magistrate judge presiding over discovery. *See, e.g.*, *Clark v. Time Warner Cable*, No. CV 07 1797 VBF(RCX), 2007 WL 1334965, at *2, n.1 (C.D. Cal. May 3, 2007) (where all discovery disputes were referred to magistrate judge, motion to stay discovery is heard before the presiding district judge as implicating "a case management issue"). As such, they are "properly brought as regularly noticed motions" under the N.D. Cal. Local Rules for Civil Cases.[2]

Plaintiffs' reliance on this Court's decision in *Rubke v. ServiceNow, Inc.*, No. 24-cv-01050-TLT (PHK), 2024 WL 4540756, at *1 (N.D. Cal. Oct. 21, 2024) is unavailing. In *Rubke*, following the district judge's lift of a stay of discovery, the case was referred to this Court for discovery purposes. *Id.* at *1. In a joint letter on the parties' dispute over the scope of discovery to occur, the defendant attempted to re-litigate whether the stay should be lifted. *Id.* at *2; *see also* Dkt. 61. This Court recognized the stay issue was improperly addressed as a discovery dispute because a stay relates to "overall case management." *Rubke*, 2024 WL 4540756, at *5. It was therefore *improperly* addressed in the parties' joint letter on discovery.

*Second*, even if this Court were to find that its Standing Order for Discovery should be interpreted to cover motions to stay discovery, the drastic remedy Plaintiffs seek of denial of the

---

[2] *See, e.g.*, *GeoSolutions B.V. v. Sina.com Online*, No. 5:21-cv-08019-EJD, 2023 WL 2562392, at *9, n.8 (N.D. Cal. Mar. 16, 2023); *see also, e.g.*, *Bodenburg v. Apple Inc.*, No. 3:23-cv-04409-TLT, 2024 WL 6084050, Mot. To Stay Disc., Dkt. 48 (N.D. Cal. Aug. 25, 2023) (motion to stay discovery filed as regularly noticed motion not by joint letter as required by applicable standing order on discovery disputes (Dkt. 47-1)); *HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, Docket No. 22-cv-04109-TSH, 2023 WL 3259471, Mot. To Stay Disc., Dkt. No. 73 (N.D. Cal. May 3, 2023) (same). *Pearl et al. v. Coinbase Global, Inc. et al.*, No. 22-cv-03561-MMC, 2024 WL 3048490, Mot. To Stay Disc., Dkt. 61 (N.D. Cal. June 17, 2024**)** (motion to stay heard by district judge even though standing order required "discovery motions" to be referred to magistrate judge).

3

DEFS.' REPLY TO OPPOSITION TO DEFS.' MOTION TO STAY DISCOVERY
Case No. 3:25-cv-03989-PHK

1  Motion to Stay would not be warranted. Contrary to Plaintiffs' accusation that Defendants took
2  a "ready, fire, aim" approach to this Motion to Stay, Opp. at 6, Defendants in fact engaged in a
3  meet and confer with Plaintiffs before seeking relief from the Court. Despite their rhetoric,
4  Plaintiffs admit this. Opp. at 4. Specifically, at the Rule 26(f) conference, Defendants explained
5  that they would be seeking a stay pending resolution of their forthcoming dispositive motions.
6  Declaration of Steven W. Perlstein. ¶¶ 2–3. Plaintiffs confirmed that they would oppose that stay
7  motion. *Id.* ¶ 3. Defense counsel thereafter corresponded with Plaintiffs on their position with
8  respect to a stay before the Court ruled on Defendants' Motion to Stay. *Id.* ¶¶ 4–5. Plaintiffs
9  represented they would proceed to serve discovery requests while the Court ruled on the stay
10 motion. *Id.* ¶ 5.

11  Notably, at no point during the meet and confer or subsequent correspondence did
12 Plaintiffs say that the Standing Order for Discovery applied here, that a further meet and confer
13 with Lead Counsel was required, or that the parties needed to submit this issue in a joint letter.
14 *Id.* ¶ 6. Rather, Plaintiffs chose to wait until Defendants filed their Motion to Stay to spring this
15 litigation position on them. Such gamesmanship should not be countenanced by the Court.
16 Accordingly, Plaintiffs' lead argument in opposition to the Motion to Stay should be rejected.

17  **B.  The Court Should Stay Discovery Pending Decision On The Motions.**

18  Plaintiffs agree that the District's two-prong test for a stay of discovery pending resolution
19 of a motion requires only that the motion is (1) potentially dispositive of the entire case and (2)
20 can be decided absent additional discovery. Dkt. 32 at 53-54; Opp. at 6-7. Plaintiffs fail, however,
21 to address many of the dispositive grounds in Defendants' Motions. And with respect to the few
22 arguments they do bother to address, Plaintiffs do not offer any plausible argument for why a stay
23 of discovery is not warranted.

24  **1.  A Stay Is Warranted Pending Decision On The Motion To Dismiss.**

25  Plaintiffs concede (as they must) that each of the grounds for dismissal in Defendants'
26 Motion to Dismiss—lack of personal jurisdiction, improper venue, the first-to-file rule, and failure
27 to state a claim—are dispositive grounds for dismissal because "if meritorious, [they] will dispose
28 of the entire case." *Hall v. Tilton*, No. C 07-3233RMW (PR)., 2010 WL 539679, at *2 (N.D. Cal.

Feb. 9, 2010) (emphasis added).  The relevant inquiry requires only a "preliminary peek" at a motion to determine whether the arguments are plausible and "potentially dispositive," which they are.  *In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185-BLF, 2017 WL 3581188, at *1-2 (N.D. Cal. Aug. 18, 2017); *see Nelson v. F. Hoffmann-La Roche, Inc.*, No. 21-cv-10074-TLT, 2022 WL 19765995, at * 1 (N.D. Cal. Nov. 2, 2022) (granting motion to stay on finding that it was "*possible*" the motion to dismiss "could be dispositive of the entire case," without "provid[ing] an opinion on the merits") (emphasis in original).

As set forth below, Plaintiffs also cannot credibly argue that any discovery is necessary to decide the Motion to Dismiss: the deficiencies are purely legal ones based solely on the allegations of the Complaint and other documents the Court is entitled to consider.  Dkt. 32 at 54; *see also Cellwitch, Inc. v. Tile, Inc.*, No. 4:19-cv-01315, 2019 WL 5394848, at *2 (N.D. Cal., Oct. 22, 2019) (courts frequently stay discovery where they "only need[] to look at the pleadings in order to issue a decision about [a] motion to dismiss"); *In re Nexus 6P*, 2017 WL 3581188, at *2 (staying discovery based in part on motion to dismiss relying on judicially noticeable documents).

<u>*Dismissal For Lack of Personal Jurisdiction and Improper Venue (Dkt. 32 at 22–32)*</u>:  As explained in detail in Defendants' Motion to Dismiss, the Court lacks personal jurisdiction over Defendants and venue is improper here due, among other things, to the complete lack of a nexus alleged between the claims and California, let alone this district.  Plaintiffs' Opposition does not even attempt to grapple with Defendants' arguments for dismissal on these grounds.  Opp. at 7-8. Instead, Plaintiffs rely solely on their assertion that jurisdiction and venue must be proper based on litigation conduct by Defendants in *other cases* that Plaintiffs themselves characterize as "*unrelated to this matter*."  Compl. ¶¶ 10, 10 n.1 (emphasis added); Opp. at 7-8.

Plaintiffs argue that Defendants "submitted" to jurisdiction in this Court in another matter and "argued in a case venued in [their] home state of Illinois" that personal jurisdiction exists in the Northern District of California.  *Id.* at 7.  Based on these assertions, they conclude that Defendants' jurisdiction and venue challenges are "unlikely to succeed."  *Id.* at 8.  Plaintiffs are wrong.  As explained by Defendants in their Motions and ignored in the Opposition, Defendants did not consent to personal jurisdiction **based on contacts with California** in either the N.D. Cal.

action (*Patterson*) or by seeking a transfer to consolidate the N.D. Ill. action (*Kim*) with *Patterson*.³ Dkt. 32 at 28-29.  The reason for this is that, unlike the present case, *Patterson* and *Kim* arise under federal statutes with distinct jurisdictional thresholds that permit courts to exercise personal jurisdiction over defendants **based on contacts with the United States**. *Id.*  In other words, in *Patterson* and *Kim*, the plaintiffs needed only to allege that the defendants in those cases had minimum contacts with the United States.  That is not the relevant jurisdictional analysis in this case.  Regardless, Defendants' participation in other litigations in this district that Plaintiffs themselves allege are "unrelated" to this case would not, as a matter of law, subject Defendants to the jurisdiction of this Court in this case. *Id.*  Plaintiffs have no basis for establishing—and, in any event, have failed properly to allege—that jurisdiction or venue may be proper.

In an attempt to avoid a stay, Plaintiffs claim that they somehow need discovery on the issue of why the *Patterson* and *Kim* Courts had jurisdiction in those cases but this Court does not have jurisdiction here.  Opp. at 8.  But simply saying they need discovery does not make it so, and Plaintiffs fail to explain how discovery would be even remotely relevant on this purely legal issue.  Indeed, the discovery requests Plaintiffs served simultaneously with their Opposition demonstrate that their claimed need for discovery on this issue rings hollow.  None appear relevant to whether Defendants' submission to jurisdiction in this forum in *Patterson* or *Kim* impacts the jurisdictional analysis in this case. Dkt. 37-1.  Accordingly, a stay of discovery is warranted. *See, e.g.*, *Micron Tech., Inc. v. United Microelectronics Corp.*, No. 17-cv-06932-JSW, 2018 WL 7288018, at *2 (N.D. Cal. Mar. 16, 2018); *Leonard v. CVS Pharmacy, Inc.*, No. 5:24-CV-06280-EJD, 2025 WL 1266929, at *2 (N.D. Cal. May 1, 2025) (citation omitted) (dispositive motions "rais[ing] issues of jurisdiction" or "venue" warrant a stay discovery pending decision).

<u>Dismissal Based On Plaintiffs' Prior Pending Class Action On Behalf Of UST Purchasers (Dkt. 32 at 32-35)</u>:  The Complaint should also be dismissed under the first-to-file rule because this is the second of Plaintiffs' two actions with several nearly identical material allegations

---

³ Moreover, Jump Crypto is not a defendant in *Patterson* and did not move to transfer in *Kim*. Dkt. 32 at 28-29.

premised on the same alleged injuries and transactions with an identical putative class of UST investors.  *Compare* Nev. Compl. (Dkt. 34-2) ¶¶ 59–100, *with* Compl. ¶¶ 63–98.

Plaintiffs do not dispute that the first-to-file rule permits a district court to decline jurisdiction where a "similar case with substantially similar issues and parties was previously filed in another district court," *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015), and permits dismissal under circumstances present here, *see Jiangmen Kinwai Furniture Decoration Co. v. Int'l Mkt. Ctrs., Inc.*, 719 Fed. App'x 556, 558 (9th Cir. 2017) (affirming dismissal of later-filed action).  Plaintiffs also do not identify any discovery necessary to resolve this issue.  This ground for dismissal also can be resolved on the pleadings and matters of which the Court may properly take judicial notice.  *Jiangmen Kinwai*, 719 Fed. App'x at 558.

Plaintiffs assert (but do not demonstrate) that their two suits are based on "different conduct and under different theories of liability."  Opp. at 11.  But, as noted *supra*, that is not the test, and it is also untrue.  Rather, there need only be "substantial overlap" between the two suits. *Kohn L. Grp., Inc.*, 787 F.3d at 1241.  That test is met here: in both their class action against Prime Trust (the "Nevada Action") and their suit against Defendants, the same three named Plaintiffs, on behalf of an identical putative class of UST investors, seek recovery for losses arising out of their inability to sell their UST holdings during the market collapse; and in both, they allege that Prime Trust agreed to execute their UST sell orders.  Dkt. 32 at 32-35.  Further, as Defendants' Motion to Dismiss details, and Plaintiffs fail to refute, a comparison of the pleadings confirms that both actions are substantially similar.  *Id.*; *see also Kohn L. Grp., Inc.*, 787 F.3d at 1240. Plaintiffs' Complaint against Defendants contains many identical allegations that have been "cut-and-pasted" from their pleadings against Prime Trust in Nevada, which are only slightly modified to shift the attribution of legal responsibility for their unexecuted UST sell orders from Prime Trust to Defendants.[4]  While in both cases Plaintiffs allege Prime Trust failed to execute their

---

[4] For example, in Nevada, Plaintiffs claim Prime Trust has liability for its "*refus[al]* to complete the transactions" (i.e., the refusal to fulfill Plaintiffs' sell orders while UST was collapsing).  Nev. Compl. ¶ 42 (emphasis added).  In this action, Plaintiffs modify that same allegation to allege that Prime Trust was "*unable* to complete the transactions" because of Defendants' failure to provide liquidity.  Compl. ¶ 47 (emphasis added).

7

1   UST transactions, in this action they claim that Prime Trust could not do so because of
2   Defendants.  It, therefore, defies logic to suggest, as Plaintiffs do in their Opposition, that "the
3   evidence, witnesses, and legal issues in this matter have no overlap." Opp. at 11.
4       Plaintiffs also assert that the "first-to-file rule has no application where a new case is filed
5   against a completely different party." *Id.* at 11.  Not so.  The Ninth Circuit has held that the first-
6   to-file rule "does not require exact identity of the parties." *Kohn L. Grp., Inc.*, 787 F.3d at 1240
7   (citations omitted).  *Behring Reg'l Ctr. LLC v. Wolf*, the lone district court decision on which
8   Plaintiffs rely, does not help their position.  Opp. at 11.  In *Wolf*, the court determined that the
9   first-to-file rule did not apply where "there was no overlap in parties on one side of the 'v.'"
10  *Behring Reg'l Ctr. LLC v. Wolf*, No. 20-cv-09263-JSC, 2021 WL 1164839, at *2 (N.D. Cal. Mar.
11  26, 2021).  That is not the case here.  In the Nevada Action, Plaintiffs lodged claims against John
12  Doe defendants asserting that these unidentified parties included entities who "proximately
13  caused" their damages and were sued under fictitious names until discovery disclosed them.  Nev.
14  Compl. ¶ 13.  In this action, Plaintiffs assert Defendants are liable for their losses from unexecuted
15  UST sell orders routed through Prime Trust, and they purportedly learned this in June of 2023,
16  while the Nevada Action was pending.  Compl. ¶¶ 7, 51.  In other words, based on Plaintiffs'
17  allegations, Defendants here appear to be among the John Doe defendants in the Nevada Action.
18      <u>*Dismissal For Failure To State A Claim Pursuant To Rule 12(b)(6) (Dkt. 32 at 41-52)*</u>:
19  As explained in detail in Defendants' Motions, Plaintiffs' third-party beneficiary breach of
20  contract claim should be dismissed on no less than four grounds: (1) Plaintiffs fail adequately to
21  allege the existence of a contractual term requiring Defendants to provide liquidity, let alone their
22  third-party beneficiary standing with respect to that supposed contractual term; (2) any alleged
23  breach of contract claim based on an oral agreement is untimely; (3) the contracts that Plaintiffs
24  appear to be alluding to in the Complaint are devoid of any purported obligation to provide
25  liquidity and, in fact, are squarely inconsistent with any such obligation; and (4) Defendants are
26  not even parties to those agreements.  Dkt. 32 at 42-49.  Plaintiffs' remaining claims for
27  conversion, unjust enrichment, civil theft, and unfair business practices under California's Unfair
28  Competition Law all rest on the existence of a purported contractual obligation or duty to provide

liquidity, which they have insufficiently pleaded and should be dismissed on that basis. These claims are also subject to dismissal because the California law claims are impermissibly extraterritorial, *id.* at 50-51, and Plaintiffs' common law claims fail to adequately plead applicable state law, *id.* at 52.

Plaintiffs do not dispute that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) is potentially dispositive. They also fail to address many of the fatal deficiencies summarized above. Rather, Plaintiffs (falsely) argue that Defendants' "motion is based entirely on four cherry-picked contracts and makes no reference to the full series of written and oral agreements from 2019 to 2021 that Plaintiffs allege were breached." Opp. at 11. Plaintiffs assert that on those grounds Defendants therefore "cannot make a showing . . . that Plaintiffs fail to state a claim for breach of those agreements." *Id.*

As an initial matter, Plaintiffs appear to misconstrue their own Complaint. *Id*. Although it refers in places to agreements entered into "[b]etween January 2019 and July 2021," Compl. ¶ 38, they specifically allege that "[t]he terms of Jump's liquidity agreement were proposed by Terraform Labs to Jump on June 30, 2021 and *the subject contracts were created and entered into on or around July 8, 2021*," *id.* ¶ 43 (emphasis added). Plaintiffs' breach of contract cause of action is based on those unidentified "Subject Contracts." *Id.* ¶ 64.[5]

Moreover, Plaintiffs implicitly concede that the contracts that actually do exist and that Defendants point to in their Motions (i.e., the ones that Plaintiffs now mischaracterize as cherry-picked) do not contain anything close to the supposed liquidity obligation that forms the entire basis of their case. In addition, as noted, Plaintiffs do not address the terms Defendants identified in those contracts that are flatly inconsistent with such a purported liquidity obligation. Instead, they appear to be arguing that discovery is required because, they speculate wishfully, there might be other contracts out there beyond the four contracts discussed in Defendants' Motions that do contain such an obligation. But Plaintiffs should not be permitted to make facially deficient

---

[5] Moreover, the Complaint's vague allegations of a "series of agreements" from before 2021 are based on publicly available contracts between a Jump affiliate and TFL relating to loans of UST and LUNA tokens, each of which were disclosed in the SEC's trial against TFL, including the Master Loan Agreement addressed in the Motions. None support their far-fetched theory.

allegations of a contractual obligation to provide liquidity, ignore that the contracts that do exist are sharply inconsistent with their theory, and then go on a fishing expedition by propounding broad discovery requests, *see infra* Part II.C, to see whether they can find some evidence that a contract obligating Defendants to provide liquidity—written or oral—exists. *Kaplan v. California Pub. Emps.' Ret. Sys.*, No. C 98-1246 CRB., 1998 WL 575095, at *6 (N.D. Cal. Sept. 3, 1998) ("[S]uch fishing expeditions are not permissible under federal [] rules.").

Accordingly, each ground for dismissal raised in the Motion to Dismiss warrants a stay.

### 2. The Motion To Compel Arbitration Is Also Potentially Dispositive And May Be Resolved Without Discovery.

Plaintiffs' attack on Defendants' Motion to Compel Arbitration is also without merit. As an initial matter, contrary to Plaintiffs' claim, courts in the Ninth Circuit consistently find that a motion to compel arbitration is a dispositive motion that can justify a stay of discovery. *See, e.g.*, *Ferrell v. AppFolio, Inc.*, No. SA CV 23-01353-JWH (DFMx), 2024 WL 132223, at *1 (C.D. Cal. Jan. 8, 2024). Arbitration motions are like a "challenge to venue," which is a "common example" of when a stay may be appropriate. *Zeiger v. Hotel California by the Sea LLC*, No. C21-1702-TL-SKV, 2022 WL 1499670, at *3 (W.D. Wash. May 12, 2022) (concluding arbitration motion is a "dispositive" motion for purposes of discovery stay pending the motion).[6]

Plaintiffs nevertheless argue that a "preliminary peek" at Defendants' Motion to Compel Arbitration warrants denial of a stay. On this front, Plaintiffs do not make any legal arguments about *this* case. They instead say that Defendants have "advanced similar arguments" in two other cases, and, so, they declare the "same outcome" is "almost certain here." Opp. at 8. This is not correct. While each of the other cases to which Plaintiffs refer (*Patterson* and *Kim*) involved agreements requiring arbitration, in neither case did the plaintiffs pursue breach of contract claims

---

[6] Plaintiffs say that "[d]istrict courts are divided" on the question. Opp. at 7. But the case they cite is inapposite as it only addresses the authority of magistrate judges to rule on such motions to stay discovery. *See Langell v. Ideal Homes LLC*, No. 16-CV-00821-HRL, 2016 WL 8711704, at *2 (N.D. Cal. Nov. 18, 2016), *report and recommendation adopted*, No. 16-CV-00821-LHK, 2016 WL 10859440 (N.D. Cal. Dec. 7, 2016). The decision, in any event, concluded arbitration motions *were* dispositive because "an order compelling arbitration effectively shifts the decision on the merits to another forum." *Id.* at *3.

based on those agreements. Nor, more importantly, did they even involve the same contracts pursuant to which Defendants seek to compel arbitration in this case.

Plaintiffs also argue that "[n]either of the two Defendants were parties to these agreements" and "none of the three Plaintiffs were parties to these agreements." *Id*. All that is true, but it misses the point entirely. The fact that Plaintiffs are not signatories to the arbitration agreements at issue does not excuse them from having to arbitrate. Dkt. 32 at 36-37. As explained in Defendants' Motions, equitable estoppel principles apply to permit enforcement of the arbitration agreements against Plaintiffs even though they are non-signatories because Plaintiffs cannot simultaneously claim rights as purported third-party beneficiaries under those agreements and disclaim the concomitant obligation to arbitrate. *Id.* at 37-40. Plaintiffs also do not dispute that the contracts under which Defendants move to compel contain mandatory arbitration provisions or that they delegate threshold questions of arbitrability to the arbitrator. *Id.* at 35-36. In addition, Plaintiffs do not dispute that the contracts Defendants identified are the "relevant" agreements referred to in the Complaint; or that they purport to enforce these contracts against Defendants, even though they were made by a Jump affiliate (not Defendants) (which appears to be an attempt by Plaintiffs to avoid arbitration, *see Id.* at 40 n.21). In short, Defendants' Motion to Compel Arbitration is potentially dispositive, which meets the first prong of the two-prong test for a discovery stay.

Plaintiffs criticize Defendants for relying on the Supreme Court's decision in *Coinbase v. Bielski* in support of the Motion to Stay, but that decision's rationale strongly supports Defendants' arguments. Opp. at 8-9. In *Bielski*, the Supreme Court held that a stay pending appeal of the denial of a motion to compel arbitration was mandatory. *Coinbase*, 599 U.S. at 743. In so doing, the Court explained:

> If the district court could move forward with pre-trial . . . proceedings . . . , then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost . . . . Absent a stay, parties also could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration.

*Id.* As other courts have observed, the Supreme Court's rationale in *Bielski* applies with equal (if not greater) force to a motion for a stay pending decision on the motion. *See Williams v. Experian Info. Sols. Inc.*, No. CV-23-01076-PHX-DWL, 2024 WL 739676, at *3 (D. Ariz. Feb. 23, 2024) (under "the logic of *Coinbase*, the case for staying discovery" pending motion to compel "is particularly strong").

Plaintiffs further contend that a stay is inappropriate because the arbitration motion will "almost certainly require discovery." Opp. at 7. Curiously, Plaintiffs assert that they "should be afforded discovery to analyze [the agreements'] enforceability" and that, "[f]or example," there may need to be discovery on "whether the agreements are procedurally unconscionable." *Id.* at 5. But, as noted above, the contracts pursuant to which Defendants seek to compel arbitration are the same contracts Plaintiffs appear in their Complaint to be alluding to when they claim Defendants owed, and breached, an obligation to provide liquidity. In other words, far from claiming these contracts between commercial parties are unconscionable, Plaintiffs seek to enforce them as third-party beneficiaries. Plaintiffs fail to explain how the contracts could both be enforceable against Defendants and unconscionable at the same time.[7] Plaintiffs should be not permitted to evade a discovery stay by merely mentioning the word "unconscionable," particularly when that theory directly conflicts with their own claims.

Accordingly, the Court should follow "common practice" throughout this Circuit and stay discovery while Defendants' Motion to Compel Arbitration is pending.[8]

---

[7] Plaintiffs also argue discovery is needed on "any contracts . . . which may modify or override the terms of these four contracts." Opp. at 8. Of course, Plaintiffs have no basis to think the arbitration agreements somehow got overridden by subsequent agreements. By Plaintiffs' rationale, a party claiming third-party beneficiary status facing a motion to compel arbitration would always be permitted to take broad discovery to fish for some evidence that the arbitration clause in the agreement they were seeking to enforce had subsequently been undone. As explained *supra*, Plaintiffs should not be permitted to go on a fishing expedition in the hopes that they will uncover support for their frivolous arguments. Nor should the Court credit Plaintiffs' assertion that they need more time to evaluate the actual contracts that do exist to determine what discovery may be needed. *Id.* at 5. Plaintiffs omit the fact that two of the agreements, underlying loans of UST and LUNA tokens, were disclosed in the SEC trial and were almost certainly relied on in alleging their claims. Defense counsel also provided the Prime Trust agreements nearly three weeks before their Opposition filing.

[8] *See, e.g.*, *Mahamedi IP Law, LLP v. Paradice & Li, LLP*, No. 5:16-cv-02805-EJD, 2017 WL

C. **Plaintiffs' Expansive Discovery Requests Are Burdensome.**

Plaintiffs next assert Defendants have not demonstrated undue burden to establish good cause for a discovery stay. Opp. at 11. They are wrong.

*First*, notwithstanding Plaintiffs' argument to the contrary, to prevail on a motion to stay discovery, "Defendants are not required to show unduly burdensome discovery or a lack of prejudice where the pending motion is potentially dispositive of the entire case and does not require any additional discovery." *Muhmoud v. City of San Jose*, No. 5:20-cv-08808-EJD, 2022 WL 16855573, at *2 (N.D. Cal. Nov. 10, 2022). Moreover, courts in this Circuit recognize that staying discovery pending resolution of dispositive motions is particularly warranted where, as here, such "motions raise issues of jurisdiction [or] venue." *Id.* at 1 (citation omitted).[9]

*Second,* even were Defendants required to show burden, Plaintiffs' recently-served discovery requests demonstrate the unnecessary burden Defendants would face if a discovery stay is not granted. Plaintiffs say their requests are few in number and tailored to the issues in Defendants' Motions. Opp. at 11. But these requests are, in fact, broad.

For example, in one request (Request No. 6), Plaintiffs seek "All DOCUMENTS RELATING TO investigations by governmental entities into UST on or after May 9, 2022." Dkt. 37-1 at 6. Responding to this wholly irrelevant document request would be a substantial task.

In two other requests, Plaintiffs seek from Defendants:

- Request No. 2: "All AGREEMENTS between YOU and any PARTNER RELATING TO UST."
- Request No. 3: "All AGREEMENTS between YOU and the entity or entities that created UST, including, but not limited to, Do Kwon, Daniel Shin, Terraform Labs, and Luna Foundation RELATING TO UST."

---

2727874, at *1-2 (N.D. Cal. Feb. 14, 2017); *Steiner v. Apple Comput., Inc.*, No. C 07-4486 SBA, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007).

[9] Plaintiffs rely on two distinguishable cases; neither addresses a dispositive motion raising threshold jurisdictional and venue issues, like Defendants' Motion to Dismiss. *See Smith v. Levine Leichtman Cap. Partners, Inc.*, No. C 10-00010 JSW, 2011 WL 13153189, at *2 (N.D. Cal. Feb. 11, 2011) (denying stay pending motion to dismiss for failure to join necessary parties and motion to deny class certification); *see Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, No. 5:16-cv-06370-EJD, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018) (denying stay pending motion to dismiss only for failure to state a claim).

1  Dkt. 37-1 at 5.  For Request Nos. 2 and 3 alone, and given Plaintiffs' extremely broad definitions

2  of "AGREEMENTS"[10] and "RELATING TO"[11] (each of which incorporates the broadly defined

3  term "COMMUNICATIONS"[12]), Defendants would be required to review for responsiveness

4  external and internal communications to determine whether they "relate to" or are in "any way

5  pertinent to UST."  They would also need to determine if, for example, a given communication

6  reflects any "arrangement," "deal," "negotiation," whether "formal or informal, express or

7  implied, written or oral."  Moreover, these requests seek such documents with an unbounded

8  group of counterparties that are not mentioned or alluded to in the Complaint.  Dkt. 37-1 at 5

9  (Request No. 3); *id.* (Request No. 2 refers to "any PARTNER RELATING TO UST").[13]

10       By way of these requests, Plaintiffs apparently intend to use discovery to conduct a

11  massive (and massively improper) fishing expedition for materials in search of a vague purported

12  liquidity obligation.  The Federal Rules of Civil Procedure do not permit Plaintiffs to sue based

13  on wishful thinking by alleging grossly vague allegations that a contract exists (with terms that

14  would be totally nonsensical if it did exist) and then to conduct a broad fishing expedition in

15  search of the non-existent contract.  Responding to these sweeping requests would force

16  Defendants to expend significant resources so that Plaintiffs may improperly search for some

17  evidentiary basis in support of their baseless allegations.  A discovery stay is warranted where, as

---

[10] "AGREEMENTS" is defined as "any DOCUMENT OR COMMUNICATION that represents or reflects any type of agreement, arrangement, contract, deal, settlement, release, offer and acceptance, consent, memorandum of understanding, negotiation, meeting of the minds, or shared intent—whether formal or informal, express or implied, written or oral—between two or more persons or entities." Dkt. 37-1 at 4.

[11] "RELATING TO" or "RELATED TO" is defined as "all DOCUMENTS or COMMUNICATIONS that directly or indirectly constitute, contain, embody, concern, evidence, show, comprise, reflect, identify, state, refer to, deal with, comment on, respond to, describe, involve, mention, discuss, record, support, negate, or are in any way pertinent to that subject." Dkt. 37-1 at 5.

[12] "COMMUNICATIONS" is defined as "written communications or records of oral communications of any kind that transmit information in the form of facts, ideas, opinions, questions, or otherwise. They include electronic communications . . . ; as well as letters, memoranda, exchanges of written or recorded information, in-person meetings, and events attended by Responding Party and its representatives." Dkt. 37-1 at 4.

[13] "PARTNER" is defined as "any company engaged in a business relationship with YOU wherein YOU performed liquidity services, performed market making services, or executed TRANSACTIONS for customers of said company." Dkt. 37-1 at 5.

here, the allegations are "utterly frivolous," were apparently "filed merely in order to conduct a 'fishing expedition,'" and are most likely pursued for "settlement value" by imposing substantial cost and effort on Defendants. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

### D. Plaintiffs Will Not Be Prejudiced By The Limited Stay of Discovery.

Plaintiffs do not argue that a stay will prejudice them or that there is any "urgent need for immediate discovery." *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417 WHA., 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007). Indeed, Plaintiffs sat on their supposed claims for almost two years after they say they discovered them, so there must not be any urgency. Compl. ¶ 69. Moreover, as Plaintiffs are aware from their Rule 26(f) conferral, Defendants have issued litigation holds pertaining to this dispute.

The deadlines in the Court's scheduling order are already adjourned. A stay of even "several months" would not establish undue prejudice to Plaintiffs. *See In re Google Advertising Antitrust Litig.*, No. 20-cv-03556-BLF, 2020 WL 7227159, at *3 (N.D. Cal. Dec. 8, 2020) (stay of "several months" did not "unduly prejudice Plaintiffs"). In short, a temporary stay of discovery will avoid significant costs that may be unnecessary and would impose no real prejudice on Plaintiffs or undermine their claims. On the other hand, discovery pending resolution of the Motions would prejudice Defendants. *See supra* Part II.C. Allowing discovery to proceed pending the motion to compel arbitration, for example, would undermine the federal policy in favor of arbitration. *See Hill v. Asset Acceptance,* No. 13CV1718–BEN (BLM)., *LLC*, 2014 WL 1289578 at *2 (S.D. Cal. Mar. 27, 2014) ("[T]he parties should not be required to endure the expense of discovery that ultimately would not be allowed in arbitration.") (citation omitted); *cf Coinbase*, 599 U.S. at 743.

Accordingly, the Court should stay discovery pending determination of Defendants' Motions in the interest of judicial economy and to promote an efficient resolution of this case.

...

| | |
|---|---|
| Dated: July 30, 2025 | Respectfully submitted, |
| | /s/ Jonathan D. Cogan |

**KOBRE & KIM LLP**
Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Igor Margulyan (admitted *pro hac vice*)
Mathew T. Elder (admitted *pro hac vice*)
Daisy Joo (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: +1 212 488 1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
igor.margulyan@kobrekim.com
mathew.elder@kobrekim.com
daisy.joo@kobrekim.com

Daniel A. Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: (415) 582-4800
daniel.zaheer@kobrekim.com

*Attorney for Defendants
Jump Trading, LLC and
Jump Crypto Holdings LLC*