**KOBRE & KIM LLP**
Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: (212) 488-1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com

Daniel A. Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: (415) 582-4800
daniel.zaheer@kobrekim.com

[Additional Counsel on Signature Page]

*Attorneys for Defendants*
*Jump Trading, LLC and*
*Jump Crypto Holdings LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN WARD, DAVID KREVAT, and NABIL MOHAMAD, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> JUMP TRADING, LLC; JUMP CRYPTO HOLDINGS LLC; AND DOES 1-10 <br><br> Defendants. | CASE NO. 3:25-CV-03989-PHK <br><br> **DEFENDANTS JUMP TRADING, LLC AND JUMP CRYPTO HOLDINGS LLC'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS OR ALTERNATIVELY TO COMPEL ARBITRATION** <br><br> Hearing Date: November 19, 2025 <br> Time: 1:00 p.m. <br> Place: Courtroom F, 15th Floor <br><br> Judge: Hon. Peter H. Kang |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 3

I.    Plaintiffs Identify No Basis for the Exercise of Personal Jurisdiction Over the Jump
      Defendants ............................................................................................................ 3

      A.  Plaintiffs Ignore the Jump Defendants' Arguments Concerning General Jurisdiction,
          Thereby Conceding the Point ......................................................................... 3

      B.  Plaintiffs Fail to Demonstrate That the Exercise of Specific Personal Jurisdiction Would
          Be Proper Here ............................................................................................... 3

          1.  Plaintiffs Do Not Come Close to Establishing Suit-Related Conduct in California
              by the Jump Defendants ........................................................................... 4

          2.  Plaintiffs Also Fall Short of Satisfying the Purposeful Availment Prong ............... 5

      C.  The Jump Defendants Have Not Consented to Jurisdiction in California ......................... 8

      D.  Jurisdictional Discovery Would Be Futile .......................................................... 8

II.   Plaintiffs Cannot Avoid Dismissal Based on the First-To-File Rule or for Improper Venue. 9

      A.  Plaintiffs Concede That Their Complaint Violates the First-to-File Rule ......................... 9

      B.  Plaintiffs Have Not Identified a Connection to This Venue .............................................. 9

      C.  Transfer Is Not Appropriate .......................................................................... 10

III.  Plaintiffs' Facially Deficient Claims Cannot Survive Rule 12(b)(6) .................................. 10

      A.  Plaintiffs Concede Their Third-Party Beneficiary Claim for Breach of Oral Contract
          Must Be Dismissed as Untimely .................................................................... 11

      B.  Plaintiffs Do Not Show How Their Vague Allegations Are Sufficient to State a Claim
          for Breach of Written Contract ..................................................................... 12

          1.  Plaintiffs Have Not Sufficiently Pled a Written Contract ....................................... 12

          2.  Plaintiffs Have Not Pled Performance or Excuse for Nonperformance ................. 16

          3.  Plaintiffs Fail to Show Their Conclusory Allegations of Third-Party Beneficiary
              Status Are Sufficient to State a Contract Claim .................................................. 16

i

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

4.   There Is No Reason for the Court to Convert the Jump Defendants' Motion to Dismiss into Motion for Summary Judgment ........................................................17

C.  Plaintiffs' Statutory and Common Law Claims Are Inadequately Pled .........................18

1.   Plaintiffs' California Law Claims Cannot Apply to Conduct Occurring Extraterritorially ................................................................................................19

2.   Plaintiffs Must Plead Which State's Common Law Applies .................................20

IV.  Plaintiffs' Efforts to Avoid Arbitration Should Be Rejected ................................................20

A.  Plaintiffs' Case Against Arbitration Fails ........................................................................22

B.  Plaintiffs Are Estopped From Avoiding Arbitration.........................................................25

**CONCLUSION**................................................................................................................................**27**

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

1

**TABLE OF AUTHORITIES**

2

3
**Page(s)**

<u>**Cases**</u>

4

*Aguilera v. Pirelli Armstrong Tire Corp.*,
5
   223 F.3d 1010 (9th Cir. 2000) ...................................................................................16

6
*AK Futures LLC v. LCF Labs Inc.*,
   No. 21-CV-02121-JVS, 2022 WL 16859970 (C.D. Cal. Oct. 5, 2022) .................................12
7

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
8
   727 F.3d 917 (9th Cir. 2013) ..................................................................................15

9
*Brennan v. Opus Bank*,
10
   796 F.3d 1125 (9th Cir. 2015) ............................................................................24, 25

11
*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................................6
12

*C. M. v. MarinHealth Med. Grp., Inc.*,
13
   No. 23-CV-04179, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) .........................................19

14
*Caremark, LLC v. Chickasaw Nation*,
15
   43 F.4th 1021 (9th Cir. 2022) .........................................................................22, 24, 25

16
*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ............................................................................26, 27
17

*Connell v. ByteDance, Inc.*,
18
   No. 24-CV-07859, 2025 WL 1828472 (N.D. Cal. July 1, 2025) ..........................................25

19
*Corazon v. Aurora Loan Servs., LLC*,
20
   No. 11-00542, 2011 WL 1740099 (N.D. Cal. May 5, 2011) ..............................................13

21
*Core-Vent v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ...................................................................................8
22

*Crea v. Busby*,
23
   48 Cal. App. 4th 509 (1996) ....................................................................................7

24
*Cress v. Nexo Fin. LLC*,
25
   No. 23-CV-00882, 2023 WL 6609352 (N.D. Cal. Oct. 10, 2023) .......................................11

26
*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) ...................................................................................7

27

28

iii

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)......................................................................................................3

*De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*,
   755 F. Supp. 3d 1266 (N.D. Cal. 2024).......................................................................8

*Dfinity USA Rsch. LLC v. Bravick*,
   No. 22-CV-03732, 2023 WL 2717252 (N.D. Cal. Mar. 29, 2023) ........................19

*Elofson v. Bivens*,
   No. 15-CV-6332, 2015 WL 13916655 (C.D. Cal. Aug. 21, 2015) .........................9

*Espinoza v. Trans Union LLC*,
   No. 22-CV-01670, 2023 WL 6216550 (D. Ariz. Sept. 25, 2023) .........................18

*Est. of Logan by & Through Logan v. Busch*,
   574 F. Supp. 3d 660 (W.D. Mo. 2021) .......................................................................7

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
   907 F.2d 911 (9th Cir. 1990) .......................................................................................7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)......................................................................................................5

*G & C Auto Body Inc v. Geico Gen. Ins. Co.*,
   No. 06-CV-04898, 2008 WL 687371 (N.D. Cal. Mar. 11, 2008) .........................18

*Gabrielian v. JPMorgan Chase & Co.*,
   No. 16-CV-131, 2016 WL 11780191 (C.D. Cal. Mar. 15, 2016)..........................13

*Gen Digit., Inc. v. Sycomp*, No.,
   No. 24-CV-04106, 2024 WL 4336525 (N.D. Cal. Sept. 27, 2024) ......................12

*Giron v. Hong Kong & Shanghai Banking Corp., Ltd.*,
   No. 2:15-CV-08869, 2016 WL 11585001 (C.D. Cal. Oct. 21, 2016) ...................19

*Hariton v. Chase Auto Fin. Corp.*,
   No. 08-CV-6767, 2010 WL 3075609 (C.D. Cal. Aug. 4, 2010) ...........................16

*Hassan v. Facebook, Inc.*,
   No. 19-CV-01003, 2019 WL 3302721 (N.D. Cal. July 23, 2019) ........................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019).............................................................................................22, 24, 25

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) .......................................................................................7

iv

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016) ................................................................. 12

*In re BAM Trading Servs. Inc. Sec. Litig.*,
   733 F. Supp. 3d 854 (N.D. Cal. 2024) ................................................................. 25

*In re Theos Dark Chocolate Litig.*,
   750 F. Supp. 3d 1069 (N.D. Cal. 2024) ............................................................... 20

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
   903 F.3d 896 (9th Cir. 2018) ................................................................................. 4

*JSM Tuscany, LLC v. Superior Ct.*,
   193 Cal. App. 4th 1222 (2011) ....................................................................... 25, 26

*Kavehrad v. Vizio, Inc.*,
   No. 21-CV-01868, 2022 WL 16859975 (C.D. Cal. Aug. 11, 2022) ...................... 20

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ............................................................................. 23

*Kuhn v. Three Bell Cap.*,
   698 F. Supp. 3d 1119 (N.D. Cal. 2023) ............................................................... 13

*Langan v. United Servs. Auto. Ass'n*,
   69 F. Supp. 3d 965 (N.D. Cal. 2014) ............................................................. 13, 14

*Mahmoud v. Select Portfolio, Inc.*,
   No. 3:17-CV-00568, 2017 WL 3387470 (N.D. Cal. Aug. 7, 2017) ...................... 14

*McFarland v. Memorex Corp.*,
   493 F. Supp. 657 (N.D. Cal. 1980) ...................................................................... 10

*McGrew v. Countrywide Home Loans, Inc.*,
   No. 08-CV-1831, 2009 WL 10672902 (S.D. Cal. July 28, 2009) ......................... 16

*McKell v. Washington Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ............................................................................ 14

*McLellan v. Fitbit, Inc.*,
   No. 16-CV-00036, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ........................ 25

*Nguyen v. OKCoin USA Inc.*,
   No. 22-CV-06022, 2023 WL 2095926 (N.D. Cal. Feb. 17, 2023) ........................ 24

*Parrish v. Nat'l Football League Players Ass'n*,
   534 F. Supp. 2d 1081 (N.D. Cal. 2007) ............................................................... 14

v

*Patton v. Experian Data Corp.*,
    No. 17-CV-01559, 2018 WL 6184773 (C.D. Cal. Sept. 12, 2018) ............................................ 16

*Payrovi v. LG Chem Am., Inc.*,
    491 F. Supp. 3d 597 (N.D. Cal. 2020) ................................................................................... 6

*Partners All. Corp. v. Ally Bank*,
    No. 3:24-CV-01222, 2024 WL 4596413 (S.D. Cal. Oct. 28, 2024) ....................................... 17

*Press Rentals Inc. v. Genesis Fluid Sols. Ltd.*,
    No. 11-CV-02579, 2013 WL 485654 (N.D. Cal. Feb. 6, 2013) .............................................. 13

*Rakofsky v. Mercedes-Benz USA, LLC*,
    No. 22-CV-04427, 2024 WL 1329923 (N.D. Cal. Mar. 27, 2024) .......................................... 12

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ................................................................................................. 3

*Romero v. Flowers Bakeries, LLC*,
    No. 14-CV-05189, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) .............................................. 20

*Samaan v. Anthem Blue Cross Life & Health Ins. Co.*,
    No. 20-CV-4332, 2021 WL 6425548 (C.D. Cal. Nov. 17, 2021) ............................... 11, 14, 17

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ............................................................................................. 4, 6

*SDS Korea Co. v. SDS USA, Inc.*,
    732 F. Supp. 2d 1062 (S.D. Cal. 2010) .................................................................................... 6

*Sec. Inv. Prot. Corp. v. Vigman*,
    764 F.2d 1309 (9th Cir. 1985) ................................................................................................. 8

*Setty v. Shrinivas Sugandhalaya LLP*,
    3 F.4th 1166 (9th Cir. 2021) .................................................................................................. 27

*Smith v. U.S. Bank Nat'l Ass'n ND*, No.,
    12-CV-2743, 2012 WL 12887913 (C.D. Cal. May 14, 2012) ................................................ 14

*Stewart v. Kodiak Cakes, LLC*,
    537 F. Supp. 3d 1103 (S.D. Cal. 2021) .................................................................................. 17

*Swarts v. Home Depot, Inc.*,
    689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................................................................ 3, 5, 8

*Teleport Mobility, Inc. v. Sywula*,
    2021 WL 2291807, (N.D. Cal. June 4, 2021) ......................................................................... 27

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

*Tribank Cap. Invs., Inc. v. Orient Paper, Inc.*,
No. 11-CV-3708, 2013 WL 4200898 (C.D. Cal. Aug. 14, 2013) ..............................9

*Tritt v. 3Commas Techs. OU*,
No. 23-CV-04893, 2024 WL 3352884 (N.D. Cal. June 3, 2024).........................7, 8

*United Med. Devices, LLC v. Blue Rock Cap., Ltd.*,
No. 16-CV-1255, 2016 WL 9047157 (C.D. Cal. Aug. 10, 2016) ...........................13

*Villarroel v. Recology Inc.*,
775 F. Supp. 3d 1050 (N.D. Cal. 2025) .............................................................15

*Walden v. Fiore*,
571 U.S. 277 (2014)...........................................................................................4

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ...........................................................................4

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013) .............................................................20

*Wood v. Santa Barbara Chamber of Com., Inc*,
705 F.2d 1515 (9th Cir. 1983) ..........................................................................10

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ...............................................................................9

*Yinou Pure Furniture Ltd. v. U.S. Pride Furniture Corp.*,
No. 21-CV-04367, 2021 WL 6882211 (C.D. Cal. Nov. 17, 2021) .........................13

**Statutes**

9 U.S.C. § 202 ..........................................................................................................26

28 U.S.C. § 1391 .......................................................................................................9

28 U.S.C. § 1406 ......................................................................................................10

**Rules**

Civ. L. R. 3-4 ..........................................................................................................22

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

**INTRODUCTION**

Nothing that Plaintiffs say in their Opposition to the Jump Defendants' Motion to Dismiss or Alternatively to Compel Arbitration (the "Motion" or "Mot.") provides any basis to deny the Motion. Rather than respond to the Motion by identifying the specific contract their claims are based upon, Plaintiffs resort to a shell game, assuring the Court that the contracts that the Jump Defendants put forward are not the ones they are suing on but that, if only they could have some discovery, they will find a secret contract somewhere that somehow supports their outlandish allegations. But disclaiming reliance on the contracts attached to the Motion in favor of some fictional other agreement—that Plaintiffs never saw and do not plausibly allege exists—cannot save their claim. This case should be dismissed.

*First*, Plaintiffs' Opposition does nothing to rescue the Complaint's inadequate jurisdictional allegations. Plaintiffs boldly declare that they "have alleged sufficient facts—through reasonable inferences drawn from public information—to plausibly establish general and specific jurisdiction over Defendants." Opp'n at 1. But the Opposition is devoid of any actual argument for general jurisdiction. And while Plaintiffs spill much ink in an attempt to show that the Jump Defendants have some contacts with California, they have no meaningful response to the Jump Defendants' outcome-dispositive argument that the second prong of the specific jurisdiction test—engagement in suit-related conduct in California—is not met here.

Plaintiffs also continue to insist that the Jump Defendants somehow subjected themselves to personal jurisdiction in this case by litigating *Patterson* (the N.D. Cal. action) or by seeking a transfer here of *Kim* (the N.D. Ill. action) so that it could be consolidated with *Patterson* for the sake of efficiency. *Id.* at 14–15. But Plaintiffs completely ignore the Jump Defendants' arguments on this issue: *Patterson* and *Kim* involve claims brought under federal statutes that permit the exercise of personal jurisdiction **based on contacts with the United States**. Contacts with California were irrelevant to the jurisdictional analysis in those cases. In any event, any consent to personal jurisdiction in California that either of the Jump Defendants may have given in cases that Plaintiffs themselves describe as "unrelated to this matter," Compl. ¶ 10, n.1, does

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

not establish consent for all cases in the same forum as a matter of law. Mot. at 15–16.

*Second*, Plaintiffs entirely fail to address, and thus concede, the arguments for dismissal of the Complaint under the first-to-file rule. *See id.* at 18–21. As shown, this case is the second of Plaintiffs' two actions with nearly identical material allegations premised on the same alleged injuries of an identical putative class of UST investors. *Compare* Nev. Compl. (Dkt. No. 34-2) ¶¶ 59–100, *with* Compl. ¶¶ 63–98. Dismissal is warranted on this ground alone.

Further, Plaintiffs fail to refute the Jump Defendants' arguments demonstrating venue is improper here, and their argument in the alternative—that the Court should transfer the case to Illinois rather than dismiss it—should be rejected because Plaintiffs engaged in blatant forum shopping when they sued here and, in any event, their claims are deficient.

*Third*, the Jump Defendants' Motion showed that Plaintiffs' claims must be dismissed under Rule 12(b)(6) because they rest entirely on allegations of breaches of unidentified terms in unspecified contracts, which renders those claims deficient as a matter of law. Mot. at 27–34. Plaintiffs' Opposition does not address those deficiencies at all. In fact, Plaintiffs concede that their oral contract claims are time-barred. And in response to the other 12(b)(6) arguments, Plaintiffs only regurgitate the Complaint's vague and conclusory allegations and then proclaim that those deficient allegations "adequately state claims for relief." Opp'n at 27–28. They do not.

At the same time, having failed to adequately allege the existence of any contract that might support their fanciful claims, Plaintiffs unequivocally deny that they are seeking to enforce any of the contracts related to Prime Trust or to the UST/LUNA loans that actually do exist and that the Jump Defendants had to deduce might be at the center of Plaintiffs' claims. *Id.* at 26–27. That Plaintiffs now claim that those contracts are not the contracts at issue (despite the fact that the Complaint appears to point to them) demonstrates that the Complaint, as pled, violates fundamental pleading standards because it fails to provide the Jump Defendants with fair notice of Plaintiffs' contract claims.

*Finally*, Plaintiffs fail in their attempt to avoid the mandatory arbitration clauses of the contracts that do exist and that appear to correspond to Plaintiffs' ambiguous allegations.

2

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

1     This case does not belong in any court, and certainly not this one.  The Court should

2     dismiss the action or, in the alternative, compel Plaintiffs to arbitration.

3                                    **ARGUMENT**

4     **I.    Plaintiffs Identify No Basis for the Exercise of Personal Jurisdiction Over the**

5           **Jump Defendants**

6           In the Motion, the Jump Defendants explained why this Court has neither general nor

7     specific personal jurisdiction over them.  Plaintiffs' Opposition either simply ignores those

8     arguments or fails to adequately rebut them.

9           **A.    Plaintiffs Ignore the Jump Defendants' Arguments Concerning General**

10          **Jurisdiction, Thereby Conceding the Point**

11          Although Plaintiffs superficially maintain that the Court has general personal jurisdiction

12    over the Jump Defendants, they completely ignore all of the arguments explaining why general

13    personal jurisdiction is lacking here, thereby conceding the issue.  *Swarts v. Home Depot, Inc.*,

14    689 F. Supp. 3d 732, 740 (N.D. Cal. 2023) (Plaintiff conceded lack of general personal jurisdiction

15    by not responding).  As explained, Jump Trading and Jump Crypto—which have their principal

16    places of business in Illinois and were formed in Delaware—are not subject to general jurisdiction

17    in California under the Supreme Court's exacting test set forth in *Daimler AG v. Bauman*, 571

18    U.S. 117 (2014).  Mot. at 9–11.  Plaintiffs' conclusory allegations that the Jump Defendants have

19    "continuous and systematic contacts with this judicial district, [and] do substantial business in this

20    State and within this judicial district," Compl. ¶ 10, are insufficient even if they were true.  Under

21    *Daimler*, even "substantial" business contacts or relationships are "not pervasive enough to

22    establish jurisdiction."  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).  Accordingly,

23    the Court should find that it lacks general personal jurisdiction over the Jump Defendants.

24          **B.    Plaintiffs Fail to Demonstrate That the Exercise of Specific Personal**

25          **Jurisdiction Would Be Proper Here**

26          As Plaintiffs acknowledge, they bear the burden of demonstrating as to each Jump

27    Defendant both (1) that the defendant "purposefully direct[s]" its activities or "purposefully

28                                         3

avails" itself of the benefits afforded by [California's] laws; and (2) that their claims "arise[] out of or relate[] to the defendant's [California]-related activities." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (quotations and citation omitted); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (plaintiffs bear burden on these two prongs); Opp'n at 11.   While Plaintiffs' arguments on the first prong (purposeful availment) ultimately fall short, the Court need not even reach that issue because Plaintiffs' arguments under the second prong (suit-related conduct in California) are virtually non-existent and inadequate.

### 1.  Plaintiffs Do Not Come Close to Establishing Suit-Related Conduct in California by the Jump Defendants

In the Motion, the Jump Defendants explained that Plaintiffs cannot establish specific personal jurisdiction because Plaintiffs fail to allege any suit-related conduct in California by the Jump Defendants.  Mot. at 11–13.  Rather, Plaintiffs' claims are based entirely on alleged losses arising from the failure of Prime Trust, a "Nevada-based trust company" and "bank," to process Plaintiffs' orders to redeem UST held in custody by Prime Trust.  Compl. ¶¶ 31, 33.  Plaintiffs only allege that the Jump Defendants, neither of which is organized or has its principal place of business here, are responsible based on purported contractual obligations made "through various subsidiary arrangements" with Prime Trust (a Nevada company) or TFL (a Singapore company). *Id.* ¶ 16; *see, e.g.*, ¶¶ 2, 7, 38, 53.  Those allegations provide no basis to find forum-related conduct by each Jump Defendant relevant to Plaintiffs' claims. *See InfoSpan, Inc. v. Emirates NBD Bank PJSC*, 903 F.3d 896, 903 (9th Cir. 2018); *Walden v. Fiore*, 571 U.S. 277, 278 (2014) ("[N]one of [the] challenged conduct ha[s] anything to do with [California] itself.").

Plaintiffs barely offer any response.  Their entire argument on this outcome-dispositive issue—a mere four sentences of their 31-page brief—boils down to this:  because one of the Plaintiffs placed a sell order (from California) that was then supposedly routed from Prime Trust (in Nevada) to the Jump Defendants (sitting outside California) who then supposedly refused to fill that order, they have somehow satisfied their burden here.[1]  But that argument turns the legal

---

[1] While Plaintiffs allege other scant contacts by the Jump Defendants with California, they do not

1    standard on its head. The relevant question is not whether a *Plaintiff* may have engaged in suit-

2    related conduct in California. Rather, it is whether the *Jump Defendants* did so. Here, Plaintiffs

3    do not even attempt to argue that the Jump Defendants engaged in any conduct in, or directed

4    towards, California that is even remotely related to this dispute. Further, as explained in the

5    Motion, the mere fact that a Plaintiff was harmed in California by the supposed failure to fill an

6    order outside California is not sufficient for jurisdiction to attach. Mot. at 12.

7         Plaintiffs' reliance on *Swarts* does not save their case from dismissal. There, the

8    connections to California were far more extensive than they are in this case: a California plaintiff

9    brought claims regarding online chat conversations he had in California with the defendant on the

10   defendant's interactive website about products he purchased in California from that website. In

11   addition, the defendant in that case reached into California by recording the plaintiff's chat

12   conversations in California, allegedly in violation of the California Invasion of Privacy Act. 689

13   F. Supp. 3d at 743. Plaintiffs' allegations here are a far cry from *Swarts*. At most, they amount

14   to the Jump Defendants allegedly contracting with TFL (a Singapore entity) and Prime Trust (a

15   Nevada entity) and Prime Trust interacting with a California plaintiff. Permitting personal

16   jurisdiction under Plaintiffs' theory would subject the Jump Defendants to jurisdiction anywhere

17   a plaintiff lived—obliterating the "real limits" to personal jurisdiction designed to "adequately

18   protect defendants foreign to a forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592

19   U.S. 351, 362 (2021).

20        Plaintiffs have therefore failed to identify any suit-related conduct in this forum by either

21   Jump Defendant, precluding the exercise of personal jurisdiction.

22        **2.    Plaintiffs Also Fall Short of Satisfying the Purposeful Availment Prong**

23        As noted above, because Plaintiffs fail on the "suit-related conduct" prong of the specific

24   _____

25   argue that these contacts relate to this dispute. Opp'n at 13. Nor could they, as those purported
     California contacts have nothing to do with the alleged conduct at issue in this case. *See, e.g.*,

26   Opp'n Ex. 10 (identifying individuals purportedly employed by unidentified Jump-related
     entities, during time periods postdating the issues in this dispute, who are not claimed to have

27   worked in cryptocurrency much less UST); Opp'n Exs. 11, 12 (identifying a single conference
     and a single fellowship in California unrelated to cryptocurrency that postdate the issues here).

28

5

personal jurisdiction test, the Court need not even reach the question of whether the declaration Plaintiffs submitted satisfies the "purposeful availment" prong. But if the Court does reach this issue, it should find Plaintiffs fail on this front too.

Plaintiffs cobble together an argument that the Jump Defendants purposefully availed themselves of the privilege of doing business in California because: (i) the Jump Defendants have not established that they have not availed themselves of California jurisdiction; (ii) certain Jump entities provided travel grants to California conferences and fellowships to California researchers; (iii) the Jump website privacy and cookies policies have terms for California users; (iv) Defendant Jump Trading's General Counsel is licensed to practice law in California; and (v) there are over 30 individuals on LinkedIn who list a Jump entity (not necessarily either Jump Defendant) as their employer and identify their location as California. Opp'n at 13. But this patchwork of alleged contacts with California (even if accurate) is insufficient to demonstrate the substantial connection to California required to establish purposeful availment.

As an initial matter, Plaintiffs improperly try to shift their burden by claiming that *the Jump Defendants* have not demonstrated a lack of purposeful availment. *See* Opp'n at 13. But the burden of establishing purposeful availment rests squarely on Plaintiffs, and they have not met it. *Schwarzenegger*, 374 F.3d at 802.

Further, Plaintiffs continue to impermissibly lump the Jump Defendants together, and in doing so fail to identify jurisdictional facts specific to each Jump Defendant individually or to demonstrate why the contacts of one Jump-related entity properly would be attributable to both Jump Defendants here. *See Payrovi v. LG Chem Am., Inc.*, 491 F. Supp. 3d 597, 603 (N.D. Cal. 2020). This alone warrants dismissal.

The remainder of Plaintiffs' arguments fall short of purposeful availment. A grant to attend a single conference in California and a single fellowship awarded to a California resident, by an unidentified Jump entity, (at most) "create only an attenuated affiliation with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985); *see, e.g.*, *SDS Korea Co. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1079–80 (S.D. Cal. 2010) (holding that attendance and display

of product at a trade show in California was insufficient to establish specific personal jurisdiction). Plaintiffs' attempt to conjure jurisdiction from the Jump Trading Group's website privacy policy and cookies policy is similarly unavailing because "a mere web presence is insufficient to establish personal jurisdiction." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). Plaintiffs do not allege that the Jump Defendants engaged in any commercial activity in California through the Jump website, rendering the website policies irrelevant. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997) (holding that personal jurisdiction over the defendant did not exist where the defendant "conducted no commercial activity over the Internet in [the forum State]").

Plaintiffs also fail to explain how Mr. Hinerfeld's license to practice law in California is relevant to the inquiry concerning whether *the Jump Defendants* purposefully availed themselves of the laws and protection of California.[2] Plaintiffs do not allege that Mr. Hinerfeld has practiced law in California at any relevant time, much less on behalf of the Jump Defendants.[3]

Finally, Plaintiffs' allegation that there are Jump employees who work in the jurisdiction—which again fails to distinguish between defendants, as several of the identified individuals list employment only with "Jump Trading Group," *see* Opp'n Ex. 10 at 7, 8, 10, 12, 15, 18, 25, 26, 27—is on its own insufficient for jurisdiction.[4] *See Tritt v. 3Commas Techs. OU*,

---

[2] Jurisdiction over Mr. Hinerfeld, who is not a defendant in this case, is irrelevant. But Plaintiffs' allegations would not even be sufficient to establish purposeful availment by Mr. Hinerfeld himself, as "membership in a state Bar does not have any impact on the jurisdictional analysis. It is the actual practice of a profession and not the possession of the right to practice that brings a person within the jurisdiction of a court." *Est. of Logan by & Through Logan v. Busch*, 574 F. Supp. 3d 660, 678 (W.D. Mo. 2021); *see Crea v. Busby*, 48 Cal. App. 4th 509, 515–16, 516 (1996).

[3] Plaintiffs' careless assertion that Mr. Hinerfeld is not licensed to practice law in Illinois, Opp'n at 5, is both false, as a simple search of the online Illinois Attorney Registration and Disciplinary Commission registry reveals, and gratuitous, as it is irrelevant to contacts with California.

[4] Plaintiffs' claim that there are "over 30" Jump employees in California is misleading and wrong. Notably, Plaintiffs point to only 30 employees in "one of the largest private trading firms in the world." Compl. ¶ 15. But of the 27 individuals in their exhibit, several do not list a Jump entity until *after* the alleged UST transactions at issue and thus are irrelevant. *See* Opp'n Ex. 10 at 5, 7, 8, 12, 25, 27; *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered.").

7

No. 23-CV-04893, 2024 WL 3352884, at *1 (N.D. Cal. June 3, 2024).  Plaintiffs therefore have not identified sufficient minimum contacts with California to justify exercising personal jurisdiction over the Jump Defendants here.

### C.    The Jump Defendants Have Not Consented to Jurisdiction in California

Plaintiffs continue to insist that the Jump Defendants have consented to personal jurisdiction based on Jump Trading's acceptance of jurisdiction in California in *Patterson* and *Kim*.  Opp'n at 14–15.  They are wrong.  Both *Patterson* and *Kim* arise under federal statutes that permit the exercise of personal jurisdiction over any defendant with minimum "contacts with the *United States, not any particular state*."  *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985) (emphasis added and citation omitted).  In those cases, jurisdiction was evaluated based on *nationwide* contacts, unlike in this case.  What is more, Plaintiffs themselves claim that *Patterson* and *Kim* are "unrelated to this matter."  Compl. ¶ 10, n.1.  Thus, the submission to jurisdiction in the Northern District of California in those matters is irrelevant as a matter of law. *See Core-Vent v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993) (holding that personal jurisdiction in one matter does not subject that defendant to personal jurisdiction for all cases in the same forum).  Plaintiffs' failure to respond to the Jump Defendants' thorough briefing on these issues, *see* Mot. at 14–15, is fatal to their argument, *see Swarts*, 689 F. Supp. 3d at 740.

### D.    Jurisdictional Discovery Would Be Futile

Plaintiffs are not entitled to take jurisdictional discovery here.  To obtain jurisdictional discovery, a plaintiff must make a threshold showing that discovery would reveal facts that would provide a jurisdictional hook.  *Tritt*, 2024 WL 3352884, at *1 (denying jurisdictional discovery where Plaintiffs did not describe how additional discovery would change the jurisdictional outcome in light of the significant problems with their theories).  "[A] mere hunch that discovery might yield jurisdictionally relevant facts or bare allegations in the face of specific denials are insufficient reasons for a court to grant jurisdictional discovery."  *De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1276 (N.D. Cal. 2024).  Plaintiffs have not even tried to make that showing here to bolster their remarkably vague allegations of wrongdoing.

8

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

In fact, their broad interrogatories—nearly all of which do not seek information regarding the Jump Defendants' purported actions in California related to the events at issue in this case— confirm that "jurisdictional discovery would be little more than a fishing expedition seeking support for [farfetched] jurisdictional theories." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 508 (9th Cir. 2023). Without a "viable route to establish personal jurisdiction," jurisdictional discovery should not be granted. *See id.* at 508.

## II.    Plaintiffs Cannot Avoid Dismissal Based on the First-To-File Rule or for Improper Venue.

Plaintiffs ignore the Jump Defendants' first-to-file arguments and fail to demonstrate that this district is a proper venue. Instead, they argue that because there is personal jurisdiction over the Jump Defendants and because the *Patterson* case remains pending, venue is proper. But that argument is meritless, and their alternative request for transfer should be denied.

### A.    Plaintiffs Concede That Their Complaint Violates the First-to-File Rule

As an initial matter, the Opposition completely ignores the first-to-file rule, which was briefed at length in the Jump Defendants' Motion. *See* Mot. at 18–21. Plaintiffs' failure to oppose this argument concedes it. *See Tribank Cap. Invs., Inc. v. Orient Paper, Inc*., No. 11-CV-3708, 2013 WL 4200898, at *4 (C.D. Cal. Aug. 14, 2013) (Plaintiff's failure to address argument in motion to transfer venue constituted waiver).

### B.    Plaintiffs Have Not Identified a Connection to This Venue

Moreover, Plaintiffs' Opposition fails to explain why venue is proper in this district. As detailed in the Motion, Plaintiffs have not pleaded that "a substantial part of the events or omissions giving rise to [their] claim occurred" in this district, as required by 28 U.S.C. § 1391(b)(2) (Plaintiffs' only asserted basis for venue, Compl. ¶ 11). Plaintiffs' conclusory allegations that venue is proper, that one plaintiff resides in the district, and that unidentified putative class members surely reside in the district cannot alter that "all of the events and omissions alleged in the Complaint" occurred *outside of this district*. Mot. at 17–18; *see Elofson v. Bivens*, No. 15-CV-6332, 2015 WL 13916655, at *1–*2 (C.D. Cal. Aug. 21, 2015).

Instead of addressing the Jump Defendants' arguments, Plaintiffs claim that venue is proper because there is personal jurisdiction over the Jump Defendants in this district. Opp'n at 16. But, as discussed above, Plaintiffs have not established that at all.

Nor does Jump Trading's motion to transfer in *Kim* change anything. As is facially evident from that motion to transfer, the motion was predicated entirely on the existence of an earlier-filed case, i.e., *Patterson*, which did not require contacts with California and which made similar allegations to *Kim*. *See* Opp'n Ex. 9. If the mere filing of a motion to transfer the *Kim* matter to this district were sufficient to establish venue, then venue in this district would be appropriate against the Jump Defendants for any plaintiff wishing to sue in any case no matter how unrelated this district is to the factual allegations; not surprisingly, Plaintiffs cite no legal support for that absurd outcome.

### C.    Transfer Is Not Appropriate

Plaintiffs' request for a transfer rather than dismissal should be rejected outright. *See* Opp'n at 16. Transfer is only proper "in the interests of justice," *id.* (quoting 28 U.S.C. § 1406(a)), and Plaintiffs make no effort to explain why transfer in this case would meet that standard. Nor could they. As courts have explained, transfer does not serve the interests of justice where a plaintiff has engaged in forum shopping. *Wood v. Santa Barbara Chamber of Com., Inc*, 705 F.2d 1515, 1523 (9th Cir. 1983). And forum shopping is exactly what Plaintiffs have done here: as previously explained, Plaintiffs brought this case (in violation of the first-to-file rule) in the Northern District of California, apparently to avoid the bankruptcy stay in Nevada. Mot. at 20. Transfer to Illinois thus would not serve the interests of justice.

Further, as detailed in the Motion and below, Plaintiffs fail to state a claim for relief, and meritless cases should not be transferred to another district. *See McFarland v. Memorex Corp.*, 493 F. Supp. 657, 659–60 (N.D. Cal. 1980) (refusing to transfer where Plaintiff's case did not survive motion to dismiss). Accordingly, the case should be dismissed, not transferred.

### III.    Plaintiffs' Facially Deficient Claims Cannot Survive Rule 12(b)(6)

Plaintiffs' Opposition fails to show that the Complaint plausibly alleges a claim for any

relief.  In fact, Plaintiffs have conceded that their oral contract claim must be dismissed as untimely.  As for their written contract claim, Plaintiffs do not explain how that claim can possibly survive dismissal given all of the deficiencies identified in the Motion.  *See* Mot. at 27–38. Instead, Plaintiffs defend their contract claim by erecting a strawman:  they argue that the Jump Defendants' case for dismissal rests primarily on the four contracts that were filed with the Motion and that the Court must therefore address various evidentiary issues.  Opp'n at 28.  But that is simply false.  The primary basis for dismissal was and remains that Plaintiffs' claims are inadequately pled because they "are based entirely on unidentified terms in unspecified contracts" and are devoid of allegations that are necessary to state a viable breach of contract claim. Mot. at 1.  Plaintiffs' defense of their other non-contract claims is equally meritless for the reasons explained below.

A.    **Plaintiffs Concede Their Third-Party Beneficiary Claim for Breach of Oral Contract Must Be Dismissed as Untimely**

To the extent Plaintiffs base their breach of contract claim on a purported oral contract, that claim is barred by California's two-year statute of limitations.  Mot. at 32–33.  While the Complaint erroneously avers that the statute of limitations on Plaintiffs' oral contract claim was tolled until the date on which they purportedly learned that the Jump Defendants were Prime Trust's alleged "liquidity provider," that is incorrect as a matter of law.  *Id.* at 32–34.

In their Opposition, Plaintiffs do not address that argument and therefore concede that their oral contract claims are time-barred.  *See, e.g.*, *Cress v. Nexo Fin. LLC*, No. 23-CV-00882, 2023 WL 6609352, at *14 (N.D. Cal. Oct. 10, 2023) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment") (citation omitted)); *Samaan v. Anthem Blue Cross Life & Health Ins. Co.*, No. 20-CV-4332, 2021 WL 6425548, at *4 (C.D. Cal. Nov. 17, 2021) (dismissing, without leave to amend, contract claims due to failure to oppose limitations argument).  Accordingly, to withstand Rule 12(b)(6) dismissal, Plaintiffs' Complaint must adequately plead a breach of a written contract, which it fails to do.

**B.    Plaintiffs Do Not Show How Their Vague Allegations Are Sufficient to State a Claim for Breach of Written Contract**

Although Plaintiffs failed to specify in the Complaint what law applies to their contract claims, they now assert in their Opposition that California law does.  *See* Compl. ¶¶ 63–69; Opp'n at 4.  Assuming for purposes of the Motion that were correct, under California law, "to state a claim for breach of contract a plaintiff must plead the contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and damage to plaintiff therefrom."  *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016).  The Complaint fails to plead those requisite elements, and nothing in Plaintiffs' Opposition demonstrates otherwise.

**1.    Plaintiffs Have Not Sufficiently Pled a Written Contract**

First, as explained in the Motion and ignored in the Opposition, the contract claim fails because it does not allege specific counterparties to any contract or contracts that give rise to the alleged liquidity obligations, let alone specify which Defendant—be it Jump Trading, Jump Crypto, or some other entity—took on those obligations.  *See* Mot. at 28–30.  Instead, the Complaint vaguely and haphazardly refers to:  (i) multiple unspecified "Subject Contracts," which "Jump" (defined to include not only Jump Trading and Jump Crypto but also "Does 1 through 10") is alleged to have entered into "with Prime Trust or with Terraform Labs or with both entities" (Compl. ¶ 64); (ii) "similar arrangements entered into in 2019 and 2020" among unspecified parties (*id.* ¶ 43); and (iii) a single agreement between Prime Trust and an unspecified Jump-related counterparty that was allegedly "kept secret until June 2023" (*id.* ¶ 51).

Such "dizzying references to multiple agreements, promises, and contracts" cannot support a viable contract claim because they make it "impossible to discern which contract, terms, *parties*, and breaches [form] the basis of the breach-of-contract claim."  *AK Futures LLC v. LCF Labs Inc.*, No. 21-CV-02121-JVS, 2022 WL 16859970, at *4 (C.D. Cal. Oct. 5, 2022) (internal quotation marks omitted) (emphasis added).[5]  The absence of specific allegations about which

---

[5] *See e.g.*, *Gen Digit., Inc. v. Sycomp*, No. 24-CV-04106, 2024 WL 4336525, at *5 (N.D. Cal. Sept. 27, 2024) (dismissing contract claim where Plaintiff failed to "flesh[] out with factual allegations" each Defendant's promise, Plaintiff's consideration, or "how or when each Defendant

12

named defendant had signed a contract at issue precludes courts from "draw[ing] the reasonable inference that [any named defendant is] bound by any such contract." *Gabrielian v. JPMorgan Chase & Co.*, No. 16-CV-131, 2016 WL 11780191, at *3 (C.D. Cal. Mar. 15, 2016).

Plaintiffs not only fail to address (and therefore concede) that fatal defect in their Complaint, but their Opposition also continues to lump together Jump Trading and Jump Crypto—broadly asserting that those "Defendants agreed to act as market makers and assumed contractual obligations to provide liquidity for UST"—without ever specifying which Defendant assumed which obligation under which contract. Opp'n at 27. A defendant "should not be required to guess which allegations pertain to it." *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011). "By failing to differentiate among defendants or specify which defendant is the subject of [the] various allegations," the Complaint violates Rule 8(a)(2) "because it fails to provide [Defendants] with fair notice." *Id.*; *United Med. Devices, LLC v. Blue Rock Cap., Ltd.*, No. 16-CV-1255, 2016 WL 9047157, at *2 (C.D. Cal. Aug. 10, 2016) (holding failure "to clearly allege which Defendants were parties to the Agreement" is "sufficient to find that dismissal is warranted"); *Press Rentals Inc. v. Genesis Fluid Sols. Ltd.*, No. 11-CV-02579, 2013 WL 485654, at *4 (N.D. Cal. Feb. 6, 2013) (same).

Second, as noted, Plaintiffs' contract claims rest entirely on allegations of unidentified terms in unspecified contracts. Mot. at 1, 3–4, 29–30. That is not sufficient. "In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Hassan v. Facebook, Inc.*, No. 19-CV-01003, 2019 WL 3302721, at *3 (N.D. Cal. July 23, 2019) (emphasis added). "A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint." *Langan v. United Servs. Auto.*

_____

actually agreed to be bound by the alleged contract"); *Rakofsky v. Mercedes-Benz USA, LLC*, No. 22-CV-04427, 2024 WL 1329923, at *7 (N.D. Cal. Mar. 27, 2024) (dismissing contract claim that did not specify which Defendant "Plaintiff [was] alleging he had a contractual relationship with, and which contract govern[ed]"); *Kuhn v. Three Bell Cap.*, 698 F. Supp. 3d 1119, 1124 (N.D. Cal. 2023) (dismissing contract claim on similar grounds); *Yinou Pure Furniture Ltd. v. U.S. Pride Furniture Corp.*, No. 21-CV-04367, 2021 WL 6882211, at *3 (C.D. Cal. Nov. 17, 2021) (same).

1    *Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014).

2         Under California law, where, as here, the Complaint neither includes a copy of a contract

3    nor recites any of the contract terms verbatim, Plaintiffs must plead the contract according to its

4    "legal effect." *Samaan*, 2021 WL 6425548 at *4 (citing *McKell v. Washington Mut., Inc*., 142

5    Cal. App. 4th 1457, 1489 (2006)); *Smith v. U.S. Bank Nat'l Ass'n ND*, No. 12-CV-2743, 2012

6    WL 12887913, at *1 (C.D. Cal. May 14, 2012).  To plead legal effect, "a plaintiff must still allege

7    the substance of [the contract's] relevant terms."   *Samaan*, 2021 WL 6425548 at *4 (internal

8    quotation marks omitted and citation omitted) (alteration in original).  Courts in this Circuit

9    recognize that "[t]his is more difficult [than pleading the precise contract language]" as pleading

10   legal effect requires Plaintiffs to provide a "comprehensive" explanation of the contract's relevant

11   legal terms and to "avoid[] legal conclusions" in so doing.  *Parrish v. Nat'l Football League*

12   *Players Ass'n*, 534 F. Supp. 2d 1081, 1094 (N.D. Cal. 2007).

13        Far from pleading a comprehensive explanation, Plaintiffs' Complaint "pleads only

14   generalities and legal conclusions," which is insufficient to state a breach of a written contract.

15   *Mahmoud v. Select Portfolio, Inc.*, No. 3:17-CV-00568, 2017 WL 3387470, at *5 (N.D. Cal. Aug.

16   7, 2017).  While the Opposition asserts that the Complaint's allegations "establish that Defendants

17   agreed to act as market makers and assumed contractual obligations to provide liquidity for UST"

18   (Opp'n at 27), in reality, it does nothing of the sort.  As explained in the Motion, the Complaint

19   does not point to, let alone recite, any language or provisions from any contract that either Jump

20   Defendant supposedly had entered into to provide liquidity regardless of market conditions.  Mot.

21   at 28–31; *see Langan*, 69 F. Supp. 3d at 980 ("To plead a claim for breach of contract, Plaintiff

22   must at least allege the material terms *of a specific contract*." (emphasis added)).  Without

23   referencing any specific contract, all Plaintiffs do is allege in conclusory fashion that unknown

24   "Subject Contracts *generally obligated* Jump to provide liquidity of UST for the benefit of UST

25   investors who used Wallet Apps." Compl. ¶ 64 (emphasis added).  Plaintiffs then allege that those

26   amorphous contracts "obligated Jump to provide funding for and authorize the execution of

27   investor sell orders" which, according to Plaintiffs, "required Jump to fund and authorize access

28

14

to its accounts with Prime Trust." *Id.* ¶ 65. But Plaintiffs' allegations are nothing more than "unsubstantiated characterizations of the alleged contract terms," which "is not sufficient to plead the existence of a contract." *Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050, 1065 (N.D. Cal. 2025).

Neither the handful of emails nor Prime Trust's vague statements about Jump's supposed role as a "liquidity provider"—which Plaintiffs exhibit and quote in their Opposition (*see* Opp'n at 6–7)—support the existence of contract terms that Plaintiffs allege or even the existence of any contract at all in which such terms might exist. Not one of those documents implies the existence of, let alone specifies, any obligation that purportedly required either of the Jump Defendants (or anyone) to buy unlimited quantities of UST that any UST holder using the Wallet Apps might have wanted to sell at any time—an obligation that no rational commercial actor would plausibly take on because, by Plaintiffs' own allegations, it would be a commitment to buy potentially *billions* of dollars' worth of UST in exchange for alleged receipt of UST loans (not even payments) "worth $30 to $50 million U.S. dollars."[6] Compl. ¶ 39 (alleging TFL's loans of UST to Jump as purported consideration for alleged liquidity obligations); *id.* ¶ 25 (alleging there were billions of dollars of UST in circulation, which made "UST the third-largest stablecoin by market capitalization"); *id.* ¶ 48 (alleging that when "the value of UST had dropped to $0.09" that "wiped out billions of dollars of market capital"). It is well settled that this Court "need not accept as true factual allegations that are not plausible on their face." *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 922 (9th Cir. 2013).[7]

---

[6] At most, the materials exhibited in the Opposition discuss purported *plans* to enter into agreements under which a Jump affiliate (but not either Jump Defendant) would borrow UST from TFL and deposit it with Prime Trust to make UST available for purchase, **not sale**, in the open market. *See, e.g.*, Dkt. No. 46-5 at 3 (discussing arrangement as being limited to "users buy[ing] UST from Prime Trust, [Prime Trust] credit[ing] [Jump's] account with USD and withdraw[ing] UST to send to users").

[7] Moreover, while Plaintiffs now attempt to distance their Complaint from the contracts that actually do exist between Prime Trust and a Jump-related entity, those contracts further underscore the implausibility of Plaintiffs' claims. As the Motion showed, the agreements involving Prime Trust that the Jump Defendants were able to identify based on Plaintiffs' vague

15

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

1

2.    **Plaintiffs Have Not Pled Performance or Excuse for Nonperformance**

2       If, as Plaintiffs now argue, California law governs their contract claim, then the Opposition

3    also fails to show how the Complaint satisfies California law's requirement to plead the non-

4    breaching party's performance under the contract.  *McGrew v. Countrywide Home Loans, Inc.*,

5    No. 08-CV-1831, 2009 WL 10672902, at *2 (S.D. Cal. July 28, 2009).  Even where, as here, a

6    plaintiff seeks to enforce a contract as a purported third-party beneficiary, the complaint must still

7    allege, *inter alia*, "the promisee's performance or excuse for nonperformance."  *Id.* at *2.  The

8    Complaint is devoid of any allegations that the non-breaching party to the unspecified contract or

9    contracts on which Plaintiffs base their claims had performed its obligations or was excused for

10   any nonperformance.  Plaintiffs' failure to plead that element provides an independent basis for

11   dismissing their contract claim.  *See, e.g.*, *Patton v. Experian Data Corp.*, No. 17-CV-01559,

12   2018 WL 6184773, at *5 (C.D. Cal. Sept. 12, 2018).

13

3.    **Plaintiffs Fail to Show Their Conclusory Allegations of Third-Party**

14   **Beneficiary Status Are Sufficient to State a Contract Claim**

15      In their Motion, the Jump Defendants also demonstrated that Plaintiffs' breach of contract

16   claim is deficient for failure to adequately plead Plaintiffs' third-party beneficiary standing.  Mot.

17   at 34–35.  Rather than meaningfully respond, Plaintiffs simply rehash the Complaint's conclusory

18   allegation that they "were the intended beneficiaries of Defendants' liquidity services, as those

19   services were, in part, for the benefit of Plaintiffs and the sole purpose and utility of UST liquidity

20   was to allow investors to place buy and sell orders and to financially gain from their investments."

21   Opp'n at 28; *see* Compl. ¶¶ 65–66.  But that is not enough.

22      "[U]nder California law the intent to benefit a third party must be apparent from the terms

23   of the contract."  *Hariton v. Chase Auto Fin. Corp.*, No. 08-CV-6767, 2010 WL 3075609, at *7

24   _____

25   allegations refute any notion that either Jump Trading or Jump Crypto took on any contractual
     obligations alleged in the Complaint.  Mot. at 5–6; 30–31.  As explained, neither agreement

26   obligates Jump Crypto's foreign subsidiary or either of the Jump Defendants to fund the Prime
     Trust account or to use it for any transactions.  *Id.* at 6.  The terms of those agreements make it

27   even more implausible that the Jump Defendants would have agreed to any obligation requiring
     them to buy any sell offer regardless of market conditions.

28

16

1   (C.D. Cal. Aug. 4, 2010) (citing *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010 (9th Cir.

2   2000)). Accordingly, Plaintiffs must "allege facts," with reference to specific contract terms,

3   "showing that a motivating purpose of the [contract] was to benefit Plaintiffs." *Partners All.*

4   *Corp. v. Ally Bank*, No. 3:24-CV-01222, 2024 WL 4596413, at *5 (S.D. Cal. Oct. 28, 2024). They

5   failed to identify terms in these unspecified contracts that establish the intent to benefit a third

6   party, which provides an independent basis for dismissing their contract claims. *See, e.g.*,

7   *Samaan*, 2021 WL 6425548, at *4 (Plaintiff "cannot conclusorily assert that he is a third-party

8   beneficiary . . . without reference to the relevant [contract] terms that support that conclusion").[8]

9          **4.      There Is No Reason for the Court to Convert the Jump Defendants'**

10               **Motion to Dismiss into Motion for Summary Judgment**

11          The Opposition falsely claims that the Jump Defendants' "arguments for dismissal rely

12  almost exclusively on the written declaration of their General Counsel and the four documents

13  that are neither attached nor referenced in the Complaint." Opp'n at 28. First, the Jump

14  Defendants demonstrated that the Complaint (1) fails to adequately plead personal jurisdiction;

15  (2) fails to adequately plead venue; and (3) violates the first-to-file rule. Each of those defects—

16  none of which rely on Mr. Hinerfeld's declaration or the attached contracts—provides an

17  independent and sufficient basis for dismissing Plaintiffs' case. *See, e.g.*, *supra* pp. 3–10.

18         Second, as for the Rule 12(b)(6) argument, the Complaint *on its face* inadequately pleads

19  a claim for breach of contract. The Court can reach that conclusion without considering the

20  Hinerfeld Declaration or the four contracts. As explained, the Jump Defendants filed those

21  contracts precisely because Plaintiffs' Complaint is woefully deficient—they had to divine that

22  the vague allegations regarding the purported parties to, and the time period for, Plaintiffs' breach-

23  of-contract allegations appear to point to those agreements. Plaintiffs' problem is that those

24  agreements do not contain the liquidity obligation they allege. Unsurprisingly (but without any

25

26  ─────────────────

27  [8] And, as shown in the Motion, the plain terms of the contracts between Prime Trust and Jump Crypto's subsidiary that do exist refute any notion that, in dealing with Prime Trust, there was ever any intent to benefit the entire universe of Wallet App users who traded UST. Mot. at 6.

28

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

1   support), Plaintiffs now claim that those are not the correct agreements.  Opp'n. at 26–27.[9]  But

2   even if the Court disregards those contracts based on Plaintiffs' denials, the Complaint still should

3   be dismissed as facially deficient for reasons stated above and in the Motion.  *See*, *e.g.*, *G & C*

4   *Auto Body Inc v. Geico Gen. Ins. Co*., No. 06-CV-04898, 2008 WL 687371, at *6 (N.D. Cal. Mar.

5   11, 2008) (converting Rule 12 motion into Rule 56 motion was inappropriate where it was

6   unnecessary to consider extrinsic evidence to resolve Rule 12 motion).  Plaintiffs' allegations are

7   facially inadequate to state a claim against anyone and particularly against the Jump Defendants.[10]

8            **C.    Plaintiffs' Statutory and Common Law Claims Are Inadequately Pled**

9            Plaintiffs defend their statutory and common law claims largely by repeating their

10  insufficient allegations and claiming that dismissal of those claims would be premature.  But their

11  failure to identify colorable theories of connection to California or to identify which state laws

12  govern their non-contract claims justifies dismissal now.   Nor is supplemental jurisdiction

13  warranted, particularly given the inadequacies of Plaintiffs' claims.

14

15

---

16  [9] Plaintiffs' challenge to the authenticity of the four contracts fails because they "do not detail
    how [the contracts] are inauthentic, inaccurate, or disputed."  *Stewart v. Kodiak Cakes, LLC*, 537
17  F. Supp. 3d 1103, 1119 (S.D. Cal. 2021).  Grasping at straws, Plaintiffs only say they "have no
    information regarding the authenticity of the contracts" and thus "have no choice but to challenge
18  their authenticity and seek leave to conduct discovery relating thereto."  Opp'n at 27.  That is
    insufficient.  *See*, *e.g.*, *Espinoza v. Trans Union LLC*, No. 22-CV-01670, 2023 WL 6216550, at
19  *4 (D. Ariz. Sept. 25, 2023) ("a vague desire to conduct discovery into 'the authenticity and
    admissibility' of various documents is a far cry from actually impugning the authenticity").
20

21  [10] In any event, nothing in the Opposition raises any factual issues regarding the existence of any
    contract Plaintiffs are seeking to enforce.  Opp'n at 28–29.  As explained above, the emails from
22  filings in the SEC's case against TFL the Opposition cites do not even implicitly discuss any of
    the liquidity obligations that Plaintiffs allege.  *See supra* pp.14–15.  And Plaintiffs' reliance on
23  the Prime Trust OTC Trading Agreement grossly misconstrues Paragraph 2 of that contract—
    which on its face is limited to "Transactions" between Tai Mo Shan Ltd. ("TMSL") and Prime
24  Trust—by claiming that it refers to some outside "investor transactions."  Opp'n at 29.  Again,
    Plaintiffs have no answer to the fact that other provisions in the OTC Trading Agreement directly
25  refute their allegations by expressly providing that TMSL and Prime Trust agreed that they "will
    be transacting for [their] own account" only and "[n]either party will be providing ***any service*** to
26  the other Party."  Exhibit D to the Declaration of Matthew Hinerfeld ("Hinerfeld Decl."), Dkt.
27  No. 33-4 ¶ 5 (emphasis added).

28

18

1            **1.**        **Plaintiffs' California Law Claims Cannot Apply to Conduct**

2              **Occurring Extraterritorially**

3            Plaintiffs fail to identify any wrongful conduct by the Jump Defendants in California, as

4    required to assert California state law claims for civil theft and under the UCL by non-resident

5    plaintiffs or a nationwide class.  *See Dfinity USA Rsch. LLC v. Bravick*, No. 22-CV-03732, 2023

6    WL 2717252, at *5 (N.D. Cal. Mar. 29, 2023).  Plaintiffs advance several arguments for why that

7    analysis should be deferred.  None has merit.

8            With respect to the UCL claim, Plaintiffs argue that there is "a distinct possibility" that

9    the Jump Defendants' "alleged misconduct emanated from California," citing the purported

10   contacts with California discussed above.  *See* Opp'n at 30; *supra* pp. 4–8.  Plaintiffs provide no

11   explanation, however, for how facts such as the alleged employment of individuals in California,

12   none of whom are claimed to have worked in cryptocurrency (much less UST) and many of whom

13   did not even work for any Jump entity at the time of the events at issue, creates a "distinct

14   possibility" that the Jump Defendants' alleged refusal to consummate UST transactions occurred

15   in California.  Plaintiffs' failure to identify any connection to California related to this dispute

16   renders "alleged misconduct emanat[ing] from California" highly improbable.  Opp'n at 30.

17           Plaintiffs' assertion that they need jurisdictional discovery to confirm the Jump

18   Defendants' alleged misconduct in California also falls short.  As explained above, jurisdictional

19   discovery is not automatic, and Plaintiffs' allegations that the Jump Defendants "maintain a

20   presence in California" are insufficient to entitle them to such discovery.  *See, e.g.*, *Giron v. Hong

21   Kong & Shanghai Banking Corp., Ltd.*, No. 2:15-CV-08869, 2016 WL 11585001, at *3 (C.D.

22   Cal. Oct. 21, 2016) ("It is well established that a court need not grant jurisdictional discovery in

23   the context of a Rule 12(b)(6) Motion where such a request is based on speculative allegations

24   and would subject a defendant to a 'fishing expedition' in the hunt for relevant evidence.").

25           As for their civil theft claim, Plaintiffs concede that California's rule against

26   extraterritorial application of its laws bars that claim as to the non-resident Plaintiffs.  Opp'n at

27   30–31.  Plaintiffs' reliance on *C. M. v. MarinHealth Med. Grp., Inc.*, No. 23-CV-04179, 2024 WL

28

19

217841 (N.D. Cal. Jan. 19, 2024), to argue that applying the extraterritoriality rule to dismiss that claim on behalf of a nationwide class is premature is misplaced. In that case, a court in this District declined to address at the pleadings stage whether plaintiffs' class-wide claims under California's civil theft statute were impermissibly extraterritorial because there, unlike here, the plaintiff plausibly alleged that the misconduct at issue occurred in California as the defendant and the sole other party involved in alleged misconduct were all California residents. *Id.* at *5. Here, none of the Defendants are California residents, and Plaintiffs have not plausibly alleged that any conduct at issue occurred in California. In such circumstances, courts apply California's extraterritoriality rule to grant 12(b)(6) dismissals of California statutory claims brought on behalf of a nationwide class. *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013) (dismissing class-wide California statutory claims where the defendant was located outside California and the plaintiffs did not allege any wrongful conduct in California).

### 2. Plaintiffs Must Plead Which State's Common Law Applies

Plaintiffs' efforts to remediate their failure to allege which state law applies to their conversion and unjust enrichment claims also fall flat. According to Plaintiffs, the court in *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069 (N.D. Cal. 2024), "refuse[d] to dismiss common law causes of action applicable to a potential nationwide class because such claims 'do not invoke any particular state's law.'" Opp'n at 31. But *In re Theos* did no such thing; the issue there was whether the plaintiffs had *standing* to bring claims under other states' laws (which the court ultimately determined the plaintiffs were not attempting to do in any event). 750 F. Supp. 3d at 1084. Plaintiffs offer no support for the argument that their common law claims may survive dismissal despite failing to identify the applicable state law for those claims. *See Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *Kavehrad v. Vizio, Inc.*, No. 21-CV-01868, 2022 WL 16859975, at *3 (C.D. Cal. Aug. 11, 2022).

## IV.    Plaintiffs' Efforts to Avoid Arbitration Should Be Rejected

Plaintiffs attempt to create the misimpression that the Jump Defendants sought to compel arbitration based on a cherry-picked set of agreements. These arguments are disingenuous and

1  contradict Plaintiffs' own allegations that point to the contracts that the Jump Defendants

2  provided. The problem is not that these are the wrong contracts; the problem for Plaintiffs is that

3  these contracts do not provide them a basis to seek relief from the Jump Defendants.[11]

4      Plaintiffs now ignore their own allegations describing the "Subject Contracts" because

5  they are inconvenient to them.  In the Complaint, Plaintiffs allege, albeit vaguely and

6  inconsistently, that the relevant agreements were made by non-parties Prime Trust, TFL, and an

7  unidentified group of "Jump" entities, including Defendants' affiliates.  Compl. ¶¶ 63–69.  As

8  explained in Defendants' opening brief and pending Rule 11 motion, these allegations appear

9  vaguely to describe loan agreements between TFL and a foreign subsidiary of Jump Crypto,

10  TMSL, which were publicly disclosed in the SEC's trial against TFL.  Mot. at 5; Dkt. No. 50 at

11  4–5, 10–11.  Because Plaintiffs alleged that the "Subject Contracts" were from a date in July of

12  2021, Compl. ¶¶ 43, 64, Defendants moved to compel arbitration based on the existing Second

13  Amended and Restated Loan Confirmation from that month (the "July 2021 Loan Confirmation,"

14  Hinerfeld Decl. Ex. A (Dkt. No. 33-1)), along with the existing Master Loan Agreement expressly

15  incorporated by its terms (Hinerfeld Decl. Ex. B (Dkt. No. 33-2)) (together, the "TFL Loan

16  Agreements").[12]  Defendants likewise moved to compel arbitration based on the Prime Trust

17  _____

18  [11] The Jump Defendants also note that Plaintiffs' argument that these are not the correct contracts
   is contrary to the parties' correspondence about the Jump Defendants' pending Rule 11 motion.

19  As part of that process, defense counsel shared these agreements with Plaintiffs' counsel before
   filing the motion to compel arbitration or the Rule 11 motion.  Plaintiffs' counsel represented that

20  these agreements supported their allegations and did not dispute that these contracts were among
   those referenced in the Complaint.  Dkt. No. 51-7 ("These agreements are consistent with Jump

21  agreeing to provide liquidity for UST.  In our view, this serves to reinforce . . . the allegations in
   the complaint.").  Plaintiffs also did not dispute that these contracts were among those that they

22  seek to enforce against the Jump Defendants when opposing the Jump Defendants' motion to stay
   discovery.  Opp'n at 10.  To the contrary, Plaintiffs contended that "Jump fail[ed] to show that ***no***

23  ***other relevant*** contracts exist" that could potentially contradict their terms.  *Id.* (emphasis added).

24  [12] Plaintiffs speciously assert that the "Master Digital Currency Loan Agreement" provided in the

25  context of the Jump Defendants' Rule 11 motion somehow suggests that the Jump Defendants

26  presented a cherry-picked set of agreements.  Not so.  The Hinerfeld Declaration attested to the
   lack of other agreements "*from July 2021.*"  Dkt. No. 33 at ¶ 7 (emphasis added).  The "Master

27  Digital Currency Loan Agreement" is from *November 2019.*  Defendants relied on the July 2021
   Agreement because ***Plaintiffs themselves allege*** that the relevant agreements supporting their

28  

21

1  Account Agreement and Prime Trust OTC Trading Agreement (Hinerfeld Decl. Exs. C & D (Dkt.

2  Nos. 33-3 & 33-4)) (the "Prime Trust Agreements"), because these are the only two agreements

3  between any Jump entity and Prime Trust other than a standard NDA.  Mot. at 5–6; Dkt. No. 33

4  at ¶¶ 3–8.  Rather than cherry-picking agreements, the Jump Defendants tried to be faithful to

5  what the Complaint, however vaguely, alleges about the contracts at issue.

6              **A.  Plaintiffs' Case Against Arbitration Fails**

7          While Plaintiffs would rather search for a phantom agreement, should the Court look at

8  the TFL Loan Agreements and Prime Trust Agreements (contracts that actually exist and appear

9  to have been alluded to in the Complaint), it should compel arbitration.  But the Court need not

10  (and may not) address whether equitable estoppel permits enforcement of these contracts by or

11  against non-signatories.  Each of these agreements requires arbitration and incorporates a clear

12  and unmistakable delegation clause by reference to the AAA rules.  Accordingly, all gateway

13  arbitrability questions are for the arbitrator (not the Court) to decide.  *See Henry Schein, Inc. v.*

14  *Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *Caremark, LLC v. Chickasaw Nation*, 43

15  F.4th 1021, 1029–30 (9th Cir. 2022).  Plaintiffs' arguments to the contrary are meritless.

16          First, Plaintiffs' arguments largely rely on mischaracterizations of the agreements.[13]  The

17  Court need only review the contracts' terms to reject these arguments out of hand.  Specifically:

18          TFL Loan Agreements.  Plaintiffs assert that the July 2021 Loan Confirmation contains

19  no arbitration provision at all.  Opp'n at 20, 22.  In so doing, Plaintiffs simply ignore that the July

20  2021 Loan Confirmation expressly incorporated the terms of the Master Loan Agreement, which

21  indisputably contains an arbitration provision.  Dkt. No. 33-1 at 1 ("The terms of this Loan are

23  claims were entered into around July 2021.  Compl. ¶¶ 43, 64.

24  [13] Plaintiffs' false assertions are replete throughout their brief.  Plaintiffs accuse the Jump
25  Defendants in a footnote of "add[ing] up to eight pages of additional briefing" and exceeding the
    stipulated 45-page limit because the footnotes did not conform with the 12-point type requirement
26  pursuant to Civ. L. R. 3-4(c)(2)(B).  While the Jump Defendants acknowledge the footnote size
    they used was in error, adjusting the footnotes in the Motion to 12-point type amounts to less than
27  two additional pages—not eight, as Plaintiffs claim.  Even factoring in the additional two pages,
    Defendants' brief does not exceed the page limit.  Reply Decl. of Jonathan D. Cogan, Ex. A.

specified below and in the Master Loan Agreement."); Dkt. No. 33-2 at 8 (Section XI of the Master Loan Agreement, "[A] dispute aris[ing] out of or relat[ing] to this Agreement, or the breach thereof . . . shall be finally resolved by binding arbitration . . . by the American Arbitration Association under its Commercial Arbitration Rules."); *see also* Mot. at 5–6, 21.

        <u>Prime Trust OTC Agreement</u>.  Plaintiffs' attack on the Prime Trust OTC Agreement fares no better.  They argue that the arbitration provision is "akin" to that addressed by the Ninth Circuit in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), which the Court held could not "by its own terms, apply to nonparties."  Opp'n at 20.  Not so.  In *Kramer*, the arbitration agreement was limited to disputes between "you and us," and on that ground, the Court determined that there was no "clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories."  705 F.3d at 1127.  The Prime Trust OTC Agreement's mandatory arbitration provision (which Plaintiffs fail to quote) is not so limited.  It broadly refers to "all claims or controversies" and does not contain the limit relied on in *Kramer*:

> Subject to the parties' rights to seek emergency, temporary and/or preliminary relief in court, *all claims or controversies arising out of or relating to this agreement*, or the breach thereof, or in any way arising out of or relating to the transactions . . . shall be settled by arbitration . . . administered by the American Arbitration Association in accordance with its commercial arbitration rules.

Prime Trust OTC Trading Agreement, Dkt. No. 33-4 at 4.  Plaintiffs' Opposition does not address this language at all.  Opp'n at 20–21 (addressing prior paragraph 18(a)).

        <u>Prime Trust Account Agreement</u>.  As to the Prime Trust Account Agreement, Plaintiffs contend that the arbitration provision "makes no reference to delegation or to the rules of an arbitral forum."  *Id.* at 22.  That is wrong.  Rather, as is clear from the face of the provision itself:

> Any claim or dispute arising under this Agreement may only be brought in arbitration . . . pursuant to the rules of the American Arbitration Association.

Prime Trust Account Agreement, Dkt. No. 33-3 at 11.  To the extent Plaintiffs impliedly argue that the reference to the "rules of the American Arbitration Association" is not a clear delegation clause because it does not identify a particular set of AAA rules, that argument lacks merit too.

1    *See Nguyen v. OKCoin USA Inc.*, No. 22-CV-06022, 2023 WL 2095926, at *4 (N.D. Cal. Feb.

2    17, 2023) (rejecting argument that delegation is unclear because the "AAA maintains 56 different

3    sets of active rules"); *see also* Mot. at 22 & n.15 (citing AAA Commercial Rule 7(a)).

4         Second, while Plaintiffs assert that Defendants have "fail[ed] to establish any one of the

5    alleged contracts are an agreement to arbitrate" their claims, their arguments actually challenge

6    the scope, not the validity, of the arbitration provisions in the contracts.  Opp'n at 19–20.  They

7    say, for example, with respect to the Master Loan Agreement, that the "*Agreement* referenced in

8    the [arbitration] clause contains only the terms of Terraform Labs's loans to Tai Mo Shan." *Id.*

9    at 20.  They assert that the arbitration provision thus does not cover their claims because "[t]here

10    is no reference anywhere in [the Master Loan Agreement] to arbitrating claims arising out of Jump

11    Trading or Jump Crypto's failure to comply with market maker obligations." *Id.*[14]  But whether

12    the arbitration provision covers Plaintiffs' claims concerns arbitrability issues (i.e., scope issues),

13    not the validity of any arbitration agreement (i.e., contract formation issues).  When, as here, there

14    is a valid "agreement to arbitrate containing an enforceable delegation clause," arguments "going

15    to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first

16    instance." *Caremark, LLC*, 43 F.4th at 1030; *see Henry Schein,* 586 U.S. at 68.

17         Third, Plaintiffs' attempt to challenge the validity of the delegation clauses is similarly

18    unavailing.  Opp'n at 21.  They argue that references to the AAA rules do not constitute a clear

19    and unmistakable delegation, despite the Ninth Circuit's decision in *Brennan v. Opus Bank*, 796

20    F.3d 1125 (9th Cir. 2015), because of Plaintiffs' "lack of sophistication."  Opp'n at 21–22.  But

21    this is a red herring.  Plaintiffs are claiming to sue as third-party beneficiaries of certain

22    agreements.  As they do not claim to have negotiated or signed the agreements, Compl. ¶¶ 63–69,

23    which were indisputably entered into between sophisticated commercial parties, Plaintiffs'

24    sophistication is irrelevant to the analysis.  Moreover, Plaintiffs cannot pick and choose provisions

25    of the agreement they like while ignoring the legal consequences of the provisions of the

26

27    —————————————

    [14] With respect to the Prime Trust Account Agreement, Plaintiffs argue that the provision "makes

28    no reference to Jump Trading, Jump Crypto, or market making obligations."  Opp'n at 20.

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

Case 3:25-cv-03989-PHK    Document 54    Filed 10/08/25    Page 33 of 36

agreement. If they want to enforce some of the provisions, they are bound by all of the provisions, including the arbitration provision. *See JSM Tuscany, LLC v. Superior Ct.*, 193 Cal. App. 4th 1222, 1239–40 (2011) (Under California and federal law, "[w]hen a plaintiff brings a claim which relies on contract terms against a defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.").

Even if Plaintiffs' sophistication were somehow relevant, the weight of authority in this Circuit confirms that "incorporation of the AAA rules is clear and unmistakable evidence of an intent to arbitrate regardless of the parties' sophistication." *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 863 (N.D. Cal. 2024). Indeed, Plaintiffs' own authority recognizes that the Ninth Circuit has not conclusively limited *Brennan* only to agreements "among sophisticated parties," and "courts within this district appear to increasingly apply *Brennan* without regard for the sophistication of the parties to the agreement." *Connell v. ByteDance, Inc.*, No. 24-CV-07859, 2025 WL 1828472, at *8 (N.D. Cal. July 1, 2025). The Court should follow suit here. This "conclusion is consistent with the approach taken by other federal courts of appeal," and, to the extent the Court were to agree with Plaintiffs that California law (and not federal common law) governs the analysis, "[i]t is also consistent with California law." *Id.* (citing *McLellan v. Fitbit, Inc.*, No. 16-CV-00036, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017)).

Because Plaintiffs fail to rebut that the agreements include valid arbitration provisions delegating arbitrability questions to an arbitrator, the Court should compel arbitration. The Court need not, and may not, consider gateway questions of arbitrability, including questions of enforcement by or against non-signatories and whether the scope of the arbitration provisions cover this dispute. *See Henry Schein,* 586 U.S. at 68; *Caremark, LLC*, 43 F.4th at 1029–30.

### B.    Plaintiffs Are Estopped From Avoiding Arbitration

Were this Court to take on the arbitrator's role of assessing non-signatory enforcement issues, then it should find that Plaintiffs must arbitrate. Plaintiffs assert that they are third-party beneficiaries of agreements made among "Jump" entities, TFL, and Prime Trust. Equitable estoppel principles under both federal common law and California law permit enforcement of

25

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY TO COMPEL ARBITRATION
CASE NO. 3:25-CV-03989-PHK

1   arbitration provisions found in these agreements against Plaintiffs even if they are non-signatories

2   because they seek to exploit and benefit from these agreements' terms.[15]

3          While Plaintiffs now self-servingly deny that the "Subject Contracts" described in the

4   Complaint include the TFL Loan Agreements, the Prime Trust Account Agreement, or the Prime

5   Trust OTC Trading Agreement, the Court should not ignore that the allegations in the actual

6   Complaint (although vague and inconsistent) appear to allude to these contracts.  Plaintiffs assert

7   that the Jump Defendants have cited only "thin" and "swing-and-miss" cases in support of their

8   argument that equitable estoppel applies, but in doing so they simply ignore or misconstrue the

9   substance of those cases.  Courts consistently explain that equitable estoppel principles apply to

10  require arbitration when, as here, a non-signatory plaintiff brings claims relying on agreements

11  and seeks a benefit from the very agreements containing the arbitration provisions by claiming a

12  right to enforce them under a third-party beneficiary theory.  When a "plaintiff is suing on a

13  contract—on the basis that, even though the plaintiff was not a party to the contract, the plaintiff

14  is nonetheless entitled to recover for its breach, the plaintiff should be equitably estopped from

15  repudiating the contract's arbitration clause." *JSM Tuscany*, 193 Cal. App. 4th at 1239–40.

16         In *Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006), the Ninth Circuit confirmed that

17  equitable estoppel principles would permit enforcement of an arbitration provision against a non-

18  signatory plaintiff where that plaintiff sought to "enforce the terms" of the agreement at issue.  *Id.*

19  at 1102.  Plaintiffs attempt to diminish this decision as "apply[ing] the 'general rule' . . . that 'a

20  nonsignatory is not bound by an arbitration clause.'"  Opp'n at 25.  But as the Ninth Circuit

21  explained, an exception to that rule encompasses circumstances where, as here, non-signatory

22  plaintiffs bring breach of contract claims premised on contracts to which they are not a party that

---

[15] As explained in Defendants' opening brief, federal common law applies to the equitable estoppel analysis.  Mot. at 23–24.  As the parties to the TFL Loan Agreements and Prime Trust Agreements (which are commercial in nature) include either TMSL and/or TFL (both of which are not citizens of the United States), the agreements fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), and federal common law applies.  *See* 9 U.S.C. § 202.  In any event, the Court need not make a choice-of-law determination because equitable estoppel standards under both federal common law and California law require Plaintiffs to arbitrate.

26

contain arbitration clauses. *Comer*, 436 F.3d at 1102.

District courts in this Circuit properly rely on *Comer* to compel arbitration under these circumstances. In *Teleport Mobility, Inc. v. Sywula*, No. 21-CV-00874, 2021 WL 2291807, (N.D. Cal. June 4, 2021), another case Plaintiffs wrongly assert has no application here, Opp'n at 25, the district court concluded that equitable estoppel principles under both federal common law and California law permitted enforcement of an arbitration provision against plaintiffs who brought a lawsuit based on the "express written contracts" to which they were not a party. *See Teleport*, 2021 WL 2291807, at *3. The district court explained that the plaintiffs "knowingly exploited" the relevant contract by "bringing th[e] lawsuit . . . based on defendant's alleged violation" of the agreement with the arbitration provision. *Id.* It did not compel arbitration after finding that the plaintiffs were signatories to the agreement.[16]

Apparently recognizing that the law does not favor them, Plaintiffs argue that the motion to compel arbitration should be denied because it relies on the "same" equitable estoppel argument that "Jump has made unsuccessfully in multiple prior cases." Opp'n at 23. However, the plaintiffs in the cases Plaintiffs cite (*Patterson* and *Kim*) did not pursue breach of contract claims, and the agreements in those cases were not the agreements at issue here.

While the agreements alluded to in the Complaint show that the Jump Defendants are not even a party to them and that, in any event, no Jump-related entity ever contractually bound itself to provide the alleged liquidity, they each contain valid mandatory arbitration clauses. Thus, to the extent the case is not dismissed, the Court should compel Plaintiffs to arbitrate their claims.

## CONCLUSION

For reasons set forth above and the Motion, the Jump Defendants respectfully request that the Court dismiss this action or, in the alternative, compel arbitration and stay the action.

---

[16] Plaintiffs' reliance on the Ninth Circuit's decision in *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166 (9th Cir. 2021) is misplaced. Opp'n at 25. The Court did not address enforcement of an arbitration provision against a non-signatory plaintiff who sued based on the same contract to which they are not a party. *Setty*, however, supports the application of federal common law to the equitable estoppel analysis. *See* 3 F.4th at 1168 (applying "federal substantive law" to non-signatory arbitrability issues in cases involving the New York Convention).

1     Dated: October 8, 2025                    Respectfully submitted,

2                                               KOBRE & KIM LLP

3                                               /s/ Jonathan D. Cogan

4                                               Jonathan D. Cogan (admitted *pro hac vice*)
                                                Steven W. Perlstein (admitted *pro hac vice*)
5                                               Igor Margulyan (admitted *pro hac vice*)
                                                Mathew T. Elder (admitted *pro hac vice*)
6                                               Daisy Joo (admitted *pro hac vice*)
                                                800 Third Avenue
7                                               New York, NY 10022
                                                Tel.: (212) 488-1200
8                                               jonathan.cogan@kobrekim.com
9                                               steven.perlstein@kobrekim.com
                                                igor.margulyan@kobrekim.com
10                                              mathew.elder@kobrekim.com
                                                daisy.joo@kobrekim.com
11
12                                              Daniel A. Zaheer (Bar ID 237118)
                                                150 California Street, 19th Floor
13                                              San Francisco, CA 94111
                                                Tel.: (415) 582-4800
14                                              daniel.zaheer@kobrekim.com

15                                              Erika L. Berman (admitted *pro hac vice*)
16                                              1919 M Street NW
                                                Washington, DC 20036
17                                              Tel.: (202) 664-1900
                                                erika.berman@kobrekim.com
18
19                                              *Attorneys for Defendants*
                                                *Jump Trading, LLC and*
20                                              *Jump Crypto Holdings LLC*

21

22

23

24

25

26

27

28
                                        28