Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
959 Natoma St.
San Francisco, CA 94103
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN WARD, DAVID KREVAT, and NABIL MOHAMAD, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>JUMP TRADING, LLC; JUMP CRYPTO HOLDINGS LLC; and DOES 1-10<br><br>        Defendants. | Case No.: 3:25-cv-03989-PHK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date: November 20, 2025<br>Time: 1:30 p.m.<br>Dept: Courtroom F, 15th Floor<br>Judge: Hon. Peter H. Kang |

**TABLE OF CONTENTS**

I.    Introduction ...........................................................................................................1

II.   Factual & Procedural Background ......................................................................1

   A.   General Factual Allegations in Plaintiffs' Complaint .........................................1

   B.   Plaintiffs' Counsel Thoroughly Investigated Jump's Malfeasance ....................2

   C.   Plaintiffs' Counsel Carefully Considered All Information Provided by Jump .................5

III.  Legal Standard....................................................................................................7

IV.   Argument .............................................................................................................9

   A.   The Specific Allegations Jump Identifies as False and Subject to Sanctions Are Not Even Alleged in Plaintiffs' Complaint ......................................................9

   B.   Plaintiffs' Counsel Conducted a Thorough Inquiry Before Filing Suit ...........................12

   C.   The Evidentiary Support Gleaned Through Plaintiffs' Counsel's Inquiry Adequately Supports Plaintiffs' Claims, Especially Considering the Stage of this Litigation....................13

     1)   Facts and Evidence Discovered Through Counsel's Investigation Serve as Robust Support for Plaintiffs' Allegations ....................................................13

     2)   Jump's Arguments for Sanctions Require an Analysis of the Merits of Plaintiffs' Claims and Are Inappropriate for This Type of Motion and at This Stage of the Litigation 15

     3)   Plaintiffs Do Not Require the Level of Evidence Jump Contends They Do to Support Their Claims at This Phase of Litigation..................................................16

   D.   The Limited Evidence Jump's Counsel Provided Plaintiffs Before Filing this Motion Does Not Undermine the Credibility of Plaintiffs' Evidence or Demonstrate the Falsity of Plaintiffs' Allegations..........................................................................................19

   E.   Jump Does Nothing to Attack Plaintiffs' Non-Contract Claims, Which Are All Sufficiently Pleaded and Supported .........................................................................21

   F.   The Court Should Award Plaintiffs Their Reasonable Fees and Costs Incurred in Opposing Jump's Frivolous Motion ..........................................................................23

V.    Conclusion...........................................................................................................24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Benedict v. Hewlett-Packard Co.*,
   2014 WL 234207 (N.D. Cal. Jan. 21, 2014)...........................................................14, 15

4

*City of Livonia Employees' Retirement System and Local 295/Local 851 v. Boeing Co.*,
   711 F.3d 754 (7th Cir. 2013) ...............................................................................22

5

6

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ..............................................................................................8

7

*Copple v. Astrella & Rice, P.C.*,
   442 F. Supp. 2d 829 (N.D. Cal. 2006)................................................................16, 17

8

9

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ..............................................................................25

10

*Facebook, Inc. v. Gajjar*,
   2022 WL 18539351 (N.D. Cal. Aug. 23, 2022) .....................................................27

11

12

*Gagasoules v. MBF Leasing LLC*,
   286 F.R.D. 205 (E.D.N.Y. 2012) ..........................................................................17

13

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
   801 F.2d 1531 (9th Cir. 1986) ..............................................................................22

14

15

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ................................................................................16

16

*In the Matter of Tai Mo Shan Limited*,
   Exchange Act Release No. 11349, 2024 WL 5198136 (Dec. 20, 2024) ..................4

17

18

*Intelligent SCM, LLC v. Qannu PTY Ltd.*,
   2015 WL 13916820 (C.D. Cal. July 2, 2015) .........................................9, 17, 19, 28

19

*Kendrick v. Zanides*,
   609 F.Supp.1162 (N.D. Cal. 1985)..........................................................................9

20

21

*Kimes v. Stone*,
   84 F.3d 1121 (9th Cir. 1996) ................................................................................17

22

*Lake v. Gates*,
   130 F.4th 1064 (9th Cir. 2025) ...............................................................................8

23

24

*Lee v. Hanley*,
   61 Cal.4th 1125 (2015)..........................................................................................24

25

Lorber v. Winston,
   993 F.Supp.2d 250 (E.D.N.Y. 2014) .....................................................................18

26

*MetLife Bank, N.A. v. Badostain*,
   2010 WL 5559693 (D. Idaho Dec. 30, 2010)........................................................14

27

*Operating Engineers Pension Trust v. A-C Co.*,
   859 F.2d 1336 (9th Cir. 1988)................................................................................8

28

*Patelco Credit Union v. Sahni*,
    262 F.3d 897 (9th Cir. 2001) ...................................................................................26

*People v. Vidana*,
    1 Cal. 5th 632 (2016) ..............................................................................................25

*Russell v. Walmart, Inc.*,
    680 F. Supp. 3d 1130 (N.D. Cal. 2023)....................................................................25

*Sec. & Exch. Comm'n v. Coinbase, Inc.*,
    726 F. Supp. 3d 260 (S.D.N.Y. 2024) ......................................................................13

*Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*,
    708 F. Supp. 3d 450 (S.D.N.Y. 2023) ......................................................................18

*Tom Growney Equip. v. Shelley Irrigation Dev.*,
    834 F.2d 833 (9th Cir. 1987) ......................................................................................8

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ...........................................................................passim

*Truesdell v. Southern California Permanente Medical Group*,
    293 F.3d 1146 (9th Cir. 2002) ..................................................................................12

*United National Ins. Co. v. R & D Latex Corp.*,
    242 F.3d 1102 (9th Cir. 2001) ............................................................................14, 19

*Verdugo-Gonzalez v. Holder*,
    581 F.3d 1059 (9th Cir. 2009) ..................................................................................25

*Voris v. Lampert*,
    7 Cal.5th 1141 (2019)...............................................................................................24

*Zaldivar v. City of Los Angeles*,
    780 F.2d 823 (9th Cir. 1986) ......................................................................................8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................................23

Cal. Penal Code § 496 ...........................................................................................22, 23

Fed. R. Civ. P. 11 .................................................................................................8, 23

**Treatises**

5A Charles Alan Wright & Arthur R. Miller,
    FEDERAL PRACTICE AND PROCEDURE, § 1336.3 ........................................................16

**Other Authorities**

CACI No. 2100.............................................................................................................22

1

### Statement of Issues to Be Decided

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issues:

a. Whether Plaintiffs have a basis in fact for the allegations and claims asserted in their complaint such that Defendants' Motion for Sanctions Pursuant to Rule 11 should be denied; and

b. Whether the Court should award Plaintiffs' counsel attorneys' fees and costs for the significant time and resources dedicated to demonstrating Defendants' Rule 11 motion was improper.

# I.    INTRODUCTION

Defendants Jump Trading, LLC, and Jump Crypto Holdings LLC's ("Defendants" or "Jump") Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure (the "Motion") is ill-conceived and frivolous. Rule 11 prohibits *unfounded* factual allegations and contentions. The allegations in Plaintiffs' Class Action Complaint for Damages (Dkt. 1, the "Complaint") that Jump claims are sanctionable are not only well-founded but are supported by substantial direct and circumstantial evidence. Jump knows about this evidence, as do Plaintiffs, because it was elicited in an SEC trial where Jump was shown to be in league with the convicted fraudster at the center of the financial meltdown that is the genesis of this litigation. Plaintiffs did more than adequate research to find evidentiary support for the allegations in the Complaint, participating in that trial and in multiple other litigations to uncover Jump's malfeasance. When Jump claimed to possess evidence showing Plaintiffs' allegations were false in the lead up to this Motion, Plaintiffs acted in good faith and considered every piece of additional information provided. That evidence did nothing to challenge, let alone refute, the allegations in the Complaint. To the contrary, some of Defendants' evidence further supported the allegations. There is no way Defendants meet the extraordinarily high bar for this Motion. It should be summarily denied and Plaintiffs should be awarded fees and costs incurred in opposing it.

# II.    FACTUAL & PROCEDURAL BACKGROUND

## A.    General Factual Allegations in Plaintiffs' Complaint

Plaintiffs Austin Ward, David Krevat, and Nabil Mohamad ("Plaintiffs") were investors who deposited money with various savings account-like services called "wallet apps." Dkt. 1 at ¶¶ 3, 12-14. The wallet apps at issue in this case accepted investor funds and invested them in a particular cryptocurrency staking enterprise called the Anchor Protocol, which promised yields from interest earned on deposits. *Id*. at ¶¶ 23-30.

The Anchor Protocol was a system of cryptocurrencies developed by Singapore-based Terraform Labs and its founder, Do Kwon, in or around 2018. Dkt. 1 at ¶¶ 23-30. One of the cryptocurrencies central to the Anchor Protocol was a so-called "stablecoin" named TerraUSD, also referred to as "Terra" or "UST," which was designed to maintain a one-to-one peg in value

to the U.S. dollar. *Id*. at ¶ 23. UST kept its peg to the dollar through its algorithmic relationship with another Terraform Labs cryptocurrency called the Luna. *Id*. Investors in UST could exchange one UST for $1.00 worth of Luna at any time, which, in theory, automatically adjusted the supply of UST and incentivized investors to buy and sell in a manner that kept UST pegged to the dollar. *Id*.

Due in part to the unregulated and secretive nature of the cryptocurrency industry, traditional banks refused to service investment tools like wallet apps and the Anchor Protocol. Dkt. 1 at ¶ 31. There was, however, a Nevada-based trust company that focused on digital asset investments and thus played a key role in facilitating the activity of the wallet apps. *Id*. The company, Prime Trust, served all banking functions necessary for wallet app users wishing to transfer, deposit, and withdraw funds. *Id*. at ¶ 33. When investors deposited funds into their accounts, triggering a purchase of UST, or withdrew funds from their accounts, triggering a sale of UST, Prime Trust facilitated their transactions. *Id*. at ¶¶ 33-35. For investments in the Anchor Protocol, Prime Trust, Terraform Labs, and the investors all required a third party to play the role of a market maker to provide liquidity for UST. *Id*. at ¶¶ 7, 40-42. This market maker served the function of holding large quantities of UST acquired from Terraform Labs and filling investor orders routed through Prime Trust. *Id*. at ¶ 39.

When UST unexpectedly began to lose its value in May 2022, Plaintiffs and thousands of other investors called on their wallet apps to withdraw their funds. Dkt. 1 at ¶¶ 45-46. The wallet apps, in turn, submitted sell orders to Prime Trust. *Id*. at ¶ 47. But Prime Trust would not fill the orders. *Id*. UST rapidly collapsed in value, costing investors billions in losses. *Id*. at ¶ 48. Investors demanded Prime Trust explain why it would not allow them to withdraw their funds. Dkt. 1 at ¶ 49. Prime Trust publicly responded by claiming that its "liquidity provider," which at that time remained unnamed, stopped servicing orders when the instability started. *Id*. at ¶ 47.

**B. Plaintiffs' Counsel Thoroughly Investigated Jump's Malfeasance**

Plaintiffs in this matter were also plaintiffs in a separate lawsuit filed against Prime Trust in 2022, titled, *Ward v. Prime Trust, LLC*, No. 2:22-cv-02034 (D. Nev. filed Dec. 7, 2022). Declaration of Kevin M. Osborne ("Osborne Decl."), ¶ 2. In that litigation, the plaintiffs alleged

that Prime Trust violated various Nevada state consumer protection statutes and fiduciary obligations for failing to fill investor orders. *Id*. In response to the plaintiffs' discovery requests in that case, Prime Trust revealed on June 20, 2023, that the unnamed liquidity provider that prevented it from filling investor orders was Defendant Jump Trading, LLC. *Id*. at ¶ 3; Ex. 1[1]. Plaintiffs' counsel began investigating Jump's involvement at that time. Osborne Decl."), ¶ 4.

The investigation revealed through public sources that Jump was an early backer of the Anchor Protocol. Osborne Decl., ¶ 4. There was evidence indicating personnel at Jump and Terraform Labs had long-standing relationships and potentially worked together on prior block chain-based investment projects. *Id*. Multiple investors filed cases against Jump when the Anchor Protocol collapsed, alleging that Jump caused UST to lose its value in violation of federal securities and commodities trading laws. *See*, *e.g.*, *Patterson v. Terraform Labs, Pte. Ltd.*, No. 3:22-cv-03600 (N.D. Cal. filed June 17, 2022) (alleging, *inter alia*, violations of federal securities laws); *Kim v. Jump Trading, LLC*, No. 23 CV 2921 (N.D. Ill. filed May 9, 2023) (alleging market manipulation and violation of federal commodities trading laws).

Knowing that Jump was Prime Trust's UST liquidity provider and that it was bound up with Terraform Labs, Plaintiffs' counsel found an SEC enforcement action against Terraform Labs and Do Kwon, titled, *Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, No. 23-cv-1346-JSR (S.D.N.Y.), where Jump was not a party but appeared to be under scrutiny. Osborne Decl., ¶ 5. Plaintiffs' counsel engaged with the SEC's lead prosecutors on the case, exchanged information with SEC personnel, reviewed certain publicly available evidence, represented a key SEC witness, and attended the SEC's trial against Terraform Labs in March 2024 in the Southern District of New York before Hon. Jed S. Rakoff. *Id*.

In their investigation, Plaintiffs' counsel came across various records used as exhibits in that case and at trial demonstrating a close relationship between Terraform Labs and Jump. For

---

[1] Unless otherwise indicated, all exhibits referenced herein are attached to the supporting Declaration of Kevin M. Osborne.

example, a June 2021 email from Do Kwon to the former President of Jump Crypto, Karnav

Kariya, stated under the heading "PrimeTrust UST liquidity provision":

> […] we need a third party market maker to keep UST in PrimeTrust's account to be able to satisfy user orders.
>
> […]
>
> The lift we need from you is simple –
>
> 1) [Terraform Labs] will lend you inventory in 30-50M clips.
>
> 2) You deposit this UST in PrimeTrust – when users buy UST from PrimeTrust, PT credits your account with USD and withdraws UST to send to users.
>
> 3) when the balance falls below 10M UST, we repeat 1 and 2 - we come up with a reasonable schedule for you to send us UST sale proceeds in 1 in USDC."
>
> We do not have any other trading firms with which we have enough incentive alignment to trust with large balances of funds, so is it mission critical for Anchor for Jump to be able to fill this role. We will work with you such that the lift / work needed from jump side is minimal."

Ex. 2.

Other documents specifically referred to a series of agreements in place between the two

entities. An email from Do Kwon to the "Terra Investor Relations" group, sent in January 2020,

stated that Terraform Labs "*agreed* to enter a partnership with Jump Trading whereby Jump will

deploy its own resources to improve liquidity of Terra." Ex. 3 (emphasis added). An August

2020 email from Kanav Kariya to Do Kwon stated:

> Worked on this proposal with our partners this morning, the whole team is really excited about *this partnership* and what it could mean for DeFi.
>
> […]
>
> *Gentleman's agreement* – We will support trading on terra stable coin pairs on all exchanges we're connected to and help maintain the peg.

Ex. 4 (emphasis added).

The information Plaintiffs' counsel obtained from the SEC enforcement action strongly

indicated Jump may be subject to SEC investigation itself. In December 2024, several months

after the *Terraform Labs* trial had concluded, the SEC revealed that it fined a Jump subsidiary

over $120 million for, among other things, deceptive conduct in trading UST. *In the Matter of*

*Tai Mo Shan Limited*, Exchange Act Release No. 11349, 2024 WL 5198136 (Dec. 20, 2024). In

the related order, the SEC stated that Jump's subsidiary, Tai Mo Shan Limited ("Tai Mo Shan"),
entered "agreements" with Terraform Labs beginning in November 2019, including one
agreement "that incentivized Tai Mo Shan to purchase UST in exchange for Terraform 'vesting'
Tai Mo Shan's existing option to purchase LUNA at a discount." *Id.*

While Plaintiffs' counsel was participating in the SEC enforcement action, they were
concurrently active in other litigation involving Prime Trust. In August 2023, Prime Trust
declared bankruptcy. In the bankruptcy proceeding, *In re Prime Core Techs. Inc.*, No. 23-11161
(JKS) (Bankr. D. Del.), Plaintiff Austin Ward was appointed to the creditors' committee. He and
his counsel, who is also Plaintiffs' counsel in the present action, were actively involved in
reviewing information and documents and interviewing key personnel in that proceeding.
Osborne Decl., ¶ 9.

Based on their counsel's exhaustive investigation, Plaintiffs filed the present action
against Jump on May 7, 2025, alleging that it entered into a "series of agreements" between
January 2019 and July 2021 to serve as a liquidity provider for wallet app users who invested in
UST. Dkt. 1 at ¶ 38 ("Between January 2019 and July 2021, Jump entered a series of agreements
with Terraform Labs and Prime Trust designed primarily to grow, stabilize, and support
investment in UST. Jump specifically agreed to provide liquidity for UST investments in the
U.S. market."); ¶ 39 ("Under these agreements, Terraform Labs agreed to provide a series of
lump sum loans to Jump in amounts between 30 and 50 million UST tokens, which at the time
were worth $30 to $50 million U.S. dollars based on UST's peg to the dollar. Jump was
obligated under the agreement to deposit the loaned UST tokens into accounts with Prime Trust
for the purpose of providing UST liquidity for investors using Wallet Apps that integrated with
UST.").

**C. Plaintiffs' Counsel Carefully Considered All Information Provided by Jump**

After Plaintiffs served the Complaint, counsel for Jump indicated it intended to move to
dismiss the Complaint and pursue sanctions under Rule 11 of the Federal Rules of Civil
Procedure. From June 9, 2025, to July 1, 2025, the Parties exchanged multiple emails and letters
regarding Jump's contention that the allegations in the Complaint lacked a good faith basis and

violated Rule 11. Dkt. 51-4 through 51-6. As a part of this conferral process, counsel for Jump provided Plaintiffs' counsel with four contracts that Jump's counsel contended were the contracts "apparently referenced" in Plaintiffs' Complaint. Dkt. 51-6. Specifically, Jump's counsel sent: (1) an August 15, 2020 "Master Loan Agreement" between Tai Mo Shan and Terraform Labs (Dkt. 33-2); (2) a July 21, 2021 "Second Amended and Restated Loan Confirmation" between Tai Mo Shan and Terraform Labs (Dkt. 33-1); (3) an August 19, 2021 "Prime Trust New Account Agreement" between Tai Mo Shan and Prime Trust (Dkt. 33-3); (4) and an August 24, 2021 "OTC Trading Agreement" between Tai Mo Shan and Prime Trust (Dkt. 33-4).[2] Osborne Decl., ¶ 10.

Plaintiffs' counsel followed up on July 2, 2025, pointing out that, while Jump's counsel indicated that there were no agreements between any Jump entity and Prime Trust other than those provided, it did not make that same representation with respect to Terraform Labs. Ex. 5. Plaintiffs' counsel inquired as to whether there were other agreements between any Jump entity and Terraform Labs. *Id.* Jump's counsel eventually revealed that there were other contracts between Jump and Terraform Labs, but they refused to provide them. *Id.* Jump's counsel offered only a bizarre justification for its refusal:

> [W]e provided you with the agreements between Jump (or any of its affiliate) and Terraform Labs (or any of its affiliate) that are alleged in the Complaint as 'Subject Contracts' Plaintiffs seek to enforce.
>
> […]
>
> If you were seriously considering whether to dismiss the case, we would have been open to providing all agreements between Jump and TFL as "confirmatory discovery."
>
> Based on your most recent correspondence, however, it seems that regardless of any response to your follow-up question or confirmatory discovery, your clients would continue to maintain that they have a sufficient basis for the factual allegations in the Complaint.

---

[2] The four agreements Jump's counsel sent Plaintiffs' counsel were all filed with Jump's July 9, 2025 Rule 12(b)(6) motion to dismiss or to compel arbitration, Dkt. 32.

*Id*. Put differently, Jump's counsel unilaterally selected the contracts it says the Complaint referred to, claimed those contracts undermined Plaintiffs' claims, then refused to show Plaintiffs' counsel any other contracts.

Ultimately, Plaintiffs' counsel concluded that the limited contracts Jump's counsel was willing to provide did nothing to refute the facts alleged in the Complaint. To the contrary, certain statements in these contracts appeared to support Plaintiffs' allegations. For example, the August 24, 2021 OTC Trading Agreement states that the parties—Tai Mo Shan and Prime Trust—intended to enter transactions for cryptocurrency and "the specific terms of any such Transactions will separately be agreed directly between the Parties." Dkt. 33-4 at p. 2. It went on to say, "once Tai Mo Shan and Counterparty have agreed to the terms of a Transaction (size, price and cryptocurrency) the Transaction is binding and final unless both Parties agree in writing otherwise." *Id*. These passages suggest there are other undisclosed agreements involving these entities.

Curiously, Jump did not attach the same four contracts to this Motion that it provided in the conferral process. Jump's Exhibit A to this Motion is a November 14, 2019 "Master Digital Currency Agreement" between Tai Mo Shan and Terraform Labs. Dkt. 51-1. Exhibit B is two agreements: a September 8, 2020 "Master Loan Agreement" between Tai Mo Shan and Terraform Labs and an April 1, 2021 "First Loan Modification" between Tai Mo Shan and Terraform Labs. Dkt. 51-2. Exhibit C is a July 21, 2021 "Second Amended and Restated Loan Confirmation" between Tai Mo Shan and Terraform Labs (Dkt. 51-3) and is the only contract that was provided to Plaintiffs' counsel in the conferral process leading to this Motion.

Despite counsel for Jump refusing to provide the records Plaintiffs' counsel requested, Jump filed the present Motion seeking sanctions under Rule 11 on September 26, 2025, citing an almost entirely different set of contracts than those provided to Plaintiffs' counsel.

### III.  <u>LEGAL STANDARD</u>

Under Rule 11, an attorney's signature on a pleading, motion, or other paper filed with the court constitutes a certification by that attorney that the paper is "well grounded in fact," "warranted by existing law or a good faith argument for the extension of existing law," and "not

interposed for any improper purpose." Fed. R. Civ. P. 11. The test imposed by Rule 11 is an objective one. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). It is met where the filed paper is frivolous, legally unreasonable or without factual foundation, or is brought for an improper purpose. *Zaldivar*, 780 F.2d at 831.

The provision of Rule 11 invoked by Jump is subsection (b)(3), which requires that a filing's factual contentions have evidentiary support. *See* Dkt. No. 50 at pp. 3, 7, 11. As the moving party, Jump bears the burden to show, by clear and convincing evidence, that the pleading is both baseless and made without a reasonable and competent inquiry. *Tom Growney Equip. v. Shelley Irrigation Dev.*, 834 F.2d 833, 837 (9th Cir. 1987); *Lake v. Gates*, 130 F.4th 1064, 1068 (9th Cir. 2025). This is a high bar, as Rule 11 sanctions are an "extraordinary remedy, one to be exercised with extreme caution" and reserved for "the rare and exceptional case where the action is clearly frivolous." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344-45 (9th Cir. 1988).

When the subject of a Rule 11 Motion is a plaintiff's complaint, the court conducts a two-prong inquiry to determine: (1) whether "some credible evidence" supports the plaintiff's statements, even if the support is weak or inferential, *see Kendrick v. Zanides*, 609 F.Supp.1162, 1172 (N.D. Cal. 1985); and (2) whether the plaintiff's lawyer made a pre-filing inquiry that was reasonable under the circumstances, *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990).[3] In evaluating whether an attorney conducted a "reasonable inquiry," a court asks whether a reasonable lawyer would have thought there was adequate support to make the allegation considering all the circumstances of the case. *See Townsend*, 929 F.2d at 1364

---

[3] "The Ninth Circuit has held that sanctions may be imposed on the signer of a paper or a represented party if (1) the paper is filed for an improper purpose, or (2) the paper is frivolous." *Intelligent SCM, LLC v. Qannu PTY Ltd.*, 2015 WL 13916820, at *22 (C.D. Cal. July 2, 2015) (citing *Townsend*, 929 F.2d at 1362). If a complaint is found to be non-frivolous, there cannot be a finding of improper purpose. *Townsend*, 929 F.2d at 1362. While it is unclear whether Jump seeks sanctions here for "improper purpose," such sanctions would be precluded if the Court finds the Complaint non-frivolous.

(describing factors such as the person's access to information and whether the case is in its early stages before discovery). If a lawyer conducts an appropriate inquiry and finds enough support to meet the objective standard, then the lawyer has done all that is needed to satisfy Rule 11.

## IV.    ARGUMENT

Jump contends, without explanation or support, that Plaintiffs' allegations are "objectively baseless" and "could not have been the product of a reasonable and competent inquiry." Dkt. 50 at pp. 2, 5. These arguments are meritless and contradicted by the facts. Plaintiffs' counsel conducted a thorough inquiry into the allegations before filing the Complaint. This inquiry uncovered ample support for Plaintiffs' allegations. When confronted with supposedly contradicting evidence from Jump, Plaintiffs' counsel carefully considered the evidence and reasonably concluded that, contrary to Jump's view, the allegations in the Complaint remained adequately supported. There is no basis for sanctions against Plaintiffs.

**A. The Specific Allegations Jump Identifies as False and Subject to Sanctions Are Not Even Alleged in Plaintiffs' Complaint**

Jump claims in this Motion that Plaintiffs fabricated the allegations in the Complaint with no good faith basis to maintain them. But the specific allegations Jump challenges are not allegations Plaintiffs made.

Jump's Motion argues that Plaintiffs put forth three categories of "baseless allegations" (Dkt. 50 at pp. 1-2):

(1) Allegations in paragraphs 5, 40–43, 51, 53–54, and 64-69 of the Complaint stating that Jump was "contractually obligated to provide liquidity or funding to ensure Plaintiffs (and other third-party UST investors) could buy and sell their UST investments from Prime Trust regardless of market conditions" (Dkt. 50 at p. 1);

(2) References in paragraphs 38 and 39 of the Complaint to agreements that "do not provide for any such liquidity obligation or any third-party beneficiary language—and were not even entered into by the Jump entities they have chosen to sue" (*id*. at p. 2); and

(3) A statement in paragraph 5 of the Complaint that is described as a "representation by a 'Jump partner company' promising to UST investors that they could liquidate their

---

1   investments during a market downturn, which Plaintiffs know—and, indeed, have alleged

2   in their class action against Prime Trust—was not made by any Jump-related entity but

3   rather by an executive of Prime Trust in 2018—years before Plaintiffs allege the

4   purported liquidity agreements were even made by Defendants" (*id*.).

5   The first statement Jump cites is a flat mischaracterization of the allegations in the

6   Complaint. Plaintiffs never alleged that Jump was obligated to provide UST liquidity "regardless

7   of market conditions." Plaintiffs allege that Jump breached its obligation to provide UST

8   liquidity under the circumstances that existed at the time Plaintiffs placed their UST sell orders,

9   nothing more. *See*, *e.g.*, Dkt. 1 at ¶ 67 ("Jump breached its obligations under the Subject

10  Contracts by refusing to fund its Prime Trust accounts and by refusing to authorize Prime Trust

11  to debit its account *when UST investors placed orders to sell UST*"). But Jump goes further still,

12  contending the Complaint alleges Jump's obligation to fill UST orders applied "without

13  limitation, including at pre-collapse prices and in whatever amount." Dkt. 50 at p. 4. Jump makes

14  these absurdist allegations from whole cloth, ostensibly turning the reasonable allegations in the

15  Complaint into declarations of infinite rights. Plaintiffs simply do not allege what Jump

16  contends.

17  The second statement Jump's cites is pure sleight of hand. Just as Jump did in its Rule

18  12(b)(6) motion to dismiss, it has selected a series of irrelevant contracts that were not referenced

19  in the Complaint, stated these "appear to be" the *only* agreement referenced in the Complaint,

20  then argued that the Complaint made false assertions about Jump's obligations under these

21  contracts. *See* Dkt. 32 at p. 44. Perhaps if the Complaint actually referred to these contracts,

22  Jump's argument would have a leg to stand on. But the Complaint makes no reference to these

23  contracts whatsoever. The Complaint refers to a "series of agreements" that Jump entered to

24  serve as a UST liquidity provider for wallet app investors. Dkt. 1 at ¶¶ 38, 39, 64. None of the

25  contracts Jumps attaches to this Motion mention UST. Nor do they reference the Jump entities

26  that are Defendants in this case. They cannot, therefore, be the agreements referenced in the

27  Complaint that "obligated Jump to provide liquidity of UST." Dkt. 1 at ¶ 64. Plaintiffs cannot

28

have possibly made a false statement about Jump's obligations under these contracts when Plaintiffs never even referred to them.

As to Jump's third argument, Jump does not question the truth of any part of Plaintiffs' allegation. The allegation reads:

> "As a Jump partner company put it in 2018, 'if everybody who owned a stablecoin decided to do a run and liquidate and get their money back, then that should be possible. All of the money should be available.' Jump was the liquidity provider that contracted to make that possible."

Jump makes no argument that any part of this allegation is false. This was a statement made by a Prime Trust spokesperson in 2018. Osborne Decl. at ¶ 11. Jump does not challenge this fact, nor can it—the statement is captured on a video from 2018 and is directly attributed to a Prime Trust employee. *Id*. If Plaintiffs intended to mislead the reader to believe this was a statement specifically about Jump's contracts in this case, they would not have made clear that the statement was made in 2018, a year before the contracts in this case existed. Moreover, Jump cannot dispute that it was a "partner" with Prime Trust. It presented proof of its partnership with Prime Trust as exhibits to its Rule 12(b)(6) motion to dismiss. *See* Dkt. 33-3, 33-4 (showing that a Jump subsidiary entered at least two contracts with Prime Trust). The Complaint simply alleges this comment was made by a Jump partner. It was. Jump's attempt to analogize these facts to those in *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146 (9th Cir. 2002), in which the court upheld sanctions where the complaint contained knowingly false factual contentions, misses by a mile. *Truesdell* involved a plaintiff's allegation in a wrongful termination case that no other employee had ever been fired on the same basis for which she was purportedly terminated. 293 F.3d at 1150. The plaintiff's lawyer, however, had previously represented another employee who had, in fact, been fired for the same reason. *Id*. at 1153-54. The plaintiff's counsel therefore "must have known" that the allegation was false. *Id*. As shown above, there is nothing false about Plaintiffs' allegation regarding the attribution of the subject quote. *Truesdell* has no bearing and there is no sanctionable misstatement here.

Plaintiffs encourage the Court to analyze the contentions in Jump's Motion closely. When it does, it will see that Jump is seeking sanctions based on a statement about contract

conditions that Plaintiffs never made, a set of contracts that Plaintiffs never referenced, and a quote about market runs that Plaintiffs never attributed to Jump. At its essence, this Motion is seeking sanctions for things that Plaintiffs did not say. The Motion is the baseless filing here.

**B. Plaintiffs' Counsel Conducted a Thorough Inquiry Before Filing Suit**

In determining the adequacy of the support and the reasonableness of a pre-filing inquiry, courts consider all the circumstances of the case. *Townsend*, 929 F.2d at 1364. For example, courts have explained that where "the relevant facts are in control of the opposing party, more leeway must be given to make allegations in the early stages of litigation that may not be well-grounded." *Id*. Here, even though Plaintiffs' allegations are substantiated, because the specifics of the exact terms and source of Jump's liquidity obligation are "in control of the opposing party," Plaintiffs should be given latitude in alleging such facts. *Id.*

For context, this case arises in the shadowy world of cryptocurrency. Secrecy and anonymity are among its core features. *See*, *e.g.*, Bitcoin Whitepaper, p. 6 ("New Privacy Model"), available at https://bitcoin.org/bitcoin.pdf. Cryptocurrency companies like Jump, Prime Trust, and Terraform Labs, all enjoy freedom from many public disclosure and record keeping requirements demanded of other financial institutions. Dkt. 1 at ¶¶ 19, 31; *see also Sec. & Exch. Comm'n v. Coinbase, Inc.*, 726 F. Supp. 3d 260, 270 (S.D.N.Y. 2024) ("[r]egulated entities were subject to certain disclosure, recordkeeping, inspection, and anti-conflict-of-interest provisions … Coinbase argues that [its] conduct does not fall within the ambit of the securities laws"). Access to information in this sector is hard to come by. Osborne Decl., ¶ 12.

Within this context, Plaintiffs' counsel diligently investigated the allegations in the Complaint from all available sources. They used the levers of discovery in their civil case against Prime Trust to ascertain Jump's relation to Prime Trust and to Plaintiffs' harms. Osborne Decl., ¶ 5. They used publicly available sources to determine Jump's intertwinement with Terraform Labs and engaged with SEC prosecutors pursuing an enforcement action against both Terraform Labs and Jump itself. *Id*. They attended a trial in the Southern District of New York where evidence of Jump's agreements to make the market for UST was revealed in private emails disclosed as exhibits. *Id*. They used their access in that case to collect direct and circumstantial

evidence of Jump's malfeasance. *Id*. They conducted interviews, collected evidence, and established connections that strongly support the truth of their allegations from that case and other cases. *Id*. There is little more Plaintiffs' counsel could have possibly done, especially given the opaque nature of this industry, to investigate this case before filing suit.

### C. The Evidentiary Support Gleaned Through Plaintiffs' Counsel's Inquiry Adequately Supports Plaintiffs' Claims, Especially Considering the Stage of this Litigation

As the Ninth Circuit has noted, a claim that has "some plausible basis, [even] a weak one," is sufficient to avoid sanctions under Rule 11. *United National Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001). Here, both direct and circumstantial evidence, and reasonable inferences that arise therefrom, suffice to provide a "plausible basis" for Plaintiffs' claims against Jump. *Benedict v. Hewlett-Packard Co.*, 2014 WL 234207, at *5 (N.D. Cal. Jan. 21, 2014) ("'[C]ircumstantial evidence, and the reasonable inferences drawn from that evidence, are treated as evidentiary support' for purposes of Rule 11") (citing *MetLife Bank, N.A. v. Badostain*, 2010 WL 5559693, at *6 (D. Idaho Dec. 30, 2010)

#### 1) Facts and Evidence Discovered Through Counsel's Investigation Serve as Robust Support for Plaintiffs' Allegations

The investigatory work of Plaintiffs' counsel described above bore fruit. Court filings from the SEC's enforcement action against Terraform Labs revealed that Terraform Labs "*agreed* to enter a *partnership* with Jump Trading whereby Jump will deploy its own resources to improve liquidity of Terra." Ex. 3 (emphasis added). Jump's own Kanav Kariya described a "*partnership*" between Jump and Terraform Labs and proposed a "*Gentleman's agreement*" in writing whereby Jump would "support trading on terra stable coin pairs on all exchanges we're connected to and help maintain the peg." Ex. 4 (emphasis added). Do Kwon acknowledged that Terraform Labs needed "a third party market maker to keep UST in PrimeTrust's account to be able to satisfy UST orders," and "it is mission critical for Anchor for Jump to be able to fill this role." Ex. 2. Do Kwon explicitly described Jump's deal to "deposit this UST in PrimeTrust – when users buy UST from PrimeTrust, PT credits your account with USD and withdraws UST to

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION      CASE NO.: 3:25-CV-03989-PHK
FOR SANCTIONS

send to users." *Id*. These communications are direct evidence of the exact agreements Plaintiffs allege.

There is additional circumstantial evidence supporting Plaintiffs' allegations. Tai Mo Shan's August 2021 "OTC Trading Agreement" with Prime Trust referred to "specific terms" for cryptocurrency transactions that "will *separately be agreed* directly between the Parties." Dkt. 33-4 at p. 2 (emphasis added). Tai Mo Shan and Prime Trust did, apparently, form such agreements. Prime Trust stated on its website and to state regulators that it stopped filling wallet app users' sell orders for UST because its "UST liquidity provider *stopped* servicing Prime Trust." Ex 6 (emphasis added). If Jump *stopped* servicing Prime Trust at the time of the UST collapse, the reasonable inference is it *did* service Prime Trust before the collapse. This "servicing" indicates additional transactions between Jump and Prime Trust must have taken place. "[C]ircumstantial evidence, and the reasonable inferences drawn from that evidence, are treated as evidentiary support for purposes of Rule 11." *Benedict*, 2014 WL 234207, at *5 (citation omitted).

Based on this direct and circumstantial evidence, Plaintiffs made the well-founded allegation that Jump entered into a "series of agreements" to serve as a liquidity provider for wallet app users who invested in UST. Dkt. 1 at ¶ 38 ("Jump entered a series of agreements with Terraform Labs and Prime Trust designed primarily to grow, stabilize, and support investment in UST."); ¶ 39 ("Under these agreements, Terraform Labs agreed to provide a series of lump sum loans to Jump in amounts between 30 and 50 million UST tokens, which at the time were worth $30 to $50 million U.S. dollars based on UST's peg to the dollar. Jump was obligated under the agreement to deposit the loaned UST tokens into accounts with Prime Trust for the purpose of providing UST liquidity for investors using Wallet Apps that integrated with UST.") The evidence is more than adequate to support Plaintiffs' allegations, especially considering the early stage of this litigation and that Plaintiffs have not yet been afforded the opportunity to conduct discovery. *See Townsend,* 929 F.2d at 1364.

Jump cites *Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) and *Copple v. Astrella & Rice, P.C.*, 442 F. Supp. 2d 829 (N.D. Cal. 2006), as examples in which sanctions were imposed

where a complaint failed to allege facts supporting the existence of an agreement. Dkt. No. 50, p. 10. *Holgate* is entirely inapposite, as it turned on the adequacy of the legal basis of the plaintiff's complaint under Rule 11(b)(2)—not its evidentiary basis. *See Holgate*, 425 F.3d at 676 ("As the complaint failed on its face to allege a required element of a § 1985(3) claim, the district court did not abuse its discretion by finding it lacked adequate legal support."). No such argument is advanced by Jump in its Motion. *Copple* is, factually, worlds apart from the present matter. In *Copple*, the plaintiff alleged a conspiracy between counsel in a class action and the presiding judge based on the judge's actions in that case. 442 F. Supp. 2d at 836. The plaintiff's only pleaded basis for the existence of the alleged conspiracy was that the defendant attorneys had filed, and the court had granted, a motion to declare an objector to the class action settlement a vexatious litigant. *Id.* at 836-37. At the hearing, the plaintiff also offered his "belief" that an *ex parte* meeting "must have" occurred based solely on his attorney's experience that such meetings may occur during the course of litigation. *Id.* The court found these bases failed to support the existence of the alleged conspiracy. *Id.* (also holding plaintiff failed to state a claim because he "has not and cannot" sufficiently allege the attorney defendants acted "under color of state law," as required under Section 1983). In stark contrast, Plaintiffs here have alleged and presented evidence of communications between Jump and Terraform Labs, agreements directly supporting Plaintiffs' allegations that Terraform Labs agreed to loan UST to Jump, and extensive additional circumstantial evidence supporting Plaintiffs' allegations of Jump's liquidity obligation. This is far beyond what is required to withstand Rule 11 sanctions. *See Copple*, 442 F.Supp. at 836 (distinguishing *Kimes v. Stone*, 84 F.3d 1121, 1125 (9th Cir. 1996), in which the Ninth Circuit reversed dismissal of complaint similar to that in *Copple* where plaintiff attached to its complaint a letter between the defendants that supported a reasonable inference of the alleged conspiracy).

   2) *Jump's Arguments for Sanctions Require an Analysis of the Merits of Plaintiffs' Claims and Are Inappropriate for This Type of Motion and at This Stage of the Litigation*

   "[S]anctions are only warranted when it is patently clear that a claim has absolutely no chance of success." *Intelligent SCM, LLC*, 2015 WL 13916820, at *27 (quoting *Gagasoules v. MBF Leasing LLC*, 286 F.R.D. 205, 213 (E.D.N.Y. 2012)). Motions for sanctions "should not be

used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits" *Id*. at * 26 (quoting 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1336.3). It stands to reason that if the analysis of a motion for sanctions requires a "heavily factual inquiry," it likely does not present a "patently clear" case of frivolous filing. *Id*. (citing *Lorber v. Winston*, 993 F.Supp.2d 250, 253 (E.D.N.Y. 2014)).

Here, Jump asks the Court to analyze the enforceability of multiple contracts, interpret their meaning, determine the obligations they do and do not create, divine the intent of their signatories with respect to third party beneficiaries, and generally rule on the merits of Plaintiffs' allegations based on its conclusions. Moreover, the Court must consider additional evidence, such as communications that may form the basis of agreements or indicate that further agreements exist, circumstantial indicia of further agreements, and the general obligations of a market maker in a series of transactions that are likely subject to federal securities laws (*see Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 471 (S.D.N.Y. 2023) (holding "[t]here is no genuine dispute that UST, LUNA, wLUNA, and MIR are securities"))— all before Jump has engaged in any discovery. The arguments raised in Jump's Motion are pure merits questions, begging the type of "heavily factual inquiry" that is suitable only for a motion or trial that considers evidence obtained through discovery. Accordingly, the Motion should be denied.

### 3) *Plaintiffs Do Not Require the Level of Evidence Jump Contends They Do to Support Their Claims at This Phase of Litigation*

Jump criticizes Plaintiffs for (1) lacking concrete proof of a formal contract containing the alleged liquidity obligation at the time they filed their Complaint, (2) failing to identify the specific parties to the series of the agreements alleged, and (3) referring to the subject agreements using variable language. *See* Dkt. No. 50 at p. 9 ("Plaintiffs do not attach to the Complaint any of the alleged 'Subject Contracts,' even though they rely on publicly-available agreements, nor do they cite the agreements' purported provisions").

---

1   "Because the inquiry as to 'whether a pleading is sanctionable must be based on an

2   assessment of the knowledge that reasonably could have been acquired at the time the pleading

3   was filed,' as well as the 'type of claim and the difficulty of acquiring sufficient information,'"

4   Plaintiffs' claims cannot be said to be frivolous simply "because [they] failed to allege facts

5   solely within the defendants' control at the time the complaint was filed." *Intelligent SCM, LLC*,

6   2015 WL 13916820, at *25 n. 180 (quoting *Townsend*, 929 F.2d at 1364). To rule otherwise

7   would essentially require, without exception, a plaintiff to have all their evidence before bringing

8   an action based on it. This is not the standard Plaintiffs face here. A plaintiff faced with a Rule

9   11 motion must only show their complaint has "some plausible basis, [even] a weak one." *United*

10  *National Ins. Co.*, 242 F.3d at 1117.

11       While Plaintiffs' counsel is unaware of a formal written contract that specifically

12  obligated Jump to play the market making functions alleged in the Complaint, there are ample

13  evidence-backed allegations that it entered agreements to play that role. The Complaint specifies

14  a "series of agreement" entered into within a specific window of time. Dkt. 1 at ¶¶ 5, 38. Under

15  these agreements, Terraform Labs issued "lump sum loans to Jump in amounts between 30 and

16  50 million UST tokens." *Id*. at 39. Jump was obligated under these agreements to "deposit the

17  loaned UST tokens into accounts with Prime Trust," "provide market-making services for UST,"

18  and "provide market liquidity when UST investors placed orders to buy and sell UST tokens" *Id*.

19  at ¶¶ 5, 38, 39.

20       The evidence cited herein provides credible support for these allegations. The "concrete

21  proof" shows Terraform Labs proposed a "PrimeTrust UST liquidity provision," where it was

22  "mission critical" that Jump served as a "third party market maker to keep UST in PrimeTrust's

23  account to be able to satisfy user orders." Ex. 2. Terraform Labs proposed UST loans of

24  "inventory in 30-50M clips" and that Jump "deposit this UST in PrimeTrust." *Id*. "[W]hen users

25  buy UST from PrimeTrust, PT credits [Jump's] account with USD and withdraws UST to send to

26  users." *Id.* Earlier emails state Terraform Labs reported to investors that it had "agreed to enter a

27  partnership with Jump Trading whereby Jump will deploy its own resources to improve liquidity

28  of Terra." Ex. 3 (emphasis added). Jump itself reported it was "really excited about this

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION          CASE NO.: 3:25-CV-03989-PHK
FOR SANCTIONS

partnership." Ex. 4. Jump further described a "Gentleman's agreement," where Jump would "support trading on terra stable coin pairs." *Id*. Whether there are more formal contracts between Jump and Terraform Labs is immaterial when these communications are sufficient to credibly support the existence of the alleged agreement.

Jump's claim that Plaintiffs fail to identify the specific parties to any of the agreements is also incorrect. At all times, the Complaint cites to agreements between "Jump" (defined as Defendants Jump Trading, LLC and Jump Crypto Holdings LLC, Dkt. 1 at p. 1) and either "Terraform Labs" (defined as Terraform Labs PTE Ltd., *id*. at ¶ 2) or Prime Trust. *Id*. at ¶¶ 5 & 38. The Complaint acknowledges that these agreements may have involved "various subsidiary arrangements." *Id*. at ¶¶ 16-17. That does not render the allegations insufficiently clear, misleading, or false.

Nor do any supposed "inconsistencies" in Plaintiffs' allegations support a conclusion that the claims are baseless. Jump focuses on immaterial variances in the Complaint's language to support its contention that Plaintiffs' claims are baseless. Dkt. No. 50, p. 6 (criticizing Plaintiffs for on one hand stating the liquidity obligation stemmed from a singular written agreement and elsewhere saying it arose from a series of agreements, some of which may have been oral). In addition to the immateriality of these variations, in no way do these allegations impugn the evidentiary support for Plaintiffs' allegations. Indeed, "imprecision at the outset of litigation should be tolerated" if the case is one in which a prudent lawyer, knowing a given set of predicate facts, would "make alternative or inconsistent allegations" to support different legal theories. *Townsend*, 929 F.2d at 1346. The evidence discussed above demonstrates Plaintiffs are well supported in alleging that Jump had an obligation to provide liquidity to UST investors. Not knowing exactly the shape and form of that obligation, however, Plaintiffs' counsel acted as any reasonably prudent lawyer would have—they alleged that Jump had a legal obligation whether through a singular contract or a series of agreements and whether in written form or agreed upon orally. Either way, the Complaint is well-founded in alleging Jump owed a legal obligation to provide liquidity to UST investors.

That Plaintiffs do not concretely know every single detail of the alleged agreements at this early stage of litigation does not support the imposition of sanctions. As shown above and in their opposition to Jump's motion to dismiss, Plaintiffs have more than adequately pleaded, based on a reasonable inquiry and credible evidence, that Jump was obligated to provide liquidity servicing to UST investors. As recognized by the Ninth Circuit, the fact that Plaintiffs do not know some of the exact details of an agreement exclusively in the possession of Defendants and Terraform Labs does not indicate that their claims against Jump are factually frivolous. *See Townsend*, 929 F.2d at 1364 ("If the relevant facts are in control of the opposing party, more leeway must be given to make allegations in the early stages of litigation that may not be well-grounded").

Jump's attempt to portray Plaintiffs as unhinged conspiracy theorists due to their allegations of "closely held secret" arrangements falls flat. Credible evidence supports the existence of a closely guarded backroom or handshake deal between Terraform Labs and Jump pursuant to which Jump agreed to provide liquidity for UST investors. The SEC made similarly "far-fetched" allegations regarding conspiratorial agreements between commercial entities, which not only survived pleadings challenges and motions for summary judgment but succeeded in securing a verdict of liability. *Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, No. 23-cv-1346-JSR (S.D.N.Y.) at Dkt. 229 (completed verdict form). The evidence discussed above clearly supports Plaintiffs' allegations.

**D.    The Limited Evidence Jump's Counsel Provided Plaintiffs Before Filing this Motion Does Not Undermine the Credibility of Plaintiffs' Evidence or Demonstrate the Falsity of Plaintiffs' Allegations**

Jump next claims that the contracts that it cherrypicked from its files prove that Plaintiffs' claims are objectively false because the contracts they selected do not support Plaintiffs' allegations of an agreement to provide UST liquidity.

To be sure, when red flags go up, lawyers cannot play "ostrich" but, rather, must inquire further. *City of Livonia Employees' Retirement System and Local 295/Local 851 v. Boeing Co*., 711 F.3d 754, 762 (7th Cir. 2013). The test of this inquiry is the same reasonableness standard applied to a pre-filing inquiry. *Golden Eagle Distrib. Corp. v. Burroughs Corp*., 801 F.2d 1531,

1538 (9th Cir. 1986) (the test under Rule 11 of a lawyer's inquiry is whether it is reasonable under all of the circumstances of the case).

Plaintiffs' counsel acted reasonably in considering the information and records Jump's counsel presented and concluding it did nothing to disprove the allegations in the Complaint. This is true because the information Jump provided was not compelling. If Jump had offered, for example, a complete set of contracts and communications regarding its agreements, or a sworn declaration from a person with relevant knowledge[4] refuting the allegations in the Complaint, it may be a different matter. Instead, Jump produced four contracts, admitted it was withholding other contracts, attached to this Motion yet more contracts, and provided no confirmatory information from anyone with relevant information. The few contracts Jump did produce only increased the likelihood that there are other, more relevant contracts. This was not enough to lead a reasonable lawyer to dismiss their case. This is especially so considering 1) the early stage of this litigation in which Plaintiffs have not yet been afforded discovery, 2) the fact that evidence of the agreements was exclusively in Jump's possession and control; and 3) Plaintiffs' plausible allegation that Jump's liquidity obligation may have arisen from an informal or oral agreement. Dkt. 1 at ¶ 69. The fact that Plaintiffs' counsel carefully considered whether Jump established a basis for Plaintiffs to withdraw their Complaint further shows this Motion should be denied.

An additional reason to deny this Motion is the problematic contracts Jump cites in support of the Motion. First, the four contracts attached to the Motion were selected specifically by Jump's counsel, who state without support that these are "apparently" the contracts referred to

---

[4] While unrelated to this Motion, Jump offered a declaration from its General Counsel, Matthew Hinerfeld, in support of its Rule 12(b)(6) motion to dismiss on July 9, 2025. Dkt. 33. His declaration appeared intentionally evasive regarding contracts with Terraform Labs, stating that one of the two agreements he attached was "the only agreement between any Jump entity and [Terraform Labs] relating to the loans of UST or LUNA from July 2021." He offered no information regarding the other Jump/Terraform Labs contract he attached and no explanation of why he was limiting his declaration to "loans of UST and LUNA from July 2021." *Id*. Furthermore, his declaration was based only on his knowledge of "Jump Trading Group's regular business practices as it [sic.] relates to the storage of contracts." The "storage of contracts" is of little use when analyzing whether Jump entered what may have been informal or oral agreements.

in Plaintiffs' Complaint. Besides the fact that these contracts have no foundation for admissibility, they are irrelevant. Whether Jump's counsel believes these are the only material agreements has no relevance to Jump's arguments that Plaintiffs' counsel committed misconduct. Second, the contracts Jump attaches to this Motion are not the contracts Jump's counsel presented to Plaintiffs' counsel in the conferral process. Osborne Decl., ¶ 10. Only one of the four agreements was ever provided to Plaintiffs' counsel. Plaintiffs' counsel cannot be sanctioned for failing to analyze contracts Jump never gave them. Third, Jump's counsel acknowledged in the conferral process that there are other contracts between Jump and Terraform Labs that it refused to provide. Whether there are factual grounds to support Plaintiffs' allegations cannot possibly be analyzed when the very basis of those allegations— agreements between Jump and Terraform Labs—are withheld. And fourth, the fact that Jump entered contracts that do not include a liquidity obligation does not foreclose the existence of other agreements that do. In fact, the evidence presented with this Opposition is compelling direct and circumstantial evidence of precisely such agreements.

### E. Jump Does Nothing to Attack Plaintiffs' Non-Contract Claims, Which Are All Sufficiently Pleaded and Supported

All of Jump's contentions of false allegations revolve around one single issue: its contractual obligations. Almost as an afterthought, Jump contends near the end of its Motion in less than a page of argument that Plaintiffs' claims for conversion (Count 2), unjust enrichment (Count 3), civil theft (Count 4), and unfair and unlawful business practices (Count 5) are also undermined by the falsity of Plaintiffs' contract claims. Jump's arguments here deserve as little attention as Jump put into them.

Plaintiffs' claim for conversion is independent of its claim that Plaintiffs and the Class were third-party beneficiaries of Jump's agreements to provide liquidity for UST. This is easy to prove: if there were no allegations of an agreement to provide liquidity, Plaintiffs' conversion claim would stand, unaffected. Establishing a claim for conversion under California law requires (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of property in a manner inconsistent with the plaintiff's property rights; and (3)

resulting damages. *Voris v. Lampert*, 7 Cal.5th 1141, 1158 (2019); *Lee v. Hanley*, 61 Cal.4th 1125, 1240 (2015); *see also* CACI No. 2100. None of the allegations Jump cites in its Motion relate to these elements. Nor did Plaintiffs invoke their contractual rights when they pleaded this cause of action. Dkt. 1 ¶¶ 70-76. According to Prime Trust's claim that Jump precluded it from filling Plaintiffs' UST sell orders, Plaintiffs' claim for conversion would survive even if it were true that Jump never agreed to provide liquidity for UST.

Jump's argument regarding Plaintiffs' unjust enrichment claim is equally unavailing. "To allege unjust enrichment as an independent cause of action, a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (citing *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016)). Again, the Motion does nothing to consider how the supposedly false allegations defeat any one of the elements of Plaintiffs' unjust enrichment claim. Nor does Jump show that Plaintiffs' unjust enrichment claim is dependent on the allegation that Plaintiffs are third-party beneficiaries of an agreement to provide UST liquidity. The facts alleged in the Complaint adequately establish that Jump received their funds (Dkt. 1 at ¶¶ 40, 78) and unjustly retained those funds (*id.* at ¶¶ 7, 40, 41, 53) at Plaintiffs' expense (*id.* at ¶¶ 48, 85). Jump fails to show how the supposedly false allegations are necessary to support that claim.

The same is true of Jump's attack on Plaintiffs' civil theft claim. Under California law, theft "involves an exercise of control over property without consent, with the criminal intent to deprive the owner of rights and benefits of ownership, permanently or temporarily." *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009) California Penal Code § 496 permits a civil action for theft when a defendant "conceals […], withholds, or aids in concealing […] or withholding any property from the owner, knowing the property to be so stolen." Cal. Penal Code § 496. Courts analyzing § 496 interpret it to sanction multiple methods of "theft," including embezzlement. Embezzlement is "the fraudulent appropriation of property by a person to whom it has been intrusted." *People v. Vidana*, 1 Cal. 5th 632, 639 (2016). Nothing about this cause of action requires the existence of a contractual obligation and Plaintiffs make no contention in support of this cause of action that suggests it depends on the existence of such an

obligation. *See* Dkt. 1 at ¶¶ 87-92. Jump says almost nothing about this claim, devoting one sentence to address it in a 21-page brief. There is simply no support for the argument that Plaintiffs' civil theft claim would be somehow undermined if their allegations of contractual obligations were found false.

Finally, Plaintiffs' claim under California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*. (the "UCL") is separate and apart from their claims for breach of contract. Plaintiffs' claims under the "unlawful" prong of the UCL are derivative of their claims for civil theft under California Penal Code § 496. Dkt. 1 at ¶ 95. Since Jump does nothing to undermine Plaintiffs' civil theft claims, it consequently fails to undermine their claims under the UCL's unlawful prong. Similarly, Plaintiffs premise their claim under the UCL's "unfair" prong on violations of public policy. *Id*. at ¶ 96. This claim could be premised on essentially any wrongful act alleged in the Complaint, whether related to contractual obligations or not. Jump argues this claim is undermined because it is "based on the same 'acts and practices' underpinning their other claims, by which Defendants 'interfered' with an alleged 'right' to the U.S. dollars, 'unlawfully retained' those funds, and also 'fail[ed] to reimburse losses due to their refusal to execute' the UST sell orders." Dkt. 50 at pp. 16-17. It is unclear why Jump quotes these terms or how calling them out shows Plaintiffs should be sanctioned. Absent further elaboration, the Court should take this and the other arguments Jump raises here for what they are—throw away arguments.

### F. The Court Should Award Plaintiffs Their Reasonable Fees and Costs Incurred in Opposing Jump's Frivolous Motion

In the event the Court denies Jump's request for sanctions, Plaintiffs request they be awarded their counsel's reasonable fees and costs incurred in opposing this Motion. "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. Proc. 11(c)(2); *see also Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001) ("[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions"). Such relief is warranted here. First, Jump makes next-to-no showing that Plaintiffs

failed to conduct a reasonable pre-filing inquiry. Second, Jump fails to demonstrate to any degree—let alone by clear and convincing evidence—that any allegation or claim is "entirely baseless." Instead, Jump's motion is premised entirely on merits arguments and disputes about evidence. It is, therefore, "entirely frivolous." *Facebook, Inc. v. Gajjar*, 2022 WL 18539351, at *3 (N.D. Cal. Aug. 23, 2022). Courts have cautioned that such a motion for sanctions is "premature" and "not a valid litigation strategy." *Id.* ("[D]iscovery is meant to obtain evidence that either proves or disproves facts and claims alleged.").

Moreover, Plaintiffs' counsel invested significant time and resources to demonstrate to Jump that a Rule 11 motion was improper and should not be filed. After receiving notice from Jump's counsel of its intent to move for sanctions, Plaintiffs engaged in a thorough investigation of the proffered documents and extensive correspondence with defense counsel, explaining why the contracts proffered by Jump did not render Plaintiffs' allegations baseless or false. Plaintiffs also requested Jump provide the other agreements between Jump and Terraform Labs. Jump ignored these explanations, refused to provide the other agreements, and filed its Rule 11 motion. See Ex. 5. Plaintiffs were therefore forced to expend additional time and resources responding to Jump's improper litigation tactics. Jump should not be permitted to engage in such tactics at Plaintiffs' expense. The Court should award Plaintiffs attorneys' fees and costs incurred to oppose this motion. To the extent the Court awards such fees and costs, Plaintiffs will submit a declaration in support of the same.

## V.    <u>CONCLUSION</u>

Motions for sanctions under Rule 11 are seldom filed and even more seldom granted. They are reserved for cases where it is "patently clear that a claim has absolutely no chance of success." *Intelligent SCM, LLC*, 2015 WL 13916820, at *27. Jump so gravely fails to clear this high bar that the Motion itself should be deemed frivolous. It should be denied, and Plaintiffs should be awarded sanctions for opposing this Motion instead.

Dated: October 29, 2025                    ERICKSON KRAMER OSBORNE LLP


*/s/ Kevin M. Osborne*
Julie C. Erickson
Elizabeth A. Kramer
Kevin M. Osborne

*Attorneys for Plaintiffs*

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this October 29, 2025, the foregoing **PLAINTIFFS'**

3

**OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS** was filed and served

4

using the CM/ECF system, which will serve as notification of such filings on all counsel of

5

record.

6

7

8                                              */s/ Kevin M. Osborne*
                                            Kevin M. Osborne
9                                            ERICKSON KRAMER OSBORNE LLP
                                            959 Natoma St.
10                                           San Francisco, CA 94103
                                            Phone: 415-635-0631
11                                           Fax: 415-599-8088
                                            kevin@eko.law
12

13                                           *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION          CASE NO.: 3:25-CV-03989-PHK
FOR SANCTIONS