**KOBRE & KIM LLP**
Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: (212) 488-1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com

Daniel A. Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: (415) 582-4800
daniel.zaheer@kobrekim.com

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN WARD, DAVID KREVAT, and NABIL MOHAMAD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JUMP TRADING, LLC; JUMP CRYPTO HOLDINGS LLC; AND DOES 1-10<br><br>Defendants. | CASE NO. 3:25-CV-03989-PHK<br><br>**DEFENDANTS JUMP TRADING, LLC AND JUMP CRYPTO HOLDINGS LLC'S REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Judge: Hon. Peter H. Kang |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

    A.    Plaintiffs Cannot Avoid Sanctions by Recharacterizing Allegations Pled in the Complaint ........................................................................................................... 2

    B.    The Complaint's Allegations Could Not Have Been Based on a Reasonable and Competent Inquiry ............................................................................................ 5

    C.    Plaintiffs' Intentionally Vague and Contradictory Allegations Further Support Sanctions ........................................................................................................... 9

    D.    The Contracts Available to Plaintiffs Both Before and After They Filed the Complaint Demonstrate That Plaintiffs Have No Basis for Their Allegations .... 11

    E.    Plaintiffs' Non-Contract Claims Are Also Untenable ......................................... 14

    F.    Plaintiffs' Request for Fees Should Be Denied .................................................. 15

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Benedict v. Hewlett-Packard Co.*,
  No. 13-cv-00119, 2014 WL 234207 (N.D. Cal. Jan. 21, 2014) ................................... 5, 6, 7, 9

*Bonner v. Arastehjoo*,
  No. C 11-1350 CW, 2011 WL 5191410 (N.D. Cal. Oct. 31, 2011) ........................................ 13

*Christian v. Mattel, Inc.*,
  286 F.3d 1118 (9th Cir. 2002) ............................................................................................. 5

*Copple v. Astrella & Rice, P.C.*,
  442 F. Supp. 2d 829 (N.D. Cal. 2006) ............................................................................. 8, 12

*Corazon v. Aurora Loan Servs., LLC*,
  2011 WL 1740099 (N.D. Cal. May 5, 2011) ....................................................................... 10

*Facebook, Inc. v. Gajjar*,
  No. 20-cv-02429, 2022 WL 18539351 (N.D. Cal. Aug. 23, 2022) ........................................ 15

*Holgate v. Baldwin*,
  425 F.3d 671 (9th Cir. 2005) ................................................................................. 5, 8, 12, 14

*Intelligent SCM, LLC v. Qannu PTY Ltd.*,
  2015 WL 13916820 (C.D. Cal. July 2, 2015) ....................................................................... 8, 9

*Juarez v. Jani-King of Cal., Inc.*,
  No. 09-3495, 2010 WL 3766649 (N.D. Cal. Sept. 24, 2010) ..................................................... 1

*Timmons v. Linvatec Corp.*,
  263 F.R.D. 582 (C.D. Cal. 2010) ......................................................................................... 12

*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990) ............................................................................................. 11

*Truesdell v. Southern California Permanente Med. Grp.*,
  293 F.3d 1146 (9th Cir. 2002) ............................................................................................. 4

*United Nat. Ins. Co. v. R & D Latex Corp.*,
  242 F.3d 1102 (9th Cir. 2001) ............................................................................................. 5

**INTRODUCTION**

Nothing in Plaintiffs' Opposition to Defendants' Motion for Sanctions ("Opp.") provides any basis to deny Defendants' request for sanctions under Rule 11.[1] In fact, Plaintiffs now concede that they are unaware of any "formal written contract that specifically obligated Jump to play the market making functions alleged in the Complaint . . . ." Opp. 17. Plaintiffs nonetheless insist that they should not be sanctioned because circumstantial evidence gave them a good faith basis for their claims. That is wrong. As discussed below, the circumstantial evidence on which Plaintiffs rely does not come close to providing a factual foundation for the claim that either Jump Trading, LLC or Jump Crypto Holdings LLC contractually bound itself to buy whatever amount of UST that Plaintiffs (or any other UST investors) decided they wanted to sell. Plaintiffs have been given every opportunity to withdraw their baseless allegations, but they have chosen to stand by them. Sanctions are warranted, and each argument in Plaintiffs' Opposition falls short.

***First***, Plaintiffs cannot avoid sanctions by recharacterizing their allegations or by adding limitations that do not exist in the Complaint. Plaintiffs purport to reframe the Complaint as one where they allege that "Jump" was simply a liquidity provider.[2] But the Complaint goes much further than that: Plaintiffs allege that Jump Trading, LLC and Jump Crypto Holdings LLC breached a specific contractual obligation to purchase every sell order routed through Prime Trust, even during a complete market collapse. Plaintiffs, however, concede that they are not aware of any specific contract that places that obligation on any Jump entity, let alone Defendants.

***Second***, the Complaint's allegations regarding the purported liquidity obligation could not have been the result of a competent pre-suit inquiry. Plaintiffs' counsel had broad access to

---

[1] Plaintiffs' improper Appendix A, which contains 17 pages of additional argument (including legal citations and arguments nowhere included in their Opposition), should be struck as an impermissible attempt to evade the 25-page limit in Civ. L. R. 7-4(b). *See Juarez v. Jani-King of Cal., Inc.*, No. 09-3495, 2010 WL 3766649, at *2 (N.D. Cal. Sept. 24, 2010) (striking portions of declaration as "impermissible end-run around the page limits on briefs"). If the Court does not strike Appendix A, Defendants respectfully request the opportunity to submit a supplemental response to Appendix A should the Court find that helpful.

[2] The Complaint broadly defines "Jump" as Defendants Jump Trading, LLC, Jump Crypto Holdings LLC, and unnamed "DOE" defendants, including subsidiaries and affiliates of Jump Trading, LLC and Jump Crypto Holdings LLC. Compl. at p. 1; *id.* ¶ 17.

information (including from Prime Trust and the SEC) before filing their Complaint, Opp. 12, and their investigation failed to identify evidence of any actual agreement with the alleged liquidity obligation. And the purported "circumstantial evidence" cited in Plaintiffs' Opposition is grossly insufficient. That is especially the case here, because the contracts Plaintiffs' counsel had access to contradict the contractual obligation alleged.

***Third***, Plaintiffs' attempt to justify their wildly contradictory allegations does nothing to refute that the reason their allegations are rife with contradictions is because they have no factual basis for them. ***Fourth***, Plaintiffs had notice that their claims were meritless both before and after they filed their Complaint. ***Fifth***, Plaintiffs' non-contractual claims are entirely dependent on the unsupported contractual liquidity obligation that they alleged and therefore also warrant sanctions.

For the reasons set forth in the Motion and below, the Court should issue sanctions.

### A. Plaintiffs Cannot Avoid Sanctions by Recharacterizing Allegations Pled in the Complaint

Plaintiffs attempt to recharacterize the Complaint's allegations so that they can argue that the "specific allegations Jump challenges are not allegations Plaintiffs made." Opp. 9. Plaintiffs apparently want to have their cake and eat it too. They want to rely on specific facts pled in their Complaint to avoid dismissal of their vague and contradictory claims, *see* Dkt. 46, and simultaneously run away from those same alleged facts to avoid Rule 11 sanctions, because Plaintiffs know the allegations are unfounded. Rule 11 exists precisely to prevent such gamesmanship.

Specifically, the Motion challenges three categories of baseless allegations:

- The allegation that Defendants were contractually obligated to provide liquidity or funding to ensure Plaintiffs (and other third-party UST investors) could sell their UST investments through Prime Trust regardless of market conditions, Mot. 1;

- References to agreements that Plaintiffs were aware do not provide for any such liquidity obligation or any third-party beneficiary language, *id.* 2; and

- The allegation that a "Jump partner company" promised to UST investors that they could liquidate their investments during a market downturn, *id*.

It is indisputable that Plaintiffs make each of these allegations in the Complaint.

***First***, the allegation that Defendants were contractually obligated to provide liquidity or funding so that third-party UST investors could sell their UST investments through Prime Trust regardless of market conditions is the central allegation in the Complaint. Plaintiffs' entire theory is predicated on the claim that once "UST began to unravel" and "[t]housands of UST depositors placed sell orders," Defendants were contractually obligated to fill those orders even if it caused "imminent losses on [Defendants'] own investments." Compl. ¶¶ 6–7. According to Plaintiffs, Defendants breached this "contractual obligation[]" by not filling third-party sell orders amidst a "collapse" of the UST market. *Id.* ¶¶ 7–8.

Apparently recognizing that allegation's absurdity, Plaintiffs now seek to minimize it by claiming that the purported obligation is limited to "provid[ing] UST liquidity under the ***circumstances that existed at the time Plaintiffs placed their UST sell orders***" (without specifying what those "circumstances" are). Opp. 10 (emphasis added). But the Complaint is not so limited. It alleges (without any basis) that Defendants were obligated under unidentified contracts to fund ***all*** investor sell orders routed through Prime Trust (without limitation on size or market conditions):

> Specifically, the Subject Contracts obligated Jump to provide funding for and authorize the execution of investor sell orders, whereby UST investors placed orders to exchange their UST tokens for U.S. dollars, and which required Jump to fund and authorize access to its accounts with Prime Trust and to debit U.S. dollars from those accounts in order to fill the orders.

Compl. ¶ 65. Plaintiffs then assert that "Jump" breached its contractual obligations "by refusing to fund its Prime Trust accounts and by refusing to authorize Prime Trust to debit its account when UST investors placed orders to sell UST. . . ." *Id.* ¶ 67. These allegations are also consistent with their class definition, which includes "***all*** persons who placed orders to sell UST on or after May 9, 2022, that were routed to Prime Trust . . . ." *Id.* ¶ 55 (emphasis added). As discussed in the Motion and further below, Plaintiffs have no direct or circumstantial evidence that supports these claims, so they now try to walk them back and recharacterize them. Not only is that impermissible, but even if the qualifications Plaintiffs make in their brief were included in the Complaint, all of the same fatal defects with Plaintiffs' allegations remain.

3
REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS
Case No. 3:25-cv-03989-PHK

Plaintiffs' attempt to recharacterize the Complaint's allegations is plainly improper as a matter of law. *See Truesdell v. Southern California Permanente Med. Grp.*, 293 F.3d 1146, 1154 (9th Cir. 2002) (rejecting plaintiff's attempt to add new "purported limitation" to complaint's allegations in response to Rule 11 motion). In any event, Plaintiffs' new qualifier is meaningless: As alleged in the Complaint, the "circumstances that existed at the time Plaintiffs placed their UST sell orders," Opp. 10, were a complete "collapse" of the UST market defined by a "rush" by investors to "liquidate mass quantities of UST." Compl. ¶¶ 6–8.

***Second***, Plaintiffs argue that they "cannot have possibly made false statements about Jump's obligations under [the contracts referenced in the Motion] when Plaintiffs never even referred to them." Opp. 10–11. Plaintiffs now disclaim reliance on the contracts that they appeared to refer to in the Complaint and concede that they are "unaware of a formal written contract that specifically obligated Jump to play the market making functions alleged in the Complaint . . . ." Opp. 17. But Plaintiffs' problem is that the Complaint pleads that formal written contracts ***do exist*** and alleges concrete details regarding them:

- "[A]ll relevant contractual obligations referenced [in the Complaint] were ***written*** contracts." Compl. ¶ 69 (emphasis added)

- "The subject contracts were created and entered into on or around July 8, 2021. This agreement was preceded by similar arrangements entered into in 2019 and 2020." *Id.* ¶ 43;

- "Under these agreements, Terraform Labs agreed to provide a series of lump sum loans to Jump in amounts between 30 and 50 million UST tokens." *Id.* ¶ 39;

- "Jump was obligated under the agreement to deposit the loaned UST tokens into accounts with Prime Trust for the purpose of providing UST liquidity for investors using Wallet Apps that integrated with UST." *Id.*;

- "Jump was [] obligated to provide UST tokens from the accounts it held with Prime Trust to fill the investors' orders." *Id.* ¶ 40.

The written contracts cited in the Motion are the only ones that remotely resemble the above allegations, but none of them contains the alleged liquidity obligation.

***Third***, the Complaint's allegation that a "Jump partner company" promised to UST

investors that they could liquidate their investments during a market downturn was clearly intended to misleadingly imply that the statements were made by a company affiliated with Defendants. Compl. ¶ 5. In fact, Plaintiffs now concede that the statement was not made by a Jump entity at all but by Prime Trust. Opp. 11. Plaintiffs aver that they did not mean to mislead the Court and that they were being technically honest. *Id.* This is not credible. Plaintiffs' counsel previously sued Prime Trust, and Prime Trust is referenced in the Complaint by name over **50 times**. The only reason Plaintiffs would vaguely refer to Prime Trust as an **unidentified** "Jump partner company" in this one instance is to imply that the statements were made by a company affiliated with the Defendants. *Id.*

### B. The Complaint's Allegations Could Not Have Been Based on a Reasonable and Competent Inquiry

Plaintiffs incorrectly assert that they cannot be sanctioned because "[t]here is little more Plaintiffs' counsel could have possibly done . . . to investigate this case before filing suit." Opp. 13. But the relevant standard is not solely the purported thoroughness of counsel's investigation, but whether, judged objectively, an attorney, "after conducting an objectively reasonable inquiry . . . **would have found the complaint to be well-founded**." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (emphasis added). Conducting a thorough investigation does not immunize an attorney from sanctions if that attorney proceeds with filing a frivolous complaint after the investigation reveals to the attorney that the claims are without merit. *Id.* And, as Plaintiffs' own cited authority recognizes, a complaint is not well-founded if it is "factually baseless" such that it "lacks a factual foundation." *Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119, 2014 WL 234207, at *5 (N.D. Cal. Jan. 21, 2014) (citation omitted).[3]

Here, Plaintiffs' counsel acknowledge that they had access to "publicly available sources," Opp. 12; they spoke with "SEC prosecutors," *id*; they "attended a trial in the Southern District of New York" where documentary evidence, including emails, were disclosed, *id.*; they "conducted

---

[3] *United Nat. Ins. Co. v. R & D Latex Corp.* is inapposite as it dealt with the legal adequacy of counsel's position, not the factual foundation for the claims. 242 F.3d 1102, 1117 (9th Cir. 2001).

interviews," *id.* 13; they "served discovery requests," including interrogatories, on Prime Trust in the case captioned *Ward v. Prime Trust, LLC*, No. 2:22-cv-02034 (D. Nev. Dec. 7, 2022), Dkt. 62 ¶¶ 3–4; and they "represented an SEC witness" in the SEC's case against Terraform Labs, *id.* ¶ 5. Despite this broad access to information, Plaintiffs' counsel concedes that they are not aware of any "formal written contract that specifically obligated Jump to play the market making functions," Opp. 17, even though Plaintiffs alleged in the Complaint that such a written agreement or agreements exist, Compl. ¶ 69. Accordingly, Plaintiffs' counsel knowingly made an allegation of material fact about the existence of a written contract with no direct evidence of such contract.

Plaintiffs attempt to justify their allegations by reference to purported circumstantial evidence. Opp. 13–14. Circumstantial evidence is only relevant if the "inference, ***reasonably drawn***" from it, supports the allegations. *Benedict*, 2014 WL 234207, at *5 (emphasis added) (citation omitted). Here, however, the circumstantial "evidence" cited in Plaintiffs' Opposition does not come close to giving rise to a reasonable inference that Defendants contractually bound themselves to buy, without limitation and during a market collapse, any amount of UST that market participants wished to sell. The entirety of the circumstantial evidence on which Plaintiffs rely consists of: (1) an email from Do Kwon of TFL to a group of Terra investors stating that "Jump" would "deploy its own resources to improve liquidity of Terra and Luna," Pls.' Ex. 3; (2) an email in which Kanav Kariya stated that an affiliate of Defendants would "support trading on terra stable coin pairs . . . and help maintain the peg," Pls.' Ex. 4; and (3) statements by Do Kwon regarding "Jump" being a "market maker" and describing the mechanism by which "Jump" would make deposits to Prime Trust, Pls.' Ex. 2. It simply does not follow that, because a third party stated that some Jump entity would "improve liquidity" or be a "market maker," Defendants undertook a specific contractual obligation for the benefit of all third party UST investors to ensure Plaintiffs and thousands of other market participants could exchange their UST holdings for cash without limitation and regardless of market conditions (even during a market collapse). Nor does Mr. Kariya's statement that a Jump entity would "support trading" or "help maintain the peg" provide any factual foundation for the claim that Defendants entered into a specific agreement or agreements to fund all UST sell orders by Prime Trust customers.

In fact, the exhibits Plaintiffs rely on contradict their claims. For example, Plaintiffs' Exhibit 2 is an email exchange between Kanav Kariya and Do Kwon concluding on July 8, 2021, the same date that the Complaint alleges a "Subject Contract" was entered into. Compl. ¶ 43. In that email thread, Kwon provides Kariya with "discussion items" around a "PrimeTrust UST liquidity provision" and expressly states that (1) any "provision" would only relate to UST investors ***buying*** UST (i.e., not ***selling*** UST) and (2) the "work needed from [J]ump's side is ***minimal***" and the "lift" would be "***simple***." Pls.' Ex. 2 (emphases added). The "lift" from "Jump" is described by Kwon as posing a "minimal" burden because TFL would lend the UST to "Jump" to sell to market participants who wished to buy UST. *Id*. Plaintiffs have taken this email—which describes a "simple" arrangement whereby "Jump" would ***sell*** UST provided by TFL—and made the extraordinary inferential leap that some Jump affiliate entered into a specific agreement obligating Defendants to ***buy*** limitless UST from each and every investor selling UST, regardless of market conditions or the financial impact on Defendants or their affiliates. That is neither a "simple" or "minimal" lift, but a massive one that could expose Jump to billions of dollars in potential losses according to Plaintiffs. Compl. ¶ 48. Simply put, such an inference cannot reasonably be drawn from this communication, and, therefore, it does not insulate Plaintiffs from Rule 11 liability. This is especially so where the agreements from that same time period that do exist flatly contradict the existence of any such contractual obligation.

Plaintiffs do point to one of those agreements—the 2021 OTC Trading Agreement between TMSL (a Jump affiliate) and Prime Trust, Dkt. 33-4—as circumstantial evidence for the proposition that other, unknown agreements ***may*** exist. Opp. 14. Again, the bare assertion that unknown agreements may exist is irrelevant to whether Plaintiffs had a sufficient "factual foundation" to allege in their Complaint that specific agreements ***do*** exist. *Benedict*, 2014 WL 234207, at *5 (citation omitted). Regardless, Plaintiffs cannot rely on the 2021 OTC Trading Agreement for the proposition that other agreements supporting their claims may exist because the 2021 OTC Trading Agreement also directly contradicts Plaintiffs' claims. Specifically, (1) the agreement expressly states that "the Parties will have no obligation to enter any Transactions with each other" and that TMSL was not "providing any service to [Prime Trust]," (2) it expressly

7

REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS
CASE NO. 3:25-CV-03989-PHK

disclaims any intent to benefit third parties such as the Plaintiff investors—which Plaintiffs entirely fail to address in their Opposition, and (3) it was not entered into by Defendants, but by TMSL, a Jump affiliate. Dkt. 33-4 at 1; Mot. 9.

For these reasons, and contrary to Plaintiffs' assertion, Opp. 14–15, *Holgate* and *Copple* are directly on point and establish that Rule 11 sanctions are warranted here. Plaintiffs attempt to distinguish *Holgate* on the basis that it dealt with the adequacy of legal support, not factual allegations. *Id.* 15. But in *Holgate*, the Ninth Circuit expressly addressed both the failure to plead a required legal element of the plaintiff's claims as well as the plaintiff's failure to "allege ***evidence*** of a conspiracy and an act in furtherance of that conspiracy." *Holgate*, 425 F.3d at 676 (emphasis added). Further, the reasonable inquiry test articulated by the Ninth Circuit in *Holgate* expressly applies to both the sufficiency of the factual allegations and the legal basis. *Id.* at 677 ("The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry *into the facts and law*, would have found the complaint to be well-founded.") (citation omitted). Plaintiffs' argument that *Copple* is "worlds apart" from this case is equally unavailing. Opp. 15. In *Copple*, the plaintiff alleged the existence of an "agreement" based solely on the assumption that certain meetings "must have occurred." *Copple v. Astrella & Rice, P.C.*, 442 F. Supp. 2d 829, 837 (N.D. Cal. 2006). Here, Plaintiffs allege the existence of an agreement or agreements with specific terms based on the *assumption* that they exist, i.e. they "must have taken place," even though Plaintiffs concede that they are unaware of such an agreement, and that the agreements that do exist that correspond to the allegations in the Complaint contradict Plaintiffs' claims. Opp. 17–18. As in *Copple*, the bare assumption that something must have taken place is not a sufficient factual foundation.

Plaintiffs are also wrong to suggest that Defendants' Motion requires a "heavily factual inquiry."[4] Opp. 16. Contrary to Plaintiffs' assertion, this Motion does not require the Court to

---

[4] *Intelligent SCM, LLC v. Qannu PTY Ltd.*, which Plaintiffs rely on for the proposition that a claim cannot be frivolous for failing to "allege facts solely within the defendants' control," does not help Plaintiffs. No. 14-cv-06417, 2015 WL 13916820, at *25 (C.D. Cal. July 2, 2015). Here, the TFL contracts attached to the Motion were ***publicly available*** in a trial that Plaintiffs' counsel attended and, in any event, those along with the Prime Trust agreements were provided to

"analyze the enforceability of multiple contracts" or "interpret their meaning." *Id*. 16. Plaintiffs have already conceded that the contracts Defendants identified as corresponding to the "Subject Contracts" in the Complaint do not support their claims and now try to distance themselves from them by claiming that such contracts are not at issue in this case, so the Court does not need to "interpret [their] meaning" at all. *Id*. Plaintiffs have also conceded that they are unaware of any actual, specific agreement in which Defendants undertook a purported liquidity obligation, as alleged in the Complaint. *Id*. 17. Therefore, the sole remaining question for the Court is whether the Complaint's allegation that such a liquidity obligation exists can be "reasonably drawn" from the purported circumstantial "evidence" discussed above, which is a proper inquiry in a Rule 11 motion. *Benedict*, 2014 WL 234207, at *5.

### C. Plaintiffs' Intentionally Vague and Contradictory Allegations Further Support Sanctions

Plaintiffs assert that the Complaint's vague and even contradictory allegations regarding the "Subject Contracts" (and the purported liquidity obligation) are permissible because Rule 11 does not require Plaintiffs to "have all their evidence before bringing an action." Opp. 17. This mischaracterizes Defendants' argument, which is that Plaintiffs' claims regarding the existence of a purported contractual liquidity obligation are sanctionable because they were made without any factual foundation whatsoever and thus could not have been the product of a reasonably competent inquiry. *See* Section B, *supra*. In the Motion, Defendants point to the fact that the allegations are intentionally vague and contradictory to support the conclusion that they were made without a proper foundation, but not as an independent basis for sanctions. *See* Mot. 5.

In any event, Plaintiffs' attempts to justify the specific contradictions identified in the Motion are unavailing. ***First***, Plaintiffs assert that the inconsistencies are "immaterial"—according to Plaintiffs, it does not matter whether there was a single written contract, whether there were multiple written contracts, or whether the agreement was oral. Opp. 18. But it is certainly material to a Rule 11 motion that Plaintiffs pled "based on information and belief that

---

Plaintiffs by Defendants prior to filing this Motion.

all relevant contractual obligations referenced herein were written contracts," Compl. ¶ 69, even as Plaintiffs' counsel concedes that they are "unaware of a formal written contract that specifically obligated Jump to play the market making functions alleged in the Complaint . . . ," Opp. 17.

***Second***, Plaintiffs contend that it is permissible that they "fail[ed] to identify the specific parties to any of the agreements" because the Complaint's description of Defendants in the "Parties" section of the Complaint includes catch-all language referencing "subsidiaries" of Defendants. Opp. 18; Compl. ¶ 16. But that misses the point. Plaintiffs chose to sue two specific entities—Jump Trading, LLC and Jump Crypto Holdings LLC—even though they cite no evidence whatsoever that either of those two entities ever entered into any agreement with TFL or Prime Trust, let alone evidence that gives rise to a reasonable inference that these two entities contractually bound themselves in the manner alleged. Plaintiffs' decision to sue Jump Trading, LLC and Jump Crypto Holdings LLC is even more problematic given that the contracts that were publicly available were made by TMSL, a different Jump entity, and could provide no support for naming Defendants here. In fact, Plaintiffs' refusal in their Opposition to identify specific contractual counterparties to any agreement or agreements demonstrates that they have no factual basis to allege that any such agreement actually exists. Mot. 5–6. And the failure to identify the contractual counterparties, or differentiate between and among the parties and non-parties, is consequential. It is a serious flaw that prejudices Defendants by "fail[ing] to provide [Defendants] with fair notice." *Corazon v. Aurora Loan Servs., LLC*, No. 11-00542, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011); Dkt. 54 at 13.

***Third***, Plaintiffs are also unbothered by their inability to consistently describe the purported liquidity obligation that is the heart of the Complaint. Opp. 18. The form, date, and even the obligation itself are all apparently flexible to Plaintiffs: whether there is a single agreement or multiple agreements, Compl. ¶¶ 43, 51; whether a specific agreement was entered into "on or around July 8, 2021," or at some other time, *id.* ¶ 43; whether the agreement(s) were written or oral, *id.* ¶¶ 16, 69; and whether the agreement(s) obligated Defendants (or some other Jump-related entity) to fill UST sell orders at then-current market prices or at the $1.00 per token value of the peg (regardless of the market price), *id.* ¶¶ 5, 40–44, 47–48, 55. The reason for these

inconsistencies is simple: Plaintiffs make scattershot, contradictory allegations because they have no factual basis to allege an actual agreement and its terms. For this reason, *Townsend v. Holman Consulting Corp.* does not help Plaintiffs. Opp. 8. In *Townsend*, the Ninth Circuit acknowledged that a lawyer may plead "more than one **legal theory** as the basis for relief and [] make alternative or inconsistent allegations" if the lawyer knows that a "**given set of predicate facts**" could support either claim for relief. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (emphases added). But *Townsend* does not authorize a lawyer to allege multiple, contradictory "predicate facts" or immunize a lawyer who alleges facts without any foundation.

### D. The Contracts Available to Plaintiffs Both Before and After They Filed the Complaint Demonstrate That Plaintiffs Have No Basis for Their Allegations

Plaintiffs entirely fail to address Defendants' argument (Mot. 5, 7–8, 11, 18, 19) that the contracts with TFL that the Complaint seemingly references as the "Subject Contracts" were in the public record and available to Plaintiffs' counsel before they filed the Complaint and were then made available to them again when Defendants' counsel provided them in advance of this Motion. Therefore, contrary to Plaintiffs' Opposition, Opp. 19–20, the contracts referenced in Defendants' Motion are relevant both to the inadequacy of Plaintiffs' counsel's pre-filing investigation **and** to Plaintiffs' failure to dismiss the Complaint, once Defendants raised red flags.

As an initial matter, it is clear that the Complaint references details about specific contracts in an attempt to plead some factual detail regarding the "Subject Contracts." The Complaint alleges that the "Subject Contracts" are "written," Compl. ¶ 69, were entered into on or around July 8, 2021 (and were "preceded by similar agreements entered into in 2019 and 2020"), *id.* ¶ 43, and that they were entered into between "Jump," on the one hand, and TFL and/or Prime Trust, on the other hand, *id*. The Complaint further alleges that under these agreements, "[TFL] agreed to provide a series of lump sum loans to Jump in amounts between 30 and 50 million UST tokens." *Id.* ¶ 39. These allegations, among others, appear to refer to certain details of real agreements that do exist, which were disclosed in the trial record in *SEC v. Terraform Labs Pte. Ltd.*, 1:23-cv-01346 (JSR) (S.D.N.Y.) (a case Plaintiffs' counsel acknowledges they followed, Dkt. 62 at ¶ 5) and attached to Defendants' Motion. Cogan Decl., Exs. A–C. And, critically,

Plaintiffs concede that these contracts "do not include a liquidity obligation." Opp. 21.

Plaintiffs attempt to run away from these agreements by claiming that the agreements cited in Defendants' Motion are not those "referenced in the Complaint," Opp. 10, and assert—without any evidentiary basis—that "other agreements" *may* exist that support their claims, Opp. 21. But the assertion that other contracts may theoretically exist does not help Plaintiffs. What matters for this Motion is that Plaintiffs alleged in their Complaint that specific contracts **do exist** even though they lacked any "well-founded" basis to make such an allegation. *Holgate*, 425 F.3d at 677. No reasonable attorney could have concluded that the claims were well-founded given that (1) Plaintiffs concede that they are "unaware of a formal written contract that specifically obligated Jump to play the market making functions," Opp. 17, and (2) the contracts matching the description of the "Subject Contracts" in the Complaint do not contain the purported liquidity obligation. *Id.* at 17, 21; *see also Copple*, 442 F. Supp. 2d at 836–37.

Plaintiffs' conduct after Defendants initially provided notice on June 9, 2025 that the Complaint included false allegations is equally worthy of sanctions. Cogan Decl. ¶ 5, Ex. D. On July 1, 2025, Defendants shared "copies of the agreements between a Jump affiliate and TFL apparently referenced in [the] Complaint as the 'Subject Contracts'" and pointed Plaintiffs to where in the public record certain of these contracts could be found. Cogan Decl., Ex. F. Defendants also provided copies of agreements between a Jump affiliate (TMSL) and Prime Trust, which were not previously publicly available. *Id.* None of these agreements included any liquidity obligation as alleged in the Complaint. But instead of seriously assessing the reasonableness of their claims or articulating their plausible factual basis, Plaintiffs improperly used the opportunity to demand broad discovery from Defendants of "all" contracts "between Jump (or affiliates) and TFL (or affiliates)" *regardless* of whether the contracts related to the specific allegations in the Complaint or not. Cogan Decl. ¶ 8, Ex. G. This is plainly improper and contrary to the purpose of Rule 11. *Timmons v. Linvatec Corp.*, 263 F.R.D. 582, 585 (C.D. Cal. 2010) ("[A]llowing plaintiffs to file first and investigate later . . . would be contrary to Rule 11(b), which mandates an 'inquiry reasonable under the circumstances' into the evidentiary

support for all factual contentions prior to filing a pleading.").[5]

For the same reason, Plaintiffs are incorrect in asserting that they were justified in filing the Complaint or in refusing to dismiss the case absent a "sworn declaration from a person with relevant knowledge refuting the allegations in the Complaint." Opp. 20 (footnote omitted).[6] Again, the obligation is on Plaintiffs' counsel to ensure that the allegations in the Complaint are "well-founded," and the Motion plainly established that the claims could not have been well-founded. *Bonner v. Arastehjoo*, No. C 11-1350 CW, 2011 WL 5191410, at *1 (N.D. Cal. Oct. 31, 2011) (Rule 11 was "designed to create an affirmative duty of investigation both as to law and as to fact before motions are filed.") (citation and internal quotation marks omitted).

There is also no merit to Plaintiffs' assertion that the contracts cited in the Motion are somehow "problematic" because they were "selected" by Defendants' counsel. Opp. 20. Each of the contracts exhibited to the Motion are relevant to Plaintiffs' misconduct because they were made publicly available in a trial that Plaintiffs' counsel has claimed they attended and purportedly relied on for their Complaint, and the contracts are consistent with details alleged regarding the "Subject Contracts." Cogan Decl. ¶¶ 2–4; Exs. A–C. The only reasonable inference is that Plaintiffs were aware of these contracts and purposely mirrored the Complaint's specific, factual allegations regarding the "Subject Contracts" on these contracts, even though Plaintiffs knew they "do not include a liquidity obligation." Opp. 21.

Finally, the assertion that Defendants did not provide Plaintiffs with copies of each contract attached to the Motion in advance is simply not true. In their July 1, 2025 letter to Plaintiffs' counsel, Defendants' counsel expressly stated that the relevant agreements apparently

---

[5] Notably, while Plaintiffs now claim that the contracts Defendants attached to their Motion are not the ones on which they are suing, they did not say that when the parties discussed this issue before this Motion was filed. To the contrary, Plaintiffs maintained that the contracts that they now distance themselves from were "consistent" with their claims. Cogan Decl. ¶¶ 7–8, Ex. G.

[6] Plaintiffs also take issue with the Declaration of Matthew Hinerfield filed in support of Defendants' Motion to Dismiss and/or Compel Arbitration, even though Plaintiffs acknowledge that the Hinerfeld affidavit is "unrelated to this Motion." Opp. 20, n. 4. Regardless, the Hinerfeld declaration accurately attests to the lack of other agreements *from July 2021*, among any Jump affiliate and TFL, and regarding UST or LUNA because **Plaintiffs themselves allege** that the agreements supporting their claims meet those specific characteristics. Compl. ¶¶ 43, 64, 38.

referenced in the Complaint as the "Subject Contracts" were publicly available in the case captioned *SEC v. Terraform Labs Pte. Ltd.*, No. 1:23-cv-01346 (JSR) (S.D.N.Y.). Cogan Decl. ¶ 4, Ex. F. Likewise, each of the contracts Plaintiffs now claim were not provided in advance of the Motion were publicly available in that same case and should have been reviewed by Plaintiffs' counsel before filing the Complaint and again after Defendants' July 1, 2025 letter. Then, on August 1, 2025, Defendants served Plaintiffs with a copy of the Motion and supporting exhibits, including all four contracts attached to the Motion. Cogan Decl. ¶ 9, Ex. H. Plaintiffs' counsel failed to take corrective action within 21 days of service of the Motion.

### E. Plaintiffs' Non-Contract Claims Are Also Untenable

Plaintiffs represent in the Complaint that their action "alleges only that Jump breached contractual obligations to serve as a liquidity provider and fill investors' orders to sell." Compl. ¶ 10 n.1. Nevertheless, Plaintiffs now assert that their non-contract claims (Counts 2, 3, 4, and 5) should survive even if their allegation regarding the existence of a purported liquidity obligation is false. Opp. 21. As an initial matter, sanctions are warranted here regardless of whether the Complaint's non-contract claims can survive independently of the frivolous breach of contract claim. *Holgate*, 425 F.3d at 677 ("[T]he mere existence of one non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions.") (citation and internal quotation marks omitted).

Regardless, it is not credible for Plaintiffs to assert that Counts 2, 3, 4 and 5 are not entirely dependent upon the existence of the purported liquidity obligation. With respect to conversion, Plaintiffs acknowledge that "ownership or right to possession" is a necessary element of the claim. Opp. 21. But the only basis alleged in the Complaint for why Plaintiffs could possibly have any "ownership" interest in or "right to possess[]" U.S. dollars held in an affiliate of Defendants' Prime Trust bank accounts is the allegation that Defendants had a purported obligation to "make the funds available" to Plaintiffs by "execut[ing] [Plaintiff investors'] trades." Compl. ¶¶ 71–72. The same is true for civil theft. Plaintiffs acknowledge that they must plead an ownership interest in the subject property, but the only basis in the Complaint for why Plaintiff investors would have any ownership interest in an affiliate of Defendants' U.S. dollars is the allegation that Plaintiff investors had a "right" access the funds in Defendants' accounts "upon placing an order to sell

the UST tokens." *Id.* ¶ 90. So too for Plaintiffs' unfair business practices claim, which Plaintiffs acknowledge is "derivative of their claim[] for civil theft." Opp. 23.[7] In sum, Plaintiffs have not alleged any "right" to Defendants' or its affiliates' U.S. dollars under a conversion, civil theft, or unfair business practices theory absent the completely unsubstantiated alleged contractual liquidity obligation. With respect to unjust enrichment, Plaintiffs acknowledge that they must allege facts establishing that Defendants *unjustly* retained a benefit. Opp. 22. But the only basis alleged in the Complaint for why it would be unjust for Defendants to retain their own U.S. dollars is that Defendants "refus[ed] to execute the transactions ordered by Plaintiffs and the Class." Compl. ¶ 79. That is entirely dependent on Plaintiffs' frivolous liquidity obligation allegation.

### F. Plaintiffs' Request for Fees Should Be Denied

In the event the Court denies Defendants' Motion, Plaintiffs should not be awarded fees. As Plaintiffs concede, fees are only warranted if the Motion is "entirely frivolous." *Facebook, Inc. v. Gajjar*, No. 20-cv-02429, 2022 WL 18539351, at *3 (N.D. Cal. Aug. 23, 2022). For all the reasons set forth above and in the Motion, Plaintiffs cannot meet this high bar. Further, Plaintiffs' assertion that they "invested significant time and resources to demonstrate to [Defendants] that a Rule 11 motion was improper" is plainly incorrect. Opp. 24. In fact, Plaintiffs' counsel waited only three days after receiving Defendants' July 1, 2025 letter to respond that the contracts Defendants identified as corresponding to the "Subject Contracts" "support" their allegations that Defendants owed a liquidity obligation, even though they now concede in their Opposition that those same contracts "do not include a liquidity obligation." Cogan Decl. ¶ 8, Ex. G; Opp. 21.

### CONCLUSION

For the reasons set forth above and in the Motion, Defendants Jump Trading, LLC and Jump Crypto Holdings LLC respectfully request that the Court grant the Motion.

---

[7] Plaintiffs assert in the alternative that their unfair business practices claim could be based on "essentially any wrongful act alleged in the Complaint, whether related to contractual obligations or not." Opp. 23. Not only are such vague allegations plainly improper, but the only purportedly "wrongful" conduct alleged in the Complaint is Defendants' decision not to fill UST sell orders, which can only be "wrongful" if Defendants were under such an obligation.

15
REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS
CASE NO. 3:25-CV-03989-PHK

| | | |
|---|---|---|
| Dated: November 21, 2025 | | Respectfully submitted, |
| | | KOBRE & KIM LLP |
| | | /s/ *Jonathon D. Cogan* |
| | | Jonathan D. Cogan |

Jonathan D. Cogan (admitted *pro hac vice*)
Steven W. Perlstein (admitted *pro hac vice*)
Igor Margulyan (admitted *pro hac vice*)
Mathew T. Elder (admitted *pro hac vice*)
Daisy Joo (admitted *pro hac vice*)
800 Third Avenue
New York, NY 10022
Tel.: (212) 488-1200
jonathan.cogan@kobrekim.com
steven.perlstein@kobrekim.com
igor.margulyan@kobrekim.com
mathew.elder@kobrekim.com
daisy.joo@kobrekim.com

Daniel A. Zaheer (Bar ID 237118)
150 California Street, 19th Floor
San Francisco, CA 94111
Tel.: (415) 582-4800
daniel.zaheer@kobrekim.com

Erika L. Berman (admitted *pro hac vice*)
1919 M Street NW
Washington, DC 20036
Tel.: (202) 664-1900
erika.berman@kobrekim.com

*Attorneys for Defendants*
*Jump Trading, LLC and*
*Jump Crypto Holdings LLC*