1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                      SAN FRANCISCO DIVISION

7

8    AUSTIN WARD, et al.,                Case No. 25-cv-03989-PHK

9              Plaintiffs,               **ORDER GRANTING MOTION TO
                                         DISMISS WITH LEAVE TO AMEND**
10         v.
                                         Re: Dkt. 32
11   JUMP TRADING, LLC, et al.,

12             Defendants.

13

14         This is a putative class action brought by Plaintiffs Austin Ward, David Krevat, and Nabil

15   Mohamad ("Plaintiffs") against Defendants Jump Trading, LLC ("Jump Trading"), Jump Crypto

16   Holdings, LLC ("Jump Crypto"), and Does 1-10. [Dkt. 1]. The Parties have consented to proceed

17   before a magistrate judge for all purposes, including entry of a final judgment under 28 U.S.C. §

18   636(c). *See* Dkts. 9, 28.

19         Defendants have filed a motion to dismiss Plaintiffs' initial complaint ("Complaint"),

20   pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6), and the first-to-file rule,

21   and alternatively, to compel arbitration and stay the case, as well as a motion to stay discovery

22   pending resolution of these issues. [Dkt. 32]. Plaintiffs have filed an opposition to Defendants'

23   motion to dismiss or compel arbitration, as well as a separate opposition to Defendants' motion to

24   stay, and Defendants have filed replies as to each. [Dkt. 36; Dkt. 40; Dkt. 46; Dkt. 54]. The Court

25   heard oral argument on the pending motions on November 19, 2025. *See* Dkts. 64, 71.

26         Having reviewed the Parties' written and oral arguments and the governing law, the Court

27   **GRANTS** Defendants' motion to dismiss and **DISMISSES** the Complaint **WITH LEAVE TO**

28   **AMEND** for the reasons discussed herein.

United States District Court
Northern District of California

**BACKGROUND**

The following factual summary is based on the averments in the Complaint.  [Dkt. 1].

This case involves a cryptocurrency called TerraUSD ("UST").  UST was developed and issued by nonparty Terraform Labs PTE Ltd. ("Terraform"), a private digital asset company headquartered in Singapore.  *Id.* at ¶¶ 2, 22.  Unlike traditional stablecoins backed by actual fiat currency reserves, UST was designed to maintain a one-to-one peg to the U.S. dollar through an algorithmic relationship with another cryptocurrency called Luna.  *Id.* at ¶¶ 2, 23.  Interested investors could purchase UST through several different third-party digital "wallet" services ("Wallet Apps") in the cryptocurrency industry.  *Id.* at ¶¶ 3, 27.

At all times relevant, nonparty Prime Trust, a Nevada-based trust and escrow company, provided specialized banking services for U.S.-based Wallet Apps.  *Id.* at ¶¶ 31, 34.  Prime Trust operated as the intermediary between individual cryptocurrency buyers and sellers (who used Wallet Apps to engage in these transactions).  *Id.* at ¶ 33.  Prime Trust facilitated Wallet App users' cash transfers, deposits, and withdrawals.  *Id.*  When an investor using a Wallet App bought a cryptocurrency on a cryptocurrency exchange, Prime Trust would link the investor's bank account to the market or exchange where the asset was sold, move funds out of the investor's bank account, and move the cryptocurrency asset into the investor's digital wallet where it remained in custody.  *Id.*  Similarly, when a cryptocurrency investor received investment dividends or sold an asset, Prime Trust would facilitate the release of the asset from custody, the connection with the investor's bank account, and the deposit of funds into the seller's account.  *Id.*  Prime Trust entered into agreements with several Wallet Apps, including all of the Wallet Apps used by the named Plaintiffs here, under which Prime Trust agreed to provide custody and account services for investors' UST transactions.  *Id.* at ¶ 34.

Defendants Jump Trading and Jump Crypto, both Delaware limited liability corporations with principal places of business and headquarters in Chicago, Illinois, are cryptocurrency market makers.  *Id.* at ¶¶ 4, 15-16.  Jump Trading is an SEC-registered broker-dealer and institutional private trading firm.  *Id.* at ¶ 15.  Jump Crypto is a subsidiary of Jump Trading that operates its "cryptocurrency arm."  *Id.*

The Complaint mostly refers to Jump Trading and Jump Crypto collectively as "Jump" without any differentiation between the two entities (more on this below).  According to the Complaint, "Jump" was an early partner and primary financial backer of Terraform, the developer of the cryptocurrency called UST.  *Id.* at ¶¶ 4, 37.  Between November 2019 and July 2021, "Jump" entered into a series of agreements with Terraform, Prime Trust, and/or other entities to provide liquidity services for UST transactions.  *Id.* at ¶¶ 5, 38.  These agreements contractually obligated "Jump" to provide liquidity services "for the benefit of UST investors who used Wallet Apps."  *Id.* at ¶ 64.  Pursuant to the terms of these agreements, whenever a Wallet App user placed a sell order with Prime Trust to exchange UST for U.S. dollars, "Jump" would be required to fund its own account with Prime Trust and then authorize Prime Trust to debit U.S. dollars from that "Jump" account to fill the Wallet App user's sell order.  *Id.* at ¶ 40.  Plaintiffs, all Wallet App users who invested in UST, allege that they were third-party beneficiaries of these agreements.  *Id.* at ¶¶ 12-14, 66.

In May 2022, UST unexpectedly began to lose its value, causing Wallet App users to rush to liquidate mass quantities of UST.  *Id.* at ¶¶ 6, 46.  Plaintiffs and thousands of other investors used their Wallet Apps to attempt to withdraw their funds.  *Id.* at ¶¶ 7, 47.  The Wallet Apps, in turn, submitted orders to Prime Trust on behalf of the users to sell those users' UST.  *Id.*  Prime Trust, in turn, called on "Jump," as the UST liquidity provider, to fulfill these sell orders by authorizing the debiting of U.S. dollars from the "Jump" account.  *Id.*  Plaintiffs allege that "Jump," sensing imminent loss on its own cryptocurrency investments, "simply refused to respond" to Prime Trust's requests to fulfill the sell orders, thereby "breaching its contractual obligations."  *Id.* at ¶¶ 7, 53.  Plaintiffs allege that, due to "Jump's" refusal to fulfill the sell orders, no UST sell transactions were processed by Prime Trust.  *Id.*  As a result, Wallet App users, including Plaintiffs, were unable to liquidate their UST holdings as the value of UST dwindled over time.  *Id.*  UST continued to collapse in value, eventually bottoming out at less than ten cents, costing investors billions of U.S. dollars in losses.  *Id.* at ¶¶ 8, 48.

Following the UST market crash, Wallet App users demanded that Prime Trust explain why it would not allow them to withdraw their funds.  *Id.* at ¶ 49.  Prime Trust, in response,

publicly blamed its "liquidity provider," only revealed through investigation years later to be "Jump," for the Wallet App users' losses. *Id.* at ¶¶ 51-52. Plaintiffs allege that the subject agreements obligating "Jump" to provide UST liquidity services were "kept secret" until 2023. *Id.*

Based on these allegations, on May 7, 2025, Plaintiffs commenced this lawsuit. Plaintiffs' putative class consists of all persons who placed orders on or after May 9, 2022 to sell UST (where such sell orders were routed to Prime Trust), but whose orders were not processed at the price of UST at the time of the order. *Id.* at ¶ 55. On behalf of this putative class, Plaintiffs assert the following claims for relief: (1) breach of contract; (2) conversion; (3) unjust enrichment; (4) civil theft, in violation of CAL. PENAL CODE §§ 484 & 496; and (5) violation of the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq. Id.* at ¶¶ 55, 63-98. Plaintiffs seek damages for their breach of contract and conversion claims; disgorgement of profits for their unjust enrichment claim; treble and punitive damages for their civil theft claim; and restitution and injunctive relief for their UCL claim. *Id.*

Defendants move to dismiss the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), for lack of personal jurisdiction, improper venue, and failure to state a claim, as well as pursuant to the first-to-file rule. [Dkt. 32 at 22-35, 41-52]. In the alternative, Defendants move to compel arbitration and stay the case, arguing that all of Plaintiffs' claims are subject to a mandatory arbitration provision in a contract allegedly applicable here. *Id.* at 35-41.

## **ANALYSIS**

### I.     **Motion to Dismiss for Lack of Personal Jurisdiction**

Defendants' first argument is that this case should be dismissed, in its entirety, for lack of personal jurisdiction—a threshold issue before the Court analyzes the merits of the Complaint. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998) (clarifying that a federal district court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit and the parties); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[T]here is no mandatory 'sequencing of jurisdictional issues.'").

United States District Court
Northern District of California

Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal of a complaint for lack of personal jurisdiction.  "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Where, as here, the Court does not conduct an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts.  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  "To that end, 'uncontroverted allegations in the complaint must be taken as true' and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'"  *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1038 (9th Cir. 2022) (quoting *Schwarzenegger*, 374 F.3d at 800).

To establish personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show: (1) that jurisdiction is legitimate under the laws of the forum state; and (2) that the exercise of jurisdiction does not offend the Fourteenth Amendment's Due Process Clause. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  California's long-arm statute confers the maximum jurisdiction permitted by the United States Constitution.  Cal. Code Civ. P. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *accord Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 129 (9th Cir. 2003).  Therefore, the jurisdictional analysis here consists of a single inquiry into whether the exercise of personal jurisdiction over Defendants comports with the requirements of federal due process.  *See Yamashita v. LG Chem, Ltd.*, 48 F.4th 993, 997 (9th Cir. 2022) ("[B]ecause California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause, the Court need only determine whether personal jurisdiction would meet the requirements of due process.") (internal quotation marks and alterations omitted).

The Fourteenth Amendment's Due Process Clause authorizes personal jurisdiction if two elements are met.  First, a defendant must have purposefully established minimum contacts with

United States District Court
Northern District of California

the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Second, the assertion of personal jurisdiction must comport with "traditional notions of fair play and substantial justice."  *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)).

There are two types of personal jurisdiction: general and specific.  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (citing *Goodyear*, 564 U.S. at 919). The Court addresses each in turn.

<u>General Jurisdiction</u>

General jurisdiction can be found where a defendant's contacts with the forum state are so "continuous and systematic" as to render that defendant "essentially at home" there.  *Goodyear*, 564 U.S. at 919.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Id.* at 924.  General jurisdiction permits a nonresident defendant "to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801 (citation omitted).  "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Bristol-Myers*, 582 U.S. at 262 (citing *Goodyear*, 564 U.S. at 919).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that state.  *Daimler*, 571 U.S. at 137.

Plaintiffs argue that they have plausibly alleged sufficient facts that this Court may exercise general jurisdiction over Defendants.  [Dkt. 46 at 10].  Plaintiffs identify and proffer the following jurisdictional facts as evidence of Defendants' minimum contacts with California supporting the Court's exercise of personal jurisdiction over them in this case:

- As of September 5, 2025, the LinkedIn website listed thirty individual users who identified their location as being within California and who claimed to have worked either previously or currently for a Jump entity (either "Jump Trading, LLC," "Jump Trading," "Jump Trading Group," or "Jump Crypto").  [Dkt. 46-1 at ¶ 14; Dkt. 46-11].

- The JumpTrading.com website references travel grants for conferences in three locations, including one in San Diego, California.  [Dkt. 46-1 at ¶ 15; Dkt. 46-12].

- The JumpTrading.com website references three fellowships awarded by "Jump Trading," one of which was awarded to an individual who is listed as being affiliated with Stanford University (located in Stanford, California).  [Dkt. 46-1 at ¶ 15; Dkt. 46-13].

- The JumpTrading.com website's "Privacy Policy" page includes a section regarding "Additional California Privacy Disclosures."  [Dkt. 46-1 at ¶ 15; Dkt. 46-14].

- Defendants' General Counsel is a member of the State Bar of California.  [Dkt. 46 at 22].

- Plaintiff Austin Ward, who is a resident of California, made sell orders from California that were routed to "Jump" for fulfillment.  [Dkt. 1 at ¶ 12].

- Jump Trading and Jump Crypto are both named defendants in a separate civil action that is currently pending in the Northern District of California, and in that case neither Defendant has contested jurisdiction.  [Dkt. 46 at 23]; *see* Class Action Complaint, *Patterson v. TerraForm Labs Pte Ltd.*, No. 5:22-cv-03600-PCP (N.D. Cal. Jun. 17, 2022), ECF No. 1.

- In June 2023, Jump Trading, as one of the named defendants in a separate civil action currently pending in the Northern District of Illinois, filed a motion to transfer that case to the Northern District of California; in the motion, Jump Trading conceded that "jurisdiction and venue exist in the Northern District of California."  [Dkt. 46 at 23-24]; *see* Motion to Transfer Venue, *Kim v. Jump Trading, LLC*, No. 1:23-cv-02921 (N.D. Ill. June 9, 2023), ECF No. 28.

<u>Undifferentiated "Jump" Allegations</u>

As an initial matter, Plaintiffs must demonstrate personal jurisdiction over each Defendant individually.  *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("Regardless of their joint liability, jurisdiction over each defendant must be established separately."); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 848 (N.D. Cal. 2018) ("Plaintiffs must make a prima facie showing of jurisdictional facts giving rise to specific jurisdiction over each defendant separately."); *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings, Inc.*, No. 19cv1865-GPC(LL), 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) ("[A] plaintiff must submit evidence supporting personal

United States District Court
Northern District of California

1    jurisdiction over each defendant, and cannot simply lump them all together[.]").  Further, "[i]t is

2    well established that, as a general rule, where a parent and a subsidiary are separate and distinct

3    corporate entities, the presence of one in a forum state may not be attributed to the other."  *Axiom*

4    *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1071 (9th Cir. 2017) (citation and alteration

5    omitted).

6    　　　Here, as noted above, the Complaint largely relies on undifferentiated allegations with

7    respect to Defendants, lumping together Jump Trading, Jump Crypto, and unidentified John Does,

8    and then using the label "Jump" or "Jump umbrella of companies" to refer to them all as one mass.

9    This manner of pleading does not satisfy Federal Rule of Civil Procedure 8(a)'s notice

10    requirements.  *See McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (explaining that a

11    complaint must contain "clear and concise averments stating which defendants are liable to

12    plaintiffs for which wrongs"); *Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D.

13    Cal. 2023) ("At the outset of its 213-page Complaint, Plaintiff announces that '*depending on the*

14    *context in which it is used herein*, the term 'Defendants' is intended to include not only 'Skimlite'

15    and 'James Conrad' and 'Barrett Conrad,' but also any and/or all other Defendants or any

16    individuals or other entities.'  This is plainly impermissible under the well-established law in this

17    circuit that so-called 'shotgun pleadings' do not satisfy Rule 8's notice requirement.") (internal

18    citation omitted); *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 816 (N.D. Cal. 2022)

19    ("It is a basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish

20    between named defendants.").

21    　　　Accordingly, to the extent that Plaintiffs make undifferentiated jurisdictional allegations

22    lumping Jump Trading and Jump Crypto together as "Jump," the Court gives little weight to those

23    allegations to evaluate personal jurisdiction as to each Defendant because Plaintiffs' manner of

24    pleading makes it impossible to attribute particular jurisdictional facts to each Defendant

25    separately.  *See Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 769 (N.D. Cal. 2025) ("Plaintiff's

26    allegations against 'Plex' and 'Defendants' do not satisfy Rule 8(a)'s notice requirement, and the

27    Court will not rely on them [in connection with a motion to dismiss for lack of personal

28    jurisdiction].."); *Zeiger*, 304 F. Supp. 3d at 849 (granting motion to dismiss for lack of personal

United States District Court
Northern District of California

1  jurisdiction, where the complaint did not specifically isolate the jurisdictional facts as to each

2  defendant and instead made only general allegations grouping the defendants together).

3         Jump Crypto

4         While giving little weight to the undifferentiated allegations identifying Defendants

5  collectively as "Jump," the Complaint's allegations specific to Jump Crypto are limited to the

6  following: (1) Jump Crypto is a limited liability company incorporated in Delaware with its

7  principal place of business and headquarters in Chicago, Illinois; (2) Jump Crypto is Jump

8  Trading's "cryptocurrency arm;" and (3) Jump Trading "used" Jump Crypto to fund and partner

9  with Terraform.  [Dkt. 1 at ¶¶ 15-16].

10         These allegations are insufficient to support the exercise of personal jurisdiction over Jump

11  Crypto in California.  *See Shansby v. Edrington, USA, Inc.*, No. 22-cv-06907-JSC, 2023 WL

12  4983674, at *3 (N.D. Cal. Aug. 3, 2023) ("The only complaint allegation specific to Robertson is

13  that it is a charitable trust registered in Scotland that owns and operates Erdington.  This allegation

14  is insufficient to support the exercise of personal jurisdiction.") (internal citation omitted).

15         Jump Trading

16         Again, giving little weight to the undifferentiated allegations identifying Defendants

17  collectively as "Jump," the Complaint's allegations specific to Jump Trading are limited to the

18  following: (1) Jump Trading is a limited liability company incorporated in Delaware with its

19  principal place of business and headquarters in Chicago, Illinois; (2) Jump Trading is an SEC-

20  registered broker-dealer and one of the largest private trading firms in the world; (3) Jump Trading

21  "used" Jump Crypto and other subsidiaries to fund and partner with Terraform; and (4) Jump

22  Trading was Prime Trust's liquidity provider at the time of the collapse of UST.  [Dkt. 1 at ¶¶ 15-

23  16, 69].  These allegations, while slightly more detailed, are likewise insufficient to support the

24  exercise of personal jurisdiction over Jump Trading in California.

25         The Jump Defendants Collectively

26         As noted, the Court gives little weight to the undifferentiated allegations of jurisdiction-

27  related facts levied against "Jump" collectively.  However, even assuming the Court could

28  attribute or parse Plaintiffs' allegations and evidence identifying Defendants collectively as

"Jump" to each Defendant, the Court finds that Plaintiffs have not demonstrated that Defendants are subject to general jurisdiction in California.

"Because the assertion of judicial authority over a defendant is much broader in the case of general jurisdiction than specific jurisdiction, a plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011)). "[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign corporation essentially at home in the forum State, *i.e.,* comparable to a domestic enterprise in that State." *Id.* (quoting *Daimler*, 571 U.S. at 133 n.11). A corporation is subject to general jurisdiction in its place of incorporation and principal place of business. *Id.* (citing *Daimler*, 571 U.S. at 760). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). The inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler*, 571 U.S. at 138-39 (cleaned up).

Here, Jump Trading and Jump Crypto are both Delaware corporations with headquarters and principal places of business in Illinois. [Dkt. 1 at ¶¶ 15-16]. These facts alone are "strong evidence" that Defendants are not "at home" in California. *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 964 (N.D. Cal. 2015). At the hearing, Plaintiffs argued that the circumstances of this case are sufficiently "exceptional" to support general jurisdiction, pointing to evidence suggesting that Defendants might have a "significant presence" in California, including evidence suggesting that Defendants have "enough people here to be operating businesses." [Dkt. 71 at 34:11-16]. Plaintiffs also argue that Defendants have not produced any evidence negating the existence general jurisdiction. [Dkt. 46 at 22].

As noted above, Plaintiffs bear the burden to establish personal jurisdiction. *Mavrix*, 647 F.3d at 1223. Here, Plaintiffs have not met the exacting standard to satisfy their burden of demonstrating that Defendants' affiliations with California are so "continuous and systematic" as

10

United States District Court
Northern District of California

to render each of them "essentially at home" in California. *Goodyear*, 564 U.S. at 919; *Ranza*, 793 F.3d at 1069. Even assuming Defendants conducted some set of business operations in California which were characterized as substantial, that alone would not show "exceptional" circumstances sufficient to support the exercise of general jurisdiction over a nonresident defendant. *See, e.g.*, *Daimler*, 571 U.S. at 123 (finding "multiple California-based facilities," including a regional office, insufficient to establish general jurisdiction); *Lee*, 773 F. Supp. 3d at 770 ("Plaintiff alleges that 'Defendants . . . conduct substantial business within the State of California.' Even if the Court could attribute this ambiguous allegation to Plex GmbH specifically, it would not establish that Plex GmbH is subject to general jurisdiction in California.") (internal citation omitted). Plaintiffs' theory of general jurisdiction relies on a legally incorrect argument that mere "continuous and systematic" contacts (such as having sufficient employees and facilities to operate a business) are sufficient; as noted, the proper legal test is whether the "continuous and systematic" contacts are so extensive as to render the nonresident defendant essentially "at home" in the forum. *See Daimler*, 571 U.S. at 137-38 (Exercising general jurisdiction over a corporation merely because it "engages in a substantial, continuous, and systematic course of business" in the forum is "unacceptably grasping."). Even taking as true the allegations about Defendants' employees' listings on LinkedIn, the various website references to California or California law, and the bar membership of Defendants' General Counsel, the allegations are simply insufficient to demonstrate that the Defendants' contacts with California make them essentially at home in California. The mere fact that one named Plaintiff is located in California is likewise insufficient to permit the exercise of general jurisdiction over Defendants. *See Walden v. Fiore*, 571 U.S. 277, 287 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). And the fact that Defendants have not challenged personal jurisdiction in another case pending in California and/or moved to transfer a different case to California cannot establish personal jurisdiction here. *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835 (9th Cir. 2005) (A "defense on the merits in a suit brought by one party cannot constitute consent to suit as a defendant brought by different

11

1   parties."); *Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1066 (E.D. Cal. 2020) (holding that

2   the defendant's "prior involvement in other litigation before federal courts in California" was

3   insufficient to establish personal jurisdiction over the defendant in that case).

4        Accordingly, based on the record before this Court, neither Jump Trading nor Jump Crypto

5   is subject to general jurisdiction in California.

6        <u>Specific Jurisdiction</u>

7        Plaintiffs next argue that the Court may exercise specific jurisdiction over Defendants.

8   [Dkt. 46 at 21]. Specific jurisdiction allows for the exercise of personal jurisdiction over

9   defendants "less intimately connected" with the forum state, "but only as to a narrower class of

10  claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). Specific

11  jurisdiction requires "an affiliation between the forum and the underlying controversy." *Bristol-*

12  *Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919). To be subject to specific

13  jurisdiction, the defendant must take some act by which it "purposefully avails" itself of the

14  privilege of conducting activities within the forum state. *Ford*, 592 U.S. at 359 (quoting *Hanson*

15  *v. Denkla*, 357 U.S. 235, 253 (1958)).

16       The Court may exercise specific jurisdiction over a nonresident defendant only if three

17  requirements are met:

18       (1) The nonresident defendant must purposefully direct their activities or consummate some

19           transaction with the forum or resident thereof; or perform some act by which they

20           purposefully avail themself of the privilege of conducting activities in the forum, thereby

21           invoking the benefits and protections of its laws;

22       (2) the claim must be one which arises out of or relates to the defendant's forum-related

23           activities; and

24       (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must

25           be reasonable.

26  *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (citing *Schwarzenegger*, 374 F.3d at

27  802).

28       The plaintiff bears the burden of proving the first two prongs of the specific jurisdiction

1    inquiry. *Id.* at 751 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the plaintiff

2    succeeds in satisfying the first two prongs, the burden then shifts to the defendant to "present a

3    compelling case that the presence of some other considerations would render jurisdiction

4    unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477).

5           Accordingly, as to the first prong of the inquiry, to establish specific jurisdiction, Plaintiffs

6    must first show that Defendants either purposefully availed themselves of the privilege of

7    conducting activities in California, purposefully directed their activities towards California, or

8    both. *Briskin*, 135 F.4th at 751 n.10 (quoting *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th

9    1154, 1162 (9th Cir. 2023)). While broadly similar, purposeful availment and purposeful direction

10   are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. Fundamentally, "[b]oth

11   purposeful availment and purposeful direction ask whether defendants have voluntarily derived

12   some benefit from their interstate activities such that they will not be haled into a jurisdiction

13   solely as a result of random, fortuitous, or attenuated contacts." *Davis*, 71 F.4th at 1162. To be

14   clear on the distinction, purposeful availment focuses on "the defendant's actions in the forum,"

15   whereas purposeful direction focuses on "the defendant's actions outside the forum state that are

16   directed at the forum state." *Id.* at 802-03.

17          Courts "typically" apply a purposeful direction analysis to claims sounding in tort and a

18   purposeful availment analysis to claims sounding in contract. *Davis*, 71 F.4th at 1162. However,

19   the Ninth Circuit has made clear, first, that there is no "rigid dividing line" between these two

20   categories of claims, and second, that there is "no need to adhere to an iron-clad doctrinal

21   dichotomy to analyze specific jurisdiction." *Id.* "Rather, when considering specific jurisdiction,

22   courts should comprehensively evaluate the extent of the defendant's contacts with the forum state

23   and those contacts' relationship to the plaintiffs' claims—which may mean looking at both

24   purposeful availment and purposeful direction." *Id.* Thus, regardless of the nature of the cause of

25   action at issue, the first prong of the specific jurisdiction inquiry "may be satisfied by purposeful

26   availment, by purposeful direction, or by some combination thereof." *Id.* (internal quotation

27   marks omitted).

28          As noted, purposeful availment focuses on a defendant's actions in the forum. "To satisfy

United States District Court
Northern District of California

13

United States District Court
Northern District of California

purposeful availment, 'a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *SuperTECH, Inc. v. My Choice Software, LLC*, 158 F.4th 1005, 1011 (9th Cir. 2025) (quoting *Boschetto*, 539 F.3d at 1016). For a nonresident defendant to have purposefully availed themselves of the laws of a forum state, the defendant must have "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Davis*, 71 F.4th at 1163 (quoting *Yamashita v. LG Chem Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023)) (alteration omitted). "Purposeful availment can be established by a contract's negotiations, its terms, its contemplated future consequences, and the parties' actual course of dealing." *Id.* (citing *Burger King*, 471 U.S. at 479); *see also Schwarzenegger*, 374 F.3d at 802 (A showing of purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."). The "unilateral actions" of another party will not suffice to show purposeful availment. *Davis*, 71 F.4th at 1163 (quoting *Yamashita*, 62 F.4th at 503).

By contrast, as noted above, purposeful direction focuses on a defendant's actions outside of the forum that are directed at the forum. "The purposeful direction test requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *SuperTECH*, 158 F.4th at 1012 (quoting *Briskin*, 135 F.4th at 751) (alteration omitted). A purposeful direction analysis "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Briskin*, 135 F.4th at 751. "An action may be directed at a forum state even if it occurred elsewhere." *Davis*, 71 F.4th at 1163. However, "[t]his analysis is driven by the defendant's contacts with the forum state—not the plaintiff's or other parties' forum connections." *Id.*

Plaintiffs argue that they have alleged sufficient facts to plausibly establish specific jurisdiction over Defendants in this action. [Dkt. 46 at 10]. However, to support their arguments on specific jurisdiction, Plaintiffs rely upon the same set of allegations and factual bases relied upon for their arguments asserting general jurisdiction. The fact that various "Jump" employees

United States District Court
Northern District of California

1    have LinkedIn profiles identifying those employees as being located in California does not show

2    Defendants' purposeful availment of California or purposeful direction towards California.  *See*

3    *Walden*, 571 U.S. at 287 ("[P]hysical entry into the State—either by the defendant in person or

4    through an agent, goods, mail, or some other means—is certainly a relevant contact.  But . . . it is

5    the defendant's conduct that must form the necessary connection with the forum State that is the

6    basis for its jurisdiction over him.") (internal citation omitted); *RPB SA v. Hyla, Inc.*, No. LA

7    CV20-04105 JAK (SKx), 2020 WL 12187801, at *11 (C.D. Cal. June 9, 2020) ("That [the

8    defendant] has five employees in California—whose work does not concern [the defendant's

9    underlying] sales transactions—is also of little significance with respect

10    to purposeful availment.").  Nor is the bar membership of Defendants' General Counsel sufficient

11    to demonstrate purposeful availment or purposeful direction by Defendants, because no indication

12    is made as to whether Defendants required or directed that this lawyer be a member of the

13    California bar, how that one individual's bar membership is in any way significant for the

14    operations of the companies, or how that professional licensure compares to professional

15    memberships of any other of Defendants' employees.

16            The JumpTrading.com website's references to California or California law are likewise

17    insufficient to show Defendants' purposeful availment of California or purposeful direction

18    towards California, because the borderless nature of the Internet would otherwise lead to a finding

19    of specific jurisdiction over any company whose website simply discusses contacts with California

20    or complies with California privacy law.  *See Scanlon*, 465 F. Supp. 3d at 1066 (finding evidence

21    of defendant's "passive website" failed to establish that the defendant purposefully directed

22    activities to California); *Shah v. Hilton Worldwide Holdings, Inc.*, No. 25-cv-01018-EKL, 2025

23    WL 1683577, at *2 (N.D. Cal. June 11, 2025) (holding that the nonresident defendant's website's

24    "passing reference" to California privacy policy did not by itself make the website "purposefully

25    directed" into California); *Cole-Parmer Instrument Co. v. Pro. Lab'ys, Inc.*, No. 20-CV-08493-

26    LHK, 2021 WL 3053201, at *6 (N.D. Cal. July 20, 2021) ("[A]s courts in this district have

27    recognized, compliance with California's privacy policy does not by itself demonstrate that

28    Defendant 'intentionally targeted consumers in California.'"); *Love v. The Mail on Sunday*, No.

1    CV05-7798ABCPJWX, 2006 WL 4046170, at *3 (C.D. Cal. July 14, 2006) ("[A] defendant does

2    not purposefully avail himself to a forum state's protections and benefits by maintaining a passive

3    website that merely informs users about the defendant company's services.").

4        As noted, the second prong of the specific jurisdiction analysis requires that Plaintiffs'

5    claims "arise[] out of or relate[] to" Defendants' contacts with California. *Briskin*, 135 F.4th at

6    750-51. Further, "[w]hen a plaintiff relies on specific jurisdiction, [they] must establish that

7    jurisdiction is proper for 'each claim asserted against a defendant.'" *Picot*, 780 F.3d at 1211

8    (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).

9    Here, the vast majority of Plaintiffs' proffered evidence regarding Defendants' contacts with

10   California is undifferentiated as to each Defendant and consists of factual allegations wholly

11   unrelated to Plaintiffs' causes of action asserted in the Complaint.

12       As discussed above, Plaintiffs point to evidence regarding the number of Defendants'

13   California-based employees. [Dkt. 46 at 21-22]. Plaintiffs also mention that Defendants'

14   corporate counsel is a member of the California bar. *Id.* at 22. Even assuming these facts were

15   sufficient to satisfy the first prong of the specific jurisdiction analysis (which they are not, as

16   discussed above), none of these facts relate in any way to the causes of action asserted in the

17   Complaint. The Complaint does not allege any actions taken by any of Defendants' listed

18   employees in California, much less actions taken by any California employees arising out of or

19   relating to Plaintiffs' causes of action. The alleged failure by Defendants to provide liquidity for

20   the fulfillment of the UST sell orders is not linked in any way to any of Defendants' employees in

21   California. And more glaringly, there is no allegation linking the bar membership of Defendants'

22   corporate counsel to any asserted cause of action.

23       Plaintiffs also point to portions of Defendants' website referencing travel grants awarded

24   for conferences located in California and fellowships awarded to California-based researchers, as

25   well as a section of Defendants' website disclosing privacy policy terms for California users. *Id.*

26   However, the Complaint does not allege that Defendants engaged in any commercial activity in

27   California through their website, or that Defendants engaged in any other actions through their

28   website directed at California.

United States District Court
Northern District of California

Plaintiffs also argue that the exercise of specific jurisdiction is appropriate here because Defendants consented to the transfer of another case "involving UST's collapse" to this District, and because Defendants did not contest jurisdiction in a separate action pending in this District. *Id.* at 23. However, by Plaintiffs' own admission, these actions are wholly unrelated to the instant action. *Id.* at 18 ("While both *Patterson* and *Kim* are based on the collapse of UST, the plaintiffs in those cases claim damages that arose from conduct unrelated to the conduct alleged in the present case."). Defendants' strategic choices in completely different lawsuits do not preclude them from contesting jurisdiction forever in all subsequent cases. It is well-settled that a "defense on the merits in a suit brought by one party cannot constitute consent to suit as a defendant brought by different parties." *Dow Chem.*, 422 F.3d at 835; *Scanlon*, 465 F. Supp. 3d at 1066 (collecting cases); *see also Zeiger*, 304 F. Supp. 3d at 849 ("[T]he only Berwind-specific allegations that plaintiffs make are that Berwind has brought suit in California, and apparently has California-based employees. These general allegations are wholly unrelated to the present litigation and cannot give rise to specific jurisdiction here.") (internal citation omitted).

As confirmed by Plaintiffs' counsel at the hearing, the sole allegation in the Complaint even remotely connecting Defendants to California is the following:

> Plaintiff Austin Ward is, and at all relevant times was, a resident of the state of California. Plaintiff Ward held UST through a Wallet App on May 9, 2022. His order was routed to Prime Trust and denied because Jump refused to provide the liquidity necessary to fill the order. His redemption order was never filled.

[Dkt. 1 at ¶12].

Plaintiffs argue that this allegation supports the exercise of specific jurisdiction over Defendants here, because "Jump" breached its contractual obligations to provide liquidity services for UST transactions, and Plaintiff Ward felt the harm of that breach in California where he resided. [Dkt. 46 at 23]. However, even attributing this allegation referencing "Jump" to both Jump Trading and Jump Crypto individually, the Complaint does not allege any facts plausibly suggesting conduct by Defendants expressly aimed at California. There is no allegation and no proffered evidence that either Jump Trading or Jump Crypto had any direct contact or communications or transactions with Plaintiff Ward himself. There is nothing in the Complaint or

United States District Court
Northern District of California

United States District Court
Northern District of California

1  in Plaintiffs' proffered evidence from which to infer that Defendants interacted with Plaintiff

2  Ward, or that Defendants were even aware that Plaintiff Ward was located in California.  Nor do

3  Plaintiffs allege or proffer evidence plausibly suggesting that any of the underlying contractual

4  agreements obligating "Jump" to provide liquidity services had anything to do with California or

5  Plaintiff Ward specifically.  *See Fenix Partners Grp. v. T&T Global Logistics Servs. & Trading*

6  *Joint Stock Co.*, 723 F. Supp. 3d 796, 804 (N.D. Cal. 2024)  (finding insufficient nexus between

7  contract claims and subject contract to support the exercise of specific jurisdiction).

8      Here, the only alleged connection between Defendants and California is harm suffered by

9  one identified California resident.  Plaintiffs cannot rely solely on their own contacts with

10 California as evidence of Defendants' purposeful availment of, or purposeful direction to, the

11 forum state.  *See Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff

12 experienced a particular injury or effect but whether the defendant's conduct connects him to the

13 forum in a meaningful way."); *Davis*, 71 F.4th at 1163.  Nor can Plaintiffs rely on the harm felt by

14 Plaintiff Ward in California as sufficient to show the legally necessary link between Defendants'

15 jurisdictional activities and the asserted causes of action—by definition, the harm felt by a plaintiff

16 is not an "action" by a defendant but rather is the effect or result of those actions.

17     Here, Plaintiffs have failed to meet their burden to show that Defendants either

18 purposefully directed their activities to California or purposefully availed themselves of the

19 privileges of California.  Further, Plaintiffs have failed to meet their burden to show that any of

20 Defendants' contacts with California arise out of or relate to the asserted causes of action.

21 Because Plaintiffs have failed to meet their burden as to the first two prongs of the specific

22 jurisdiction analysis, the Court need not reach the third prong, *i.e.,* whether the exercise of

23 jurisdiction would be reasonable and fair.  *Briskin*, 135 F.4th at 751.

24     On this record then, Plaintiffs have not demonstrated that the Court has specific personal

25 jurisdiction over either Jump Trading or Jump Crypto in the instant action.

26     <u>Conclusion as to Motion to Dismiss for Lack of Personal Jurisdiction</u>

27     Based on a thorough review of the arguments, the pleadings in the Complaint, and the

28 evidentiary record presented to the Court, Plaintiffs have failed to meet their burden to show that

1   Defendants have the requisite minimum contacts with California to support the exercise of

2   personal jurisdiction over Defendants in this case under either a theory of general jurisdiction or

3   specific jurisdiction.  For that reason, the Court **GRANTS** Defendants' motion to dismiss based

4   on lack of personal jurisdiction **WITH LEAVE TO AMEND**.  *See Cox v. CoinMarketCap*

5   *OPCO, LLC*, 112 F.4th 822, 836 (9th Cir. 2024) ("A dismissal for lack of personal jurisdiction

6   does not adjudicate the merits and so should be without prejudice.").

7   **II.        Request for Jurisdictional Discovery**

8           In their opposition brief, Plaintiffs ask for leave to conduct limited jurisdictional discovery,

9   to the extent that the Court finds personal jurisdiction lacking.  [Dkt. 46 at 24].

10          The Court has considerable discretion as to whether to allow limited jurisdictional

11  discovery.  *Boschetto*, 539 F.3d at 1020 (A district court's refusal to allow for jurisdictional

12  discovery "will not be reversed except upon the clearest showing that denial of discovery results in

13  actual and substantial prejudice to the complaining litigant."); *Hernandez v. Mimi's Rock Corp.*,

14  632 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022) ("A district court has broad discretion to permit or

15  deny jurisdictional discovery.").  "Jurisdictional discovery should ordinarily be granted where

16  pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory

17  showing of the facts is necessary."  *Yamashita*, 62 F.4th at 507 (internal quotation marks omitted).

18          However, "a mere hunch that discovery might yield jurisdictionally relevant facts, or bare

19  allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional

20  discovery."  *Id.*  "Discovery should be denied where it would 'not demonstrate facts sufficient to

21  constitute a basis for jurisdiction.'"  *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1009

22  (N.D. Cal. 2020) (quoting *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003)).  The

23  central question is whether the requesting party provides "an explanation of how discovery might

24  change the outcome of the Court's jurisdictional findings."  *Hernandez*, 632 F. Supp. 3d at 1062;

25  *see Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (finding no abuse of

26  discretion in district court's denial of request for jurisdictional discovery where the plaintiff

27  "failed to demonstrate how further discovery would allow it to contradict" the specific denials

28  made by the defendants that weighed against a finding of personal jurisdiction).  "[L]imited

jurisdictional discovery should not be permitted to conduct a fishing expedition." *Hernandez*, 632 F. Supp. 3d at 1062; *Yamashita*, 62 F.4th at 508.

Here, Plaintiffs seek forum-related jurisdictional discovery regarding Defendants' business operation centers and property ownership in California (if any), their California alter egos and other affiliated entities (if any), and their California-based employees (if any). However, Plaintiffs' speculative assertion that such discovery could yield facts supporting the Court's exercise of personal jurisdiction over Defendants rests on nothing more than a hunch. Further, to the extent that Plaintiffs seek discovery regarding the extent of Defendants' business operations, assets, and employees in California, Plaintiffs fail to explain how such evidence lends support to a theory of specific jurisdiction. None of the requested discovery is in any way related to the asserted causes of action and thus none of it is legally relevant to any inquiry as to specific jurisdiction.

While the requested discovery might (if it actually were to yield evidence) theoretically be related to a theory of general jurisdiction, Plaintiffs have offered nothing to suggest that this case is an "exceptional" one for purposes of general jurisdiction. As noted above, the legal standard for general jurisdiction requires not merely continuous and systematic contacts with the forum state, but rather such continuous and systematic contacts as to render the nonresident defendant effectively at home in the forum. Plaintiffs' requested jurisdictional discovery, based on speculation about other business or other generalized contacts in California, is aimed at merely finding more evidence of business operations in California without addressing how such additional evidence would meet the exacting standard to show that either Defendant is effectively at home in California. *See LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) (affirming denial of jurisdictional discovery where plaintiffs sought to confirm defendants' ties to a service shop in the forum state but failed to provide a sufficient factual predicate for the request or explain how the discovery would support the exercise of personal jurisdiction over the defendants).

Accordingly, Plaintiffs have failed to show that limited jurisdictional discovery is warranted. For that reason, Plaintiffs' request for jurisdictional discovery is **DENIED**.

United States District Court
Northern District of California

**III.    Remaining Motions to Dismiss, Compel Arbitration, and/or Stay Discovery**

Defendants also seek dismissal of the Complaint based on improper venue, violation of the first-to-file rule, and failure to state a claim, and alternatively, they move to compel arbitration under the Federal Arbitration Act and to stay this case pending completion of arbitration.  [Dkt. 32 at 31-52].  In addition, Defendants move to stay discovery in this action pending resolution of these issues.  *Id.* at 52-56.

Personal jurisdiction is "the power of a court to enter judgment against a person."  *United States v. Obaid*, 971 F.3d 1095, 1098 (9th Cir. 2020).  If a court lacks personal jurisdiction over a defendant, then the court lacks the power to enter judgment against that person.  Because the Court has determined that Plaintiffs have failed to demonstrate a basis for exercising personal jurisdiction over Defendants here, Defendants' alternative motions to dismiss (based on improper venue, violation of the first-to-file rule, and failure to state a claim) are **DENIED WITHOUT PREJUDICE AS MOOT**.  *See Picot*, 780 F.3d at 1211, 1215 (affirming district court's granting of motion to dismiss for lack of personal jurisdiction and denial of motion to transfer as moot); *Power Integrations, Inc. v. Penbrothers Int'l Inc.*, No. 19-cv-02700-SVK, 2019 WL 6117479, at *1 (N.D. Cal. Nov. 18, 2019) ("Because the Court finds it does not have personal jurisdiction over Penbrothers, it does not reach Penbrothers' alternative arguments that the case should be dismissed under Rule 12(b)(3) for improper venue and under Rule 12(b)(6) for failure to state a claim."); *Alexandria Equities Real Est. Equities, Inc. v. RUNLABS (UK) Ltd.*, No. 18-CV-07517-LHK, 2019 WL 1934883, at *3 (N.D. Cal. May 1, 2019) ("The Court finds the personal jurisdiction argument dispositive, so the Court need not address Defendants' other arguments."); *Uttarkar v. Bajaj*, No. 14-CV-02250-LHK, 2016 WL 393351, at *4 (N.D. Cal. Feb. 2, 2016) ("Because the Court concludes that the SAC does not allege facts sufficient for this Court to exercise personal jurisdiction over Defendant, the Court does not reach Defendant's remaining arguments for dismissal.").

For similar reasons, because the Court has concluded that Plaintiff has failed to establish a basis for personal jurisdiction over Defendants, Defendants' motion to compel arbitration is **DENIED WITHOUT PREJDUICE AS MOOT**.  If the Court lacks personal jurisdiction over

Defendants, there is no legal basis for the Court to order the Defendants to require those Defendants to arbitrate this dispute.  *See Ritz Fuente, LLC v. Schafer*, No. 3:21-cv-01986-LAB-JLB, 2023 WL 5310562, at *5 (S.D. Cal. Aug. 17, 2023) ("Ritz Fuente also requests the Court exercise its authority under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, and designate an arbitrator.  However, the Court can't issue any order related to the merits or arbitration because it lacks personal jurisdiction over Schafer.") (internal citation omitted); *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, No. 1:15-cv-00582-JAM-EPG, 2015 WL 6689572, at *2 (E.D. Cal. Oct. 30, 2015) ("For the Court to rule on the motion to compel arbitration, it must first find that it has personal jurisdiction over [the defendant].").

Finally, because the Court denies the alternative motion to dismiss and the motion to compel arbitration, Defendants' motion to stay discovery pending resolution of those motions lacks a necessary predicate and thus is **DENIED AS MOOT**.  *See McCarthy v. Meta Platforms, Inc.*, No. 25-cv-00862-JSW, 2025 WL 1237550, at *3 (N.D. Cal. Apr. 28, 2015) (granting motion to dismiss and denying motion to stay discovery as moot).

### IV.    Joint Discovery Letter Brief

On August 25, 2025, the Parties filed a joint discovery letter brief regarding a discovery dispute as to whether Defendants should be compelled to respond to six Rule 34 document requests served by Plaintiffs on July 23, 2025.  [Dkt. 44].  In light of this Order, the Parties' joint discovery letter brief is **DENIED WITHOUT PREJUDICE AS MOOT**.  *See In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *14 (N.D. Cal. Mar. 29, 2021) (granting motion to dismiss and denying joint discovery letter brief as moot).

### V.    Defendants' Motion for Sanctions and Plaintiffs' Request for Fees and Costs

Defendants have filed a motion for sanctions, pursuant to Federal Rule of Civil Procedure 11, based on Plaintiffs' filing of the Complaint.  [Dkt. 50].  Defendants argue that Plaintiffs' claims "rest on frivolous allegations lacking any factual foundation."  *Id.* at 8.  They argue that the Complaint is not viable for many of the same reasons stated in their motion to dismiss.

In opposing the requested sanctions, Plaintiffs contend that Defendants' legal arguments are themselves "meritless and contradicted by the facts."  [Dkt. 61 at 14]. Plaintiffs request an

United States District Court
Northern District of California

award of attorney fees and costs incurred in opposing Defendants' motion for sanctions.  *Id.* at 28-29.  Plaintiffs argue that they should be awarded reasonable fees and costs, because Defendants' motion for sanctions was meritless, improper, and should not have been filed.  *Id.*

Where a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)).  Both prongs must be satisfied to warrant sanctions.  *Id.* ("As shorthand for this test, [courts] use the word 'frivolous' to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry.").  The imposition of Rule 11 sanctions "is not a judgment on the merits of an action."  *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 970 (9th Cir. 2014) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)).  Rule 11 instead "requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."  *Cooter & Gell*, 496 U.S. at 396.

The resolution of Defendants' motion for sanctions would require the Court to make substantial factual and legal determinations based on the limited record before it.  The Court "declines to enter this fact-based thicket" at this stage of the proceedings.  *See MI-94, LLC v. Chemetall US, Inc.*, No. 2:23-cv-00647-CDS-DJA, 2023 WL 8186618, at *5 (D. Nev. Nov. 27, 2023); *Remington v. Mathson*, No. 17-cv-02007-JST, 2017 WL 3421966, at *5 (N.D. Cal. Aug. 9, 2017); *Bighorn Capital, Inc. v. Security Nat'l Guarantee, Inc.*, No. C 15-03083 SBA, 2015 WL 9489897, at *4-5 (N.D. Cal. Dec. 30, 2015); *Rodriguez v. Serv. Emps. Int'l*, No. C-10-01377 JCS, 2010 WL 3464365, at *2 (N.D. Cal. Sept. 1, 2010) ("[A] determination as to whether Plaintiff's claims are so legally or factually baseless as to warrant the imposition of sanctions is premature[.]").

The Court instead finds that Rule 11 sanctions would be more appropriately addressed in this case at the conclusion of the litigation.  *See* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment ("The time when sanctions are to be imposed rests in the discretion of the trial

United States District Court
Northern District of California

judge.  However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation."); *Cooter & Gell*, 496 U.S. at 396 (Rule 11 sanctions determination may be made "after the principal suit has been terminated").  "Courts within the Ninth Circuit routinely defer Rule 11 motions regarding the pleadings until the case is resolved on its merits."  *MI-94*, 2023 WL 8186618, at *5 (collecting cases).  Indeed, Defendants' motion for sanctions assumes that Defendants will prevail ultimately in this action—a predicate which has not been established.  Wise attorneys know that seeking sanctions *before* prevailing on an issue amounts to putting the cart before the horse.

Similarly, Plaintiffs' counter-request for an award of attorney fees and costs incurred in opposing Defendants' motion for sanctions is premature.  "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(2).  Based on the record presented, there is an insufficient basis for the Court to determine whether Defendants' motion for sanctions is itself sufficiently meritless or was filed with such a lack of prefiling diligence to warrant an award of fees and costs.  Just as Defendants' motion for sanctions assumes that Defendants will prevail ultimately in this action, Plaintiffs' request for fees and costs also assumes that Plaintiffs will ultimately prevail on any further motions practice on these issues—a predicate which has not been established.

The Court admonishes counsel for both Parties here.  Filing a motion for sanctions at this stage of the case not only burdens the Court with premature motions practice, but also gives the appearance of needless posturing.  Similarly, seeking an award of attorney fees and costs in response to a motion for sanctions not only burdens the Court further, but also gives the appearance of reflexive tit-for-tat gamesmanship.  Wise counsel knows when to seek sanctions or an award of fees and costs.  The Court expects experienced counsel on both sides to avoid undue (and ultimately unhelpful) exuberance in motions practice which detracts from the merits as this case proceeds further.

Accordingly, for all these reasons, Defendants' motion for sanctions is **DENIED**.  Similarly, Plaintiffs' request for an award of fees and costs in connection with this motion is **DENIED**.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, **IT ORDERED THAT**:

1. Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction [Dkt. 32 at 22-30] is **GRANTED**.

2. Plaintiffs' request to conduct limited jurisdictional discovery [Dkt. 46 at 24] is **DENIED**.

3. Plaintiffs' Complaint [Dkt. 1] is **DISMISSED WITH LEAVE TO AMEND**.

4. Defendants' remaining motions to dismiss, to compel arbitration, and/or to stay discovery [Dkt. 32 at 31-56] are **DENIED AS MOOT**.

5. The Parties' joint discovery letter brief [Dkt. 44] is **DENIED AS MOOT**.

6. Defendants' motion for sanctions [Dkt. 50] is **DENIED** without prejudice.

7. Plaintiffs' request for attorney's fees and costs incurred in opposing Defendants' motion for sanctions [Dkt. 61 at 28-29] is **DENIED** without prejudice.

8. Plaintiffs are **GRANTED LEAVE** to file an amended complaint that addresses the issues discussed herein by no later than **February 23, 2026**.

**IT IS SO ORDERED.**

Dated:  January 20, 2026

_____

PETER H. KANG
United States Magistrate Judge